1

The Honorable Robert S. Lasnik

2

3

4

5

6

7

8

9
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
10
AT SEATTLE

11
MCKENNA DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,

12

No. 2:23-cv-01391-RSL

13

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY DEFENDANTS HNN ASSOCIATES, LLC AND R.D. MERRILL REAL ESTATE HOLDINGS, LLC**

Plaintiffs,

14

v.

15

16
YARDI SYSTEMS, INC., *et al.*,

**NOTE ON MOTION CALENDAR:** March 15, 2024

17
Defendants.

***Oral Argument Requested***

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN
ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS
Case No. 2:23-cv-01391-RSL



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................1

II.   ARGUMENT ..................................................................3

    A.   Plaintiffs plausibly allege a conspiracy and connect HNN and Pillar
        to that conspiracy. ................................................4

        1.   HNN and Pillar err because they "disregard the Court's
             obligation to consider the sufficiency of the Complaint
             holistically." ..........................................4

        2.   Plaintiffs allege HNN and Pillar accepted an invitation to
             join a common scheme ...................................6

        3.   The Complaint answers the questions "who, did what, to
             whom (or with whom), where, and when?"...................9

    B.   HNN and Pillar cannot contradict the pleadings, introduce
        extraneous evidence, and draw inferences in their favor at the
        pleadings stage. .................................................13

        1.   HNN asks the Court to draw inferences based on facts not
             alleged in the Complaint. ................................13

        2.   Pillar also inappropriately asks the Court draw inferences
             based off of contested facts.............................14

            a.   The incorporation by reference doctrine is not
                 appropriate. .....................................16

            b.   The Court cannot take judicial notice of these
                 documents. .....................................17

III.  CONCLUSION ...............................................................18

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Needle, Inc. v. Nat'l Football League*,
  560 U.S. 183 (2010) ........................................................................................................ 1

*In re Animation Workers Antitrust Litig.*,
  123 F. Supp. 3d 1175 (N.D. Cal. 2015) ......................................................................... 16

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*,
  166 F. Supp. 3d 988 (N.D. Cal. 2015) ........................................................................... 10

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*,
  620 F.2d 1360 (9th Cir. 1980) ......................................................................................... 1

*In re Broiler Chicken Antitrust Litig.*,
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ............................................................................... 8

*Brown v. Amazon.com Inc.*,
  2023 WL 5793303 (W.D. Wash. Sept. 7, 2023) ............................................................ 15

*In re Cal. Bail Bond Antitrust Litig.*,
  511 F. Supp. 3d 1031 (N.D. Cal. 2021) ....................................................................... 5, 6

*In re Cal. Bail Bond Antitrust Litig.*,
  2022 WL 19975276 (N.D. Cal. Nov. 7, 2022) .............................................................. 4, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ........................................................................... 2

*Copeland v. Energizer Holdings, Inc.*,
  2024 WL 511224 (N.D. Cal. Feb. 9, 2024) ...................................................................... 9

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
  28 F.4th 42 (9th Cir. 2022) ........................................................................................ 4, 15

*Flextronics Int'l USA, Inc. v. Panasonic Corp.*,
  2023 WL 4677017 (9th Cir. July 21, 2023) ..................................................................... 8

*In re High-Tech Emp. Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................................... 2

*Interstate Circuit v. U.S.*,
  306 U.S. 208 (1939) ..................................................................................................... 6, 7

*Keithly v. Intelius Inc.*,
  764 F. Supp. 2d 1257 (W.D. Wash. 2011) .................................................................. 2, 17

*Kelsey K. v. NFL Enters., LLC*,
  254 F. Supp. 3d 1140 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524 (9th Cir. 2018) ................. 11

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN
ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – ii
Case No. 2:23-cv-01391-RSL

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .................................................................................... 4, 9

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F. 3d 988 (9th Cir. 2018) .........................................................................*passim*

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................................ 6

*In re Lithium Ion Batteries Antitrust Litig.*,
   2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) .................................................................. 5

*Meyer v. Kalanick*,
   174 F. Supp. 3d 817 (S.D.N.Y. 2016) ............................................................................ 7

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
   2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ................................................................ 15

*In re Nat'l Prescription Opiate Litig.*,
   2019 WL 3737023 (N.D. Ohio June 13, 2019) .............................................................. 5

*PLS.com, LLC v. Nat'l Ass'n of Realtors*,
   32 F.4th 824 (9th Cir. 2022) ...................................................................................... 1, 6

*In re Pork Antitrust Litig.*,
   495 F. Supp. 3d 753 (D. Minn. 2020) ............................................................................ 8

*In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*,
   2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023) ..................................................*passim*

*SmileDirectClub, LLC v. Tippins*,
   31 F.4th 1110 (9th Cir. 2022) .................................................................................... 1, 3

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ....................................................................... 3, 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   586 F. Supp. 2d 1109 (N.D. Cal. 2008) ......................................................................... 5

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ........................................................................................... 8

*In re Tracht Gut, LLC*,
   836 F.3d 1146 (9th Cir. 2016) ..................................................................................... 14

*U.S. v. Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ....................................................................................... 12

*U.S. v. Lothian*,
   976 F.2d 1257 (9th Cir. 1992) ..................................................................................... 14

*U.S. v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ....................................................................................... 16



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1

**OTHER AUTHORITIES**

2

Fed. R. Evid. 201 ................................................................................................................ 17

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

## TABLE OF ABBREVIATIONS

| Short Cite Used | Full Citation |
| --- | --- |
| Complaint | First Amended Class Action Complaint, ECF No. 113 (Nov. 3, 2023). All "Complaint" or "¶ __" references are to this document. |
| Omnibus Opp. | Plaintiffs' Opposition to Defendants' Omnibus Motion to Dismiss the First Amended Class Action Complaint Pursuant to FRCP 12(b)(6), filed concurrently herewith. |
| DOJ Statement of Interest | Memorandum of Law in Support of the Statement of Interest of the United States, *In re RealPage, Rental Software Antitrust Litig. (No. II)*, No. 3:23-md-03071, ECF No. 628 (Nov. 15, 2023). |
| HNN Mot. | HNN Associates, LLC's Individual Motion to Dismiss, ECF No. 141 (Dec. 15, 2023). |
| Pillar Mot. | Defendant R.D. Merrill Real Estate Holdings, LLC's Motion to Dismiss, ECF No. 139 (Dec. 15, 2023). |
| Pillar Req. | Defendant R.D. Merrill Real Estate Holdings, LLC's Request for Judicial Notice, ECF No. 140 (Dec. 15, 2023). |
| Defendants | Yardi and Landlord Defendants (as defined below). |
| Landlord Defendants | Bridge Property, Calibrate, Dalton, HNN, LeFever Mattson, Manco Abbott, Morguard, Pillar Properties, Summit, Tonti Properties (as defined below). |

| Short Cite Used | Full Defendant Names |
| --- | --- |
| Yardi | Yardi Systems, Inc. |
| Bridge Property | Bridge Property Management, L.C. |
| Calibrate | Calibrate Property Management, LLC |
| Dalton | Dalton Management, Inc. |
| HNN | HNN Associates, LLC |
| LeFever Mattson | LeFever Mattson Property Management |
| Manco Abbott | Manco Abbott, Inc. |
| Morguard | Morguard Corporation, Morguard Management Company, Inc. |
| Pillar Properties | R.D. Merrill Real Estate Holdings, LLC with trade name Pillar Properties |
| Summit | Summit Management Services, Inc. |
| Tonti Properties | Creekwood Property Corporation with trade name Tonti Properties |

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN
ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – v
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# I.    INTRODUCTION

Plaintiffs allege that HNN and Pillar violated the Sherman Act when they each agreed to replace independent pricing decisions with a common pricing algorithm called RENTmaximizer. ¶¶ 17, 82-97. To determine whether conduct violates the Sherman Act, the central question is whether the alleged "contract, combination … or conspiracy is concerted action—that is, whether it joins together separate decisionmakers."[1] Separate economic actors may not "deprive[] the marketplace of independent centers of decisionmaking" in order to raise, depress, fix, peg, or stabilize prices.[2] By agreeing to share their leasing data and "outsource" their pricing to an algorithm that used competitor data to "beat the market," HNN and Pillar did exactly that. ¶¶ 6-7, 17, 85-88. As a result, renters paid more than they would have if pricing decisions had been independent. ¶¶ 118-122.[3] Or as HNN put it, RENTmaximizer took "guesswork out of our rental pricing and lease terms, and boost[ed] pricing." ¶ 19.

To withstand an individual motion to dismiss, Plaintiffs need only provide "some showing—direct or circumstantial—that the defendants 'actively participated in an individual capacity in the scheme.'"[4] As the Ninth Circuit observed, a "formal agreement is not necessary" to establish an antitrust claim.[5] Nor is it necessary to show "[p]articipation by each conspirator in every detail in the execution of the conspiracy."[6] Both HNN and Pillar agreed to share leasing data and delegate pricing authority to RENTmaximizer with the understanding that other lessors were doing the same. ¶¶ 12, 39, 43, 90, 92 141. In so doing, they actively participated in a common scheme. Yet in their individual motions to dismiss, HNN and Pillar now seek to impose a new, heightened pleading requirement.

---

[1] *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010) (cleaned up).

[2] *Id.*

[3] A full statement of facts is provided in Plaintiffs' opposition to Defendants' omnibus motion to dismiss. *See* Omnibus Opp. § II.

[4] *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1119 (9th Cir. 2022) (citation omitted).

[5] *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 842 (9th Cir. 2022).

[6] *Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    Their motions should be denied for two reasons. *First*, both motions fail to give Plaintiffs

2  "the full benefit of their proof without tightly compartmentalizing the various factual components

3  and wiping the slate clean after scrutiny of each."[7] HNN views in isolation the "four paragraphs in

4  the Complaint that mention HNN" and argues that if these four paragraphs alone fail to establish a

5  conspiracy, then their motion to dismiss must be granted. HNN Mot. at 9. Pillar also wrongly claims

6  the "only allegations involving Pillar" are the four paragraphs that mention Pillar by name. Pillar

7  Mot. at 4. But the dozens of allegations that refer to "Defendants" or "Lessor Defendants" cannot

8  be excised from analysis simply because Plaintiffs did not name each individual defendant in each

9  paragraph. Plaintiffs need not plead such "detailed, defendant-by-defendant allegations; instead

10 they require plaintiffs to make allegations that plausibly suggest that each Defendant participated

11 in the alleged conspiracy."[8] Plaintiffs have met this standard and have pled more than enough facts

12 to plausibly suggest that HNN and Pillar participated in the conspiracy. *See infra* § II.A.

13    *Second*, both motions improperly offer new facts and alternative explanations for the

14 allegations. For example, Pillar contradicts paragraph 92 of the Complaint by stating that the cited

15 quotation from Yardi's website is a misquotation because Pillar was talking about "a completely

16 different Yardi software product, Asset IQ." Pillar Mot. at 3. It is reversible error to "consider

17 material outside the pleadings when assessing the sufficiency of a Complaint," as HNN and Pillar

18 do repeatedly.[9] Pillar's call for correction of this quotation only proves that the Court should not

19 wade into factfinding waters yet; on the website that Pillar seeks to introduce, Yardi explains that

20 Asset IQ "uses revenue management and rental pricing data from RENTmaximizer to allow

21 [Pillar's Diana] Norbury to quickly review pricing and leasing data."[10] Plaintiffs did not mislead;

22 according to Yardi, Pillar's senior vice president of multifamily operations used "her Asset IQ

23

24    [7] *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012) (quoting *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962)).

25    [8] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010) (quotation marks and citation omitted).

26

    [9] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 998 (9th Cir. 2018).

27    [10] *See* Complaint ¶ 43 n.47. To the extent that the Court incorporates by reference the documents in this

28 footnote, Plaintiffs ask the Court to consider both links and draw all inferences in favor of Plaintiffs. *See Keithly v. Intelius Inc.*, 764 F. Supp. 2d 1257, 1261 (W.D. Wash. 2011).

1    dashboard" to access RENTmaximizer to review prices. ¶ 43 n.47. Although Plaintiffs address

2    every new fact and alternative explanation that HNN and Pillar put in their motions, the Court need

3    not conduct this exercise; the Ninth Circuit instructs that courts should "not consider [a defendant]'s

4    competing facts at the pleadings stage."[11] *See infra* § II.B.

## II.    ARGUMENT

6        Both Pillar and HNN repeat issues raised by Defendants in the omnibus motion. As their

7    omnibus opposition establishes, Plaintiffs have plausibly alleged a *per se* unlawful conspiracy and

8    an information exchange conspiracy that violates the rule of reason. *See* Omnibus Opp. § IV.A-C.

9    And so to survive a motion to dismiss, Plaintiffs "only need to make allegations that plausibly

10   suggest that each Defendant participated in the alleged conspiracy."[12] Here, Plaintiffs use HNN's

11   and Pillar's own statements, as well as confidential witnesses, to connect them to the conspiracy:

12       **HNN.** Plaintiffs allege that HNN began outsourcing pricing decisions to RENTmaximizer

13   by at least 2015. ¶ 39. In a press release, HNN's owner and managing partner, Philip Nored,

14   publicly confirmed that RENTmaximizer has "taken the guesswork out of [HNN's] rental pricing

15   and lease terms, and boosts pricing performance through an intelligent system of measurements,

16   fixed factors and discipline." ¶¶ 19, 39, 90. In addition, a former employee at HNN confirmed that

17   it was common for HNN to exchange pricing information directly with competitors. ¶ 141.

18       **Pillar.** Plaintiffs allege that Pillar began outsourcing pricing decisions to RENTmaximizer

19   by at least 2015. ¶ 43. Pillar provided a "success story" on Yardi's website to credit

20   RENTmaximizer with driving higher revenue. ¶ 92. In addition, the Complaint cites a video

21   published on Defendant Yardi's Facebook page where Diana Norbury—vice president of

22   multifamily operations at Pillar Properties in Seattle—discusses the ways that RENTmaximizer

---

[11] *SmileDirectClub*, 31 F.4th at 1119.

[12] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 904 (N.D. Cal. 2008).

1   "empowered their success" and gave them access to "current market conditions, vacancy rates,

2   competition and more."[13] ¶ 43 n.47.[14]

3        Although HNN and Pillar try to challenge the allegations by raising alternative

4   explanations—which is not permitted at the pleading stage—neither has challenged the central

5   allegation that they used RENTmaximizer for pricing, under any other proper procedural device.

6   **A.   Plaintiffs plausibly allege a conspiracy and connect HNN and Pillar to that conspiracy.**

7        HNN carves the Complaint down to just a few paragraphs to argue that Plaintiffs have failed

8   to show parallel conduct. HNN Mot. at 5-7. Pillar also hews the Complaint down to four paragraphs

9   and then argues that these paragraphs cannot answer the basic questions, "who, did what, to whom

10  (or with whom), where, and when?"[15] Pillar Mot. at 5-7. But neither argument withstands scrutiny

11  once Plaintiffs' full allegations are considered.

12        **1.   HNN and Pillar err because they "disregard the Court's obligation to consider the sufficiency of the Complaint holistically."[16]**

13

14        Both HNN and Pillar err by whittling the Complaint down to a few allegations where they

15  are mentioned by name. HNN argues that the Court should do the same because it is improper for

16  Plaintiffs to "generally allege how 'Defendants' or 'Landlord Defendants' behave." HNN Mot. at

17  2. But Plaintiffs' allegations "must be evaluated holistically to determine whether they state a

18  conspiracy claim."[17] And where an "allegation is that all defendants took the actions … it is not

19  necessary to name them individually."[18] HNN and Pillar cannot examine only a few bricks and say

20  that there is no house; both must consider all the allegations against them.

21

22      [13] To the extent this Court decides to incorporate by reference or take judicial notice of Yardi's website, as requested by Pillar, Plaintiffs request that the Court do the same for Yardi's Facebook video—which is cited in the same footnote as the website.

23      [14] Pillar does not reference Diana Norbury's endorsement of RENTmaximizer in the entirety of its motion. Nor is it referenced in Ms. Nobury's declaration, which contains extraneous evidence and should not be considered in any event. *See infra* § II.B.2.

25      [15] *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008).

26      [16] *In re Cal. Bail Bond Antitrust Litig.*, 2022 WL 19975276, at *13 (N.D. Cal. Nov. 7, 2022).

27      [17] *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 53 (9th Cir. 2022).

28      [18] *Wanachek Mink Ranch v. Alaska Brokerage Intern., Inc.*, 2009 WL 1342676, at *3 (W.D. Wash. May 5, 2009).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    By narrowing their focus, both HNN and Pillar miss critical parts of the Complaint. For

2    example, HNN argues that Plaintiffs "do not allege … if HNN share[d] 'confidential' information

3    with Yardi." HNN Mot. at 5. But Plaintiffs do. All Lessor Defendants, including HNN, shared their

4    "confidential business information" with Yardi, including their "rental rates and occupancy." ¶¶ 71,

5    86, 94, 109-112, 139. This information was given to Yardi "with the understanding that such data

6    will be shared with competitors." ¶¶ 71, 86, 109-112, 139. As one Yardi employee stated, "people

7    appreciated the fact that if they shared data, they would get data from other clients using things like

8    RENTmaximizer, so that everybody was benefitting from the data." ¶ 94. HNN and Pillar cannot

9    wash away most of the Complaint simply because some allegations refer to "Defendant Landlords"

10    rather than naming each defendant. As one district court explained, Plaintiffs need not "reiterate

11    [their] allegations against each defendant individually," as doing so "would exponentially increase

12    the length of pleadings while adding no substantive value."[19] Courts have repeatedly held that a

13    complaint need "not plead each defendant's involvement in the alleged conspiracy in elaborate

14    detail, but must simply include allegations specific to each defendant alleging that defendant's role

15    in the alleged conspiracy."[20]

16    As is required, the Complaint contains "allegations specific to each defendant alleging that

17    defendant's role in the alleged conspiracy."[21] The Complaint gives the year by which both HNN

18    and Pillar joined the conspiracy—2015 and 2016, respectively. ¶¶ 39, 43. The Complaint also gives

19    examples of HNN and Pillar publicly signaling their adherence to the scheme through testimonials.

20    ¶¶ 19, 39, 43, 92. These specific allegations are sufficient, and contrast with the deficient allegations

21    from *In re Cal. Bail Bond Antitrust Litig.*[22] There, the district court initially dismissed a complaint

22    for failing to include specific allegations for each defendant; for example, rather than including the

23    year each defendant joined the conspiracy, the plaintiffs alleged all defendants joined "when the

24

25    [19] *In re Nat'l Prescription Opiate Litig.*, 2019 WL 3737023, at *3 (citations and quotation marks omitted).

26    [20] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *31 (N.D. Cal. Oct. 2, 2014).

27    [21] *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1047 (N.D. Cal. 2021) (citation omitted).

28    [22] *See* HNN Mot. at 9 (citing *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d at 1047).

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

conspiracy arose, or … whenever the [defendant] entered the market."[23] The district court found that these broad, formulaic allegations could not tie each defendant to the conspiracy. But the court gave leave to amend. Like the Complaint here, the amended complaint specified what year each defendant joined the conspiracy and also added statements made by individual defendants.[24] The court found that was sufficient.[25]

Here, the Court must "accept *all* factual allegations in the Complaint as true and construe the pleadings in the light most favorable" to Plaintiffs.[26] By considering only *some* allegations, both HNN and Pillar invite error. As discussed *infra* §§ II.A.2 and II.A.3, this error seeps through their arguments that Plaintiffs failed to show parallel conduct or answer basic questions about the conspiracy.

## 2. Plaintiffs allege HNN and Pillar accepted an invitation to join a common scheme.

After discarding all allegations except four paragraphs, HNN argues that there can be no conspiracy because Plaintiffs have not alleged parallel conduct. HNN Mot. 4-9. But the Supreme Court, the Ninth Circuit, the DOJ, and the FTC all agree that "an invitation proposing collective action followed by a course of conduct showing acceptance" is sufficient to establish unlawful conspiracy under the Sherman Act.[27] Thus, it is "enough that, knowing that concerted action was contemplated and invited, the distributors gave their adherence to the scheme and participated in it."[28] As Plaintiffs fully set forth in the omnibus opposition, Yardi invited the defendants to participate in a scheme where each defendant agreed to provide competitively sensitive data so that a common entity could use that data to determine a price that would beat the competitive market. *See* Omnibus Opp. §§ II, IV(A)-(C).

---

[23] *In re Cal. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d at 1048.

[24] *In re Cal. Bail Bond Antitrust Litig.*, 2022 WL 19975276, at *13-21.

[25] *Id.*

[26] *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

[27] *See* DOJ Statement of Interest at 9 (citing *Interstate Circuit v. U.S.*, 306 U.S. 208, 227 (1939)). *See also PLS.com, LLC*, 32 F.4th at 843 ("All that PLS must allege is that Bright adhered to a common scheme."); *see also* Complaint ¶¶ 29, 135-136 (citing FTC chair Maureen Ohlhausen that "group of competitors sub-contracting their pricing decisions to a common, outside agent that provides algorithmic pricing services" amounts to a "hub-and-spoke conspiracy").

[28] *Interstate Circuit*, 306 U.S. at 226.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

By 2015, HNN signaled its acceptance of this call for collective action and used Yardi to "boost[] pricing." ¶¶ 19, 39, 90. That HNN accepted an invitation with the understanding competitors were agreeing to the same pricing algorithm is sufficient to establish liability.[29] Nor should it make any difference that HNN might have had an "independent business reason[]" for accepting Yardi's invitation. *See* HNN Mot. at 9. As the Supreme Court held in *Interstate Circuit*, acceptance of the invitation to participate in a plan is itself sufficient to establish an unlawful conspiracy.[30]

But even if parallel conduct were required, Plaintiffs have made the necessary showing. Each landlord, including HNN and Pillar, shared commercially sensitive data with Yardi— including pricing and supply data—with the understanding that this data would be shared with competitors and used to set prices. ¶¶ 8-10, 12, 86, 109-112. As Plaintiffs explain in the omnibus opposition, this constitutes parallel conduct. *See* Omnibus Opp. § IV.A.3. As one Yardi employee confirmed, all Yardi clients contractually agree to share pricing and occupancy data with Yardi so that data can become part of Yardi Matrix and RENTmaximizer. ¶¶ 12, 86, 106.

HNN argues that is not parallel conduct because Plaintiffs have not shown that "HNN [] raised its prices." HNN Mot. at 5. But Plaintiffs have shown that Yardi users charged higher prices: Plaintiffs' regression analysis showed pricing was 6% higher for properties using RENTmaximizer compared to those that were not, even after controlling for various factors. ¶ 118. And Yardi has celebrated its own "statistical proof" that RENTmaximizer "produces consistently better results than the market" following a study that compared the rental rate of all RENTmaximizer properties in all markets "against their market, the submarket, and submarket-equivalent properties" by using data collected from "more than 9.2 million units" across the country from the end of 2012 to April

---

[29] *See Meyer v. Kalanick*, 174 F. Supp. 3d 817, 823-24 (S.D.N.Y. 2016) (citing *Interstate Circuit*, 306 U.S. at 226-27).

[30] *Interstate Circuit*, 306 U.S. at 227.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  2014. ¶¶ 69, 120-21. These allegations, which must be taken as true, are enough to show parallel
2  conduct.[31] At the pleading stage, no more is needed.[32]

3      But Plaintiffs do in fact go further—these allegations also imply that HNN and Pillar
4  engaged in public signaling and policing, which are two plus factors that make conspiracy more
5  likely. Both HNN and Pillar publicly announced their participation in RENTmaximizer. Courts
6  have recognized that public statements often have "multiple purposes or meanings directed at
7  different audiences."[33] As such, public statements can help signal a defendant's continued
8  adherence to the overall conspiracy.[34] On the other hand, if RENTmaximizer was giving HNN or
9  Pillar a competitive advantage in the market, then it would be irrational for them to announce their
10  strategy to competitors—who could then swoop in and cost them the advantage. And so it is rational
11  to infer that these press releases, which were coordinated by Yardi, may have served as a form of
12  public signaling supporting adherence to the scheme.

13      So too with HNN and Pillar's direct exchange of pricing information with competitors.
14  HNN argues that this exchange is "irrelevant" because "the alleged surveys have nothing to do with
15  RENTmaximizer." HNN Mot. at 7. And Pillar argues, based on extrinsic evidence of two rental
16  contracts, that the plausibility of an information sharing conspiracy is undermined. Pillar Mot. at 8.
17  But it is well-established that "the exchange of price information alone can be 'sufficient to establish
18  the combination or conspiracy."[35] Such exchanges also "may be used to police a secret or tacit
19  conspiracy to stabilize prices."[36] Here, HNN and Pillar's direct exchange of pricing information
20  with competitors could have helped stabilize the conspiracy because HNN and Pillar were getting

21

22  [31] *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, 2023 WL 9004806, at *10 (M.D.
23  Tenn. Dec. 28, 2023) (a parallel change in pricing strategy is sufficient to show parallel conduct).

24  [32] *Id.*; *see Flextronics Int'l USA, Inc. v. Panasonic Corp.*, 2023 WL 4677017, at *2 (9th Cir. July 21,
2023) (finding district court erred by requiring plaintiff to plead facts tending to exclude the possibility that
defendants acted independently at the motion to dismiss stage).

25  [33] *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 799 (N.D. Ill. 2017).

26  [34] *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 767 (D. Minn. 2020) (upholding complaint where
27  plaintiffs relied on public statements, which "served a signaling purpose and emphasized to one another that
solidarity existed").

      [35] *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d at 902.

28  [36] *Todd v. Exxon Corp.*, 275 F.3d 191, 212 (2d Cir. 2001).

real-time confirmation that none its competitors were cheating by offering lower rates. ¶¶ 8, 22, 86, 103, 110. And so this is a relevant plus factor.[37]

### 3.    The Complaint answers the questions "who, did what, to whom (or with whom), where, and when?"[38]

In *Kendall*, the Ninth Circuit affirmed dismissal of a complaint because, even after having the opportunity to conduct depositions, the plaintiffs could provide "*no* evidentiary facts and answered *none* of the[] questions," who did what, to whom (or with whom), where, and when.[39] Defendant Pillar argues that Plaintiffs' Complaint must be dismissed on the same grounds. Pillar Mot. at 5-8. But Plaintiffs do answer these questions.[40]

**Who?** Relying on *Kendall*, Pillar argues that the Complaint must establish "*who* from Pillar authorized and/or joined the alleged conspiracy on its behalf." Pillar Mot. at 6. But *Kendall* did not establish a heightened pleading requirement and district courts have upheld complaints that do not identify the "specific … employees who entered the agreement."[41] *Kendall* involved a unique set of facts—even after discovery, plaintiffs could not name any specific employees who carried out the conspiracy, or the dates when they communicated.[42] Under these circumstances, the plaintiffs' "naked" allegations of conspiracy failed to put defendants on notice to defend it claims.[43] Here, in contrast, the Complaint alleges that Pillar entered into an agreement with Yardi by at least 2016.

---

[37] HNN also argues that plus factors are only relevant if a complaint alleges parallel conduct. But Plaintiffs have alleged parallel conduct; each defendant submitted "their data, such as rental rates and occupancy" into Yardi's system, which "automatically incorporates" the data into "the 'rent recommendation' that users can—and are encouraged to—automatically adopt." ¶¶ 71, 72. *See* Omnibus Opp. § IV.A.3.

[38] *Kendall*, 518 F.3d at 1047.

[39] *Copeland v. Energizer Holdings, Inc.*, 2024 WL 511224, at *4 (N.D. Cal. Feb. 9, 2024) (citing *Kendall*, 518 F.3d at 1048).

[40] Pillar also argues that Plaintiffs fail to establish that Yardi's software constitutes an unlawful vertical agreement and that Plaintiffs have a viable information exchange claim under the rule of reason. Pillar Mot. at 9-10. Because both arguments are identical to arguments made by all Defendants in the Omnibus Motion, Plaintiffs address these arguments in their omnibus opposition. *See* Omnibus Opp. § IV.C.

[41] *Copeland*, 2024 WL 511224, at *4.

[42] *Kendall*, 518 F.3d at 1045.

[43] *Id.*

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN
ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – 9
Case No. 2:23-cv-01391-RSL

¶ 43. That provides enough specificity to put Pillar on notice.[44] And in any event, Plaintiffs go further and *do* identify documents that name a Pillar employee who acknowledged the agreement— Pillar's senior vice president of multifamily operations credited Yardi for "driv[ing] higher revenue."[45] ¶ 92. Plaintiffs also cite a Facebook post where that same executive discusses the ways that RENTmaximizer "empowered their success." ¶ 43 n. 47. This is more than enough to put Pillar on notice.[46]

*Did what?* Pillar argues that without identifying specific "communications between Pillar and its competitors," Plaintiffs cannot answer the key question about how the agreement operated. Pillar Mot. at 6-7. As explained in Plaintiffs' omnibus opposition, this claim is legally incorrect[47] and was rejected in *RealPage*[48]—where the court found the "most persuasive evidence of horizontal agreement" to be "the simple undisputed fact that each RMS Client Defendant provided RealPage its proprietary commercial data, knowing that RealPage would require the same from its horizontal competitors and use all of that data to recommend rental prices to its competitors."[49] So too here.[50] Further, Yardi served as a go-between for all participants, and conspirators could know who was participating. ¶ 95. Participants knew "that if they shared data, they would get data from other clients." ¶¶ 12, 94, 139. And in any event, Plaintiffs (unlike in RealPage) here specifically allege that Landlord Defendants communicate directly with their co-conspirators by conducting their own

[44] Plaintiffs' allegations also contrast with *Bay Area*, where plaintiffs alleged a "continuous stream of communications" but did not specify who engaged in these communications or when they occurred. *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 995 (N.D. Cal. 2015).

[45] Pillar's argument that this quote is misleading (Pillar Mot. at 3) cannot be credited at the pleading stage. *See supra* § I.

[46] Pillar's reliance on *Gibson* (Pillar Mot. at 6) is also unpersuasive, for the same reasons as stated in the Omnibus Opposition. *See* Omnibus Opp. at § IV.A.1.

[47] As the Department of Justice explained in *RealPage*, "the alleged scheme constitutes price fixing regardless of whether the competing landlords ever communicated with one another about prices" because "[u]nder *Interstate Circuit*, it suffices to show that RealPage proposed the price-fixing scheme to competing landlords, who were each aware that its competitors were also being invited to participate in the scheme, and the competitors adhered to it—generating a common understanding among the competitors that they would increase prices collectively by using RealPage." DOJ Statement of Interest at 20-21; *see also id.* at 6-8.

[48] *See* Omnibus Opp. § IV.A.1.

[49] *RealPage*, 2023 WL 9004806, at *15, *24-25.

[50] As a senior Yardi account executive explained, while Yardi clients were "very concerned about sharing their rental rates," they "appreciated the fact that if they shared data, they would get data from other clients using things like RENTmaximizer, so that everybody was benefitting from the data." ¶ 139.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN
ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – 10
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    "market surveys" regarding competitor rents. ¶¶ 25-26, 51, 140-142. These allegations—which

2    include statements by many confidential witnesses—contrast with the pleadings in *Kelsey K.*, where

3    the plaintiffs could not find even a single confidential witness who could provide details about the

4    conspiracy.[51]

5            Pillar's argument that there are no allegations that it agreed to "not exercise discretion"

6    (Pillar Mot. at 6) also misunderstands the Complaint and the nature of the alleged scheme. Yardi

7    said that it "automate[d] the rental pricing process," that "property pricing is *controlled* by

8    RENTmaximizer," and that RENTmaximizer "remove[s] the need for human intervention." ¶¶ 14,

9    22, 67, 76. Or as Yardi put it in a now-deleted blog post, "If you have to approve prices from your

10   pricing technology, do you really have a pricing system?" ¶ 67. As explained in Plaintiffs' omnibus

11   opposition, and as the court in *RealPage* also found, Plaintiffs do not need to allege that Pillar was

12   "required" to accept RENTmaximizer's recommendations in order to state a claim.[52] Instead,

13   Plaintiffs plausibly allege that Yardi RENTmaximizer users adopt recommended rates at a

14   sufficiently high rate, that they "disrupt the competitive process," and that there was a "mutual

15   understanding among the competing landlords to use [Yardi's] prices as a starting point."[53] Pillar's

16   argument is "premised on the baseless assumption that, when [a Landlord Defendant] departed from

17   [RENTmaximizer's] recommended price, it adopted a price consistent with ordinary market

18   conditions."[54]

19           ***With Whom?*** Pillar wrongly claims that the Complaint "fails to allege facts indicating that

20   Pillar *competed* with any of the other Lessors." Pillar Mot. at 7. In making this argument, Pillar

21   asserts that "only one other Lessor, HNN, has a property in Seattle, and that property is in a very

22   different neighborhood" than two other Pillar properties. *Id.* Pillar hopes the Court will infer from

23

24   ─────────────────
     [51] *Kelsey K. v. NFL Enters., LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017), *aff'd*, 757 F. App'x 524
     (9th Cir. 2018).

25   [52] *See* Omnibus Opp. § IV.A.1; *see also RealPage*, 2023 WL 9004806, at *11, 16, 24, 36 n.26.

26   [53] *See* DOJ Statement of Interest at 22-23 (explaining that "courts have often applied the per se rule even
     though the fixed prices were non-mandatory" where the challenged price-fixing scheme disrupted the

27   competitive process" and that "[i]t is not necessary for liability that the scheme succeed in raising prices")
     (collecting cases).

28   [54] *RealPage*, 2023 WL 9004806, at *36 n.26.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

this argument that Pillar did not compete with any other Yardi user. Although the Court can take judicial notice of the existence of documents, the Court cannot "draw inferences or take notice of facts that might reasonably be disputed."[55] And in any event, that inference is so misleading that it is difficult to know where to begin. First, Pillar operates far more than two properties in the Seattle area. As alleged in the Complaint, Pillar manages more than 2,000 units. ¶ 43. That includes Nolo and the Wave, but also Stadium Place (Seattle), the Century (Seattle), the Corydon (Seattle), the Lyric (Seattle), the Noble (Seattle), the Lex (Tacoma), the 101 (Kirkland), and more. And it also isn't true that Pillar and HNN are the only two Yardi users in the Seattle/King County area; Confidential Witness 2 was a former employee for Bridge Property Management—another property company that operates in the Seattle area. He said prices generated by Yardi were never questioned and gave Seattle area properties "an unfair advantage" because lessors "all know what they should be renting for" using the same platform. ¶ 22 n.23. He also admitted that he would call competitors in the area to ask about pricing. ¶ 26. And of course, there are more than these three Yardi users in the Seattle market; Yardi itself claims to have pricing data from "90% of the United States population." ¶ 101. Plaintiffs' allegations include the unnamed co-conspirators who have not publicly announced their participation in the scheme. ¶ 51. Yardi also confirmed RENTmaximizer uses "revenue intelligence" from the "*market, submarket, and competition*" to "eliminate rental rate guesswork." ¶¶ 85-86.

**When?** Pillar also suggests that Plaintiffs "have no information regarding when Pillar or any of the other Lessors joined the alleged conspiracy" and that Plaintiffs state "only that it began in 2011." Pillar Mot. at 7. That isn't true. Plaintiffs allege that Pillar began using RENTmaximizer in at least 2016 (¶ 43), and that Landlord Defendants, including Pillar, participated in the conspiracy by accepting Yardi's invitation to join the algorithmic pricing scheme—meaning that each shared its confidential data with Yardi, and delegated pricing decisionmaking, with the understanding that this scheme was designed to raise rental prices above a competitive level. As explained in Plaintiffs'

---

[55] *U.S. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    omnibus opposition, the argument that Landlord Defendants did not begin using RENTmaximizer

2    in close enough proximity to constitute parallel conduct fails.[56]

3    **B.    HNN and Pillar cannot contradict the pleadings, introduce extraneous evidence, and draw inferences in their favor at the pleadings stage.**

4           Rather than address the bulk of Plaintiffs' allegations, both HNN and Pillar try to introduce

5    distractions—evidence outside the Complaint, strange hypotheticals, and inferences that favor their

6    narrative. Defendants cannot insert their own version of the facts at the pleading stage; otherwise,

7    it would "become[] near impossible for even the most aggrieved plaintiff to demonstrate a

8    sufficiently 'plausible' claim."[57] This is why district courts generally may not consider any material

9    outside the pleadings when resolving a motion to dismiss under Rule 12(b)(6).[58] And even if a

10   district allows extraneous material to be considered, it is "improper to assume the truth of an

11   incorporated document" if it is offered to dispute the facts within the Complaint.[59] Both HNN and

12   Pillar request consideration of external information—but more than that ask this Court to make

13   factual determinations based on this evidence at the pleading stage.

14           **1.    HNN asks the Court to draw inferences based on facts not alleged in the Complaint.**

15

16           HNN seeks to impose its own version of the facts by stating that 93% of its property

17   portfolio is rent-controlled by statute. HNN Mot. at 1. HNN expects the Court to accept that

18   statement as true—without any support—*and* agree that it is evidence that would prevent HNN

19   from participating in a price-fixing conspiracy. As HNN agrees, "the Court will not find any of that

20   information in Plaintiffs' complaint." *Id.* at 1. HNN therefore is asking the Court to infer—from

21   information not within the four corners of the Complaint—that it is *impossible* for HNN to raise,

22   depress, fix, peg, or stabilize any prices because it leases some rent-controlled units. But of course

23   it can price-fix the units that are not subject to rent control. And it can also fix prices up for rent-

24

---

25   [56] Omnibus Opp. § IV.A.3(a); *see RealPage*, 2023 WL 9004806, at *13, 19 ("Plaintiffs need not allege

26   that Defendants simultaneously adopted this new pricing strategy for it to be considered parallel conduct.") (citing *Interstate Cir.*, 306 U.S. at 227).

27   [57] *Khoja*, 899 F. 3d at 999.

28   [58] *Id.* at 998.
     [59] *Id.* at 1002.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  controlled units, so long as the fixed rate does not exceed the statutorily set rate. Courts do not

2  resolve these types of factual disputes at the pleading stage.[60]

3       HNN also tries to draw the Court into contending with a hypothetical—it asks the Court to

4  "suppose" that HNN "began using RENTmaximizer in 2012 at the tail end of the Great Recession

5  … [but then] largely stopped using RENTmaximizer once the economy improved." HNN Mot. at

6  5. This is a fascinating, but futile, fictitious exercise. First, it contradicts Plaintiffs' Complaint,

7  which alleges that HNN was using RENTmaximizer in 2015. ¶ 39. HNN's own managing partner,

8  Philip Nored, praised RENTmaximizer in 2015 for taking the "guesswork out of our rental pricing

9  and lease terms." ¶ 90. But even if discovery revealed that HNN had "largely stopped," it would

10  still be liable, because largely stopping conspiratorial conduct is not legally the same as

11  withdrawing from a conspiracy. Under Ninth Circuit law, "[t]o withdraw from a conspiracy a

12  defendant must either disavow the unlawful goal of the conspiracy, affirmatively act to defeat the

13  purpose of the conspiracy, or take definite, decisive, and positive steps to show that the defendant's

14  disassociation from the conspiracy is sufficient."[61] So even in its own hypothetical, HNN did not

15  withdraw from the conspiracy. In any event, because this contradicts the pleadings, the Court need

16  not consider it.

17      **2.**    **Pillar also inappropriately asks the Court draw inferences based off of contested facts.**

18       Pillar goes a step further and asks the Court to consider the named Plaintiffs' leases—either

19  by the incorporation-by-reference doctrine or through judicial notice—and then make the enormous

20  logical leap that these leases disprove the existence of the conspiracy. Pillar Mot. at 2-3, 8, 10. The

21  Ninth Circuit has warned that there is "a concerning pattern" where defendants try to "exploit[]

22  these procedures improperly to defeat what would otherwise constitute adequately stated claims at

23  the pleading stage."[62] As such, courts should guard against "the unscrupulous use of extrinsic

24

25

26  [60] *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) ("At the motion to dismiss phase, the trial court must accept as true all facts alleged in the Complaint and draw all reasonable inferences in favor of the plaintiff.").

27  [61] *U.S. v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992) (citation omitted).

28  [62] *Khoja*, 899 F.3d at 998.

1  documents to resolve competing theories against the complaint[,] [which] risks premature

2  dismissals of plausible claims that may turn out to be valid after discovery."[63]

3      And in any event, these leases do not contradict Plaintiffs' alleged harm; the Court would

4  have to draw many inferences to make that logical leap. The Complaint alleges that the named

5  Plaintiffs "paid inflated rental prices as a result of [Pillar's] usage of Yardi's centralized pricing

6  mechanism." ¶¶ 33-34. Even if Pillar's claims are taken at face value, all the leases show is that the

7  named Plaintiffs received *some* concession. But the leases cannot show that the named Plaintiffs

8  would have received the *same concessions they would have received* if Pillar had not used

9  RENTmaximizer. Was Pillar offering the same concessions before RENTmaximizer was widely

10 adopted? Do the rent increases caused by RENTmaximizer cancel out the discount the concessions

11 provided in a competitive world? It is econometric evidence, such as a regression analysis or

12 yardstick analysis, that will answer these questions.[64] As noted above (and as the court recognized

13 in *RealPage*), it would be "baseless" to assume at this stage that when Lessor Defendants departed

14 from Yardi's recommended prices, they adopted prices consistent with ordinary market conditions.

15     By Pillar's logic, if one customer received a discount from a single defendant in any price-

16 fixing conspiracy, then it is sufficient to dismiss that defendant's participation as implausible. Pillar

17 points to no case law that supports this position. And this Court has resisted accepting similar

18 arguments at this stage of the litigation.[65] This also strips down and breaks apart the holistic view

19 of the well-pleaded allegations that courts are required to consider.[66]

20     Nor is it surprising that the named Plaintiffs, who are ordinary consumers, signed an

21 adhesion contract written by Pillar that "contemporaneously acknowledged that their rent was a

22 'fair representation of what the specific dwelling would actually rent for at the time the Lease

---

[63] *Id.* at 988-99 ("If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.") (citation omitted).

[64] *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *7 (C.D. Cal. Feb. 7, 2023) (reviewing various but for worlds analyzed by experts at the class certification stage).

[65] *Brown v. Amazon.com Inc.*, 2023 WL 5793303, at *9 (W.D. Wash. Sept. 7, 2023).

[66] *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th at 53.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS FROM HNN ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – 15
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  Contract was negotiated and executed, and is reflective of the rent for a similar dwelling at

2  comparable properties.'" Pillar Mot. at 3 (citation omitted). Proof of a conspiracy is "largely in the

3  hands of the alleged conspirators," and it is unsurprising that consumers did not know that an

4  antitrust violation was occurring.[67]

5              **a.    The incorporation by reference doctrine is not appropriate.**

6        Relying on a smattering of false advertising cases, Pillar asks this Court to incorporate the

7  Plaintiffs' leases into the Complaint. And even further, Pillar asks this Court to infer that these

8  leases mean that it is implausible that Pillar joined a common scheme to share data with competitors

9  and price apartments using the common algorithm, RENTmaximizer.

10        The purpose of the incorporation by reference doctrine is to "prevent[] plaintiffs from

11  selecting only portions of documents that support their claims, while omitting portions of those

12  very documents that weaken—or doom—their claims."[68] But for a court to apply this doctrine, the

13  external evidence *must* "form the basis of [Plaintiffs'] claims."[69] The "mere mention of the

14  existence of a document is insufficient to incorporate the contents of a document by reference."[70]

15  Here, Plaintiffs' leases are only mentioned in passing and are not central to the allegations—which

16  are based on antitrust law, not contract law.

17        At best, these leases "merely create[] a defense to the well-pled allegations in the

18  complaint," either by showing that Pillar cheated while participating in the conspiracy, or that

19  Plaintiffs were not harmed by the overcharge. But at the pleading stage, it would be inappropriate

20  to credit this defense, "[o]therwise, defendants could use the doctrine to insert their own version of

21  events into the complaint to defeat otherwise cognizable claims."[71] Moreover, it "is improper to

22  assume the truth of an incorporated document if such assumptions only serve to dispute facts stated

---

[67] *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015) (cleaned up).
[68] *Khoja*, 899 F.3d 988, 1002.
[69] *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).
[70] *Id.* (citations and quotation marks omitted).
[71] *Khoja*, 899 F.3d at 1002.

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – 16
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    in a well-pleaded complaint."[72] So it is here—Plaintiffs have provided preliminary results that show

2    using RENTmaximizer led to an overcharge. ¶ 118.

3        The cases cited by Pillar are in inapposite because they are incorporating documents integral

4    to the claim. For example, in *Keithly*, this Court incorporated screenshots of "the pages plaintiffs

5    would have seen when they purchased" a product that was alleged to have been falsely advertised

6    because the plaintiffs' claims were "based on the design of and statements made" on the website.[73]

7    But where Pillar seeks to construe its materials in a light favorable only to it, this Court properly

8    considered the false advertising screenshots "in the light most favorable to Plaintiffs" and allowed

9    the consumer protection claims to proceed for at least some plaintiffs.[74] In contrast, Plaintiffs' leases

10   are not "helpful in ascertaining whether" Pillar violated antitrust law, and so they cannot be

11   considered under the incorporation-by-reference doctrine.

12                **b.    The Court cannot take judicial notice of these documents**.

13       Under Rule 201, judicial notice can be taken of an adjudicative fact if it is "generally

14   known" or "can be accurately and readily determined from sources whose accuracy cannot

15   reasonably be questioned."[75] "Because the effect of judicial notice is to deprive a party of an

16   opportunity to conduct discovery and rebut the moving party's evidence," judicial notice is not

17   appropriate if the Court is unable "to confirm the accuracy of the facts presented in these

18   documents."[76] Judicial notice is not appropriate here where "every assertion of fact within that

19   document" could be open to interpretation.[77] A court cannot take judicial notice when "there is a

20   reasonable dispute as to what the [record] establishes."[78] For the reasons already discussed above,

21   that is true here.

22

23

---

24       [72] *Id.* at 1003.

         [73] *Keithly*, 764 F. Supp. 2d at 1261.

25       [74] *Id.* at 1260.

         [75] Fed. R. Evid. 201.

26       [76] *Keithly*, 764 F. Supp. 2d at 1261.

27       [77] *Khoja*, 899 F.3d 988, 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

28       [78] *Id.* at 1000.

1

## III.    CONCLUSION

2          Taking the factual allegations as true and reading the Complaint as a whole, Plaintiffs have

3   adequately pled HNN and Pillar's participation in the alleged conspiracy. Plaintiffs respectfully ask

4   the Court to deny HNN and Pillar's separate motions to dismiss.

5

6   DATED: February 23, 2024                    Respectfully submitted,

7                                               **HAGENS BERMAN SOBOL SHAPIRO LLP**

8                                               */s/ Steve W. Berman*
                                                Steve W. Berman (WSBA No. 12536)

9                                               */s/ Theodore Wojcik*
                                                Theodore Wojcik (WSBA No. 55553)

10

11                                              */s/ Stephanie A. Verdoia*
                                                Stephanie A. Verdoia (WSBA No. 58636)

12                                              */s/ Xiaoyi Fan*
                                                Xiaoyi Fan (WSBA No. 56703)

13

14                                              1301 Second Avenue, Suite 2000
                                                Seattle, WA 98101
                                                Telephone: (206) 623-7292
15                                              Facsimile: (206) 623-0594
                                                Email: steve@hbsslaw.com
16                                              Email: tedw@hbsslaw.com
                                                Email: stephaniev@hbsslaw.com
17                                              Email: kellyf@hbsslaw.com

18                                              Rio S. Pierce (*pro hac vice*)
                                                **HAGENS BERMAN SOBOL SHAPIRO LLP**
19                                              715 Hearst Avenue, Suite 300
                                                Berkeley, CA 94710
20                                              Telephone: (510) 725-3000
                                                Facsimile: (510) 725-3001
21                                              Email: riop@hbsslaw.com

22                                              *Attorneys for Plaintiffs*

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS BY HNN
ASSOCIATES AND R.D. MERRILL REAL ESTATE HOLDINGS – 18
Case No. 2:23-cv-01391-RSL



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX