1  The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MCKENNA DUFFY, individually and on behalf of all others similarly situated,

    *Plaintiffs*,

v.

YARDI SYSTEMS, INC., et al.,

    *Defendants*.

Case No. 2:23-cv-01391-RSL

STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

    The United States, through the U.S. Department of Justice and the Federal Trade Commission ("FTC"), respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which permits the Department of Justice "to attend to the interests of the United States" in any case pending in federal court. Both the Antitrust Division of the U.S. Department of Justice and the FTC enforce the federal antitrust laws, including the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and have a strong interest in their correct application.

    In this case, plaintiffs allege that competing landlords[1] violated Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Section 1"), by, among other things, unlawfully agreeing "to use Yardi's

---

[1] "Landlords" in this Statement of Interest refers to all lessors described in the complaint who allegedly participated in the combination or conspiracy in restraint of trade.

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 1

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

pricing algorithms to artificially inflate" multifamily rental prices. First Amended Class Action Complaint ("FAC"), ECF No. 113, ¶ 180. Defendants have moved to dismiss the amended complaint. Omnibus Motion to Dismiss, ECF No. 138 (hereinafter "Mot."). Because judicial treatment of the use of algorithms in price fixing has tremendous practical importance, the United States submits this Statement to notify the Court of the United States' Statement of Interest and accompanying Memorandum of Law (jointly hereafter "Statement of Interest") in *In re RealPage, Inc., Rental Software Antitrust Litig.*, No. 3:23-MD-3071 (M.D. Tenn. Nov. 15, 2023), ECF Nos. 627, 628, attached hereto as Attachments A and B, in which the United States discusses the key legal principles applicable to claims of algorithmic price fixing. The United States also submits this Statement to address an incorrect legal position in defendants' motion to dismiss: that the landlords' retention of some pricing discretion dooms a price-fixing claim. Mot. 14-17. Case law is clear that competitors may not agree to fix the *starting point* of pricing (e.g., agree to fix advertised list prices) even if the actual charged prices vary from the starting point. Moreover, where competitors agree to fix end prices, such price-fixing agreements are per se unlawful regardless of whether the conspirators adhere to or enforce compliance with the fixed prices.

## ARGUMENT

There are two central elements of a Section 1 claim: **(1)** a "contract, combination, or conspiracy," 15 U.S.C. § 1—that is, "concerted action," or the joining together of "independent centers of decisionmaking"—**(2)** that "unreasonably restrains trade." *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 186, 195 (2010). The United States' Statement of Interest in *In re RealPage* discusses the legal framework for both. *See* Attachment B.

As to the first element, the *RealPage* Statement of Interest explains that concerted action can take many forms—including, *inter alia*, competitors' jointly delegating key aspects of their decisionmaking to a common algorithm, because doing so "joins together separate

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 2

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

decisionmakers" and thus "deprives the marketplace of independent centers of decisionmaking." Attachment B at 5-8 (citing *Am. Needle*, 560 U.S. at 195, and other sources). It further explains that concerted action can be proven in various ways and does not require proof of parallel conduct and plus factors. *Id.* at 8-12.

As to the second element, the *RealPage* Statement of Interest explains that, under longstanding Supreme Court precedent, price-fixing agreements among actual or potential competitors are "all banned" whatever their form. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940). As the Statement of Interest makes clear, per se unlawful price fixing includes not only competitors' acting in concert to set the same price at which a product is bought or sold, but also competitors' acting in concert to "rais[e], depress[], . . . peg[], or stabiliz[e] the price of a commodity." *Id*. at 223. This prohibition includes agreements to use the same pricing formula—analogous to agreements to use the same pricing algorithm. Attachment B at 17-20 (citing *Socony-Vacuum*, 310 U.S. at 224-226 n.59 (condemning as per se unlawful agreement to use the same "formula underlying price policies"); *Citizen Publ'g Co. v United States*, 394 U.S. 131, 133-36 (1969) (finding per se unlawful the collective delegation of pricing decisions to a joint entity)).

Defendants' motion to dismiss runs afoul of these key principles. Defendants claim that plaintiffs' failure to allege adherence to Yardi's recommended prices dooms the amended complaint, Mot. 14-17, but they are wrong on the law: It is per se illegal for competing landlords to jointly delegate key aspects of their pricing to a common algorithm, even if the landlords retain some authority to deviate from the algorithm's recommendations. *See* Attachment B at 22.

Although full adherence to a price-fixing scheme may render it more effective, the *effectiveness* of the scheme is not a requirement for per se illegality. Consistent with black-letter

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 3

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

conspiracy law,[2] the violation is the agreement, and unsuccessful price-fixing agreements also are per se illegal. *Socony-Vacuum*, 310 U.S. at 224 n.59; *United States v. Trenton Potteries*, 273 U.S. 392, 402 (1927) (it is "immaterial" whether "the purpose of the conspiracy was accomplished in whole or in part"); *Plymouth Dealers' Ass'n of N. California v. United States*, 279 F.2d 128, 132-33 (9th Cir. 1960) (even if the "plan . . . did not ultimately succeed," defendants are not "absolve[d]"); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 362-63 (3d Cir. 2004) (similar); *United States v. Gravely*, 840 F.2d 1156, 1161 (4th Cir. 1988) (similar).

Consonant with this principle, courts have explained that, just as competitors cannot agree to fix their *final* prices, competitors cannot agree to fix the *starting* point of their prices; both types of agreements corrupt the decentralized price-setting mechanism in the market, whether or not they ultimately succeed in raising or stabilizing prices. The Sherman Act condemns "[a]ny combination which tampers with price structures," because such a combination "directly interfer[es] with the free play of market forces." *Socony-Vacuum*, 310 U.S. at 221; *see also Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 774 (2d Cir. 2016) (horizontal price fixing "is anathema to an economy predicated on the undisturbed interaction between supply and demand").

Courts accordingly have held that it is per se illegal for competitors to fix advertised *list* prices or sticker prices. *See* Attachment B at 20-22. In *Plymouth Dealers' Association*, 279 F.2d 128, for instance, a defendant convicted of price fixing for agreeing with competing dealers on a "fixed uniform list price" for Plymouth cars argued that the conviction could not be upheld because the government's case required "proof of something more—that [the uniform list price] was adhered to; that it was utilized to fix prices; or that it did actually fix prices." *Id.* at 130. The

---

[2] *See United States v. Torres*, 503 F.2d 1120, 1124 n.2 (2d Cir. 1974) ("[A] conspiracy is punishable even if unsuccessful."); *United States v. Paluch*, 84 F. App'x 740, 744 (9th Cir. 2003) (unpub.) ("the mere fact that his acts in furtherance of the conspiracy were unsuccessful does not relieve [the defendant] of liability"). The Sherman Act is "on the common-law footing," and so embodies this conspiracy principle. *Nash v. United States*, 229 U.S. 373, 378 (1913).

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 4

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

Ninth Circuit rejected this argument, stating that "the fact that the dealers used the fixed uniform list price in most instances only as a starting point[] is of no consequence." *Id.* at 132-33. As the court of appeals explained, "[t]he test is not what the actual effect is on prices, but whether such agreements interfere with 'the freedom of traders and thereby restrain their ability to sell in accordance with their own judgment.'" *Id*. at 132 (quoting *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 213 (1951), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp*., 467 U.S. 752 (1984)). The list-price agreement met that test, the court of appeals reasoned, because the list price "'prevent[ed] the determination of (market) prices by free competition alone.'" *Id.* at 134 (quoting *Socony-Vacuum Oil Co.*, 310 U.S. at 222, 223).

Numerous other courts of appeals likewise have rejected attempts to impose minimum rates of adherence when assessing agreements to fix the starting point of pricing. Rather than look to rates of adherence, courts reason that the fixed prices necessarily had some influence on the market—thus disrupting the competitive process—from the very fact that defendants bothered to fix such prices at all. In *In re High Fructose Corn Syrup Antitrust Litig*., 295 F.3d 651 (7th Cir. 2002) (Posner, J.), for instance, the Seventh Circuit rejected defendants' argument that there is no horizontal price-fixing conspiracy where "many of the actual sales" occurred below the fixed list prices. *Id*. at 656. The court explained that an agreement on list prices is a per se violation "even if *most or for that matter all* transactions occur at lower prices," because "sellers would not bother to fix list prices if they thought there would be no effect on transaction prices," *id*. (emphasis added). It was sufficient that the list price was "usually the starting point for the bargaining." *Id*. Similarly, in *Gelboim*, 823 F.3d at 775-77, the Second Circuit held that a horizontal conspiracy to fix the LIBOR interest rate (a component of the price of certain financial instruments) is subject to the per se rule even where consumers could negotiate the final price. As the court put it, "antitrust law is concerned with influences that corrupt market conditions," *id*. at 773; indeed,

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 5

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

"even if *none* of the appellants' financial instruments paid interest at [the fixed] LIBOR [rate]," plaintiffs can bring "an antitrust claim based on the *influence* that a conspiracy exerts on the *starting point* for prices," *id*. at 776 (emphases added); *see also In re Flat Glass*, 385 F.3d at 362-63 (explaining defendants "cannot[]seriously contend that the [competitors] increased their list prices with no intention of affecting transaction prices").

The same principle holds in cases involving joint delegation of pricing recommendations to a common algorithm. By altering the starting point of prices, such agreements among competitors are analogous to agreements to fix list prices—distorting the competitive pricing process that the per se rule protects. As the Supreme Court made clear in *United States v. National Association of Real Estate Boards*, 339 U.S. 485 (1950), even "non-mandatory" rate schedules can constitute price fixing. *Id*. at 488.[3] As the Court explained, "the fact that no penalties are imposed for deviations from the price schedules is not material." *Id*. at 489.

Moreover, even when competitors agree to fix end prices, adherence to the agreed-upon prices is not a condition of per se illegality. As explained above, the *agreement* is the violation, and unsuccessful price-fixing schemes are as unlawful as successful ones. For this reason, defendants are wrong to suggest (Mot. 16-17) that a complaint must allege a binding enforcement mechanism to state a valid claim for per se price fixing. This suggestion "fail[s] to distinguish between the existence of a conspiracy and its efficacy." *In re High Fructose*, 295 F.3d at 656; *see also In re Flat Glass*, 385 F.3d at 362. Indeed, under defendants' view of the law, a price-fixing cartel could evade per se treatment simply by inviting some participants who tend to deviate from the fixed prices or by agreeing that some deviation was allowed. The law banning horizontal

---

[3] That *United States v. National Association of Real Estate Boards*, 339 U.S. 485 (1950) (*NAREB*) involved Section 3 rather than Section 1 of the Sherman Act is immaterial to the analysis; Section 3 merely extends the prohibitions of Section 1 to U.S. territories and the District of Columbia. *See* 15 U.S.C. § 3.

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 6

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

price-fixing agreements—the "archetypal" per se violation, *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980)—does not have such loopholes.[4]

Dated: March 1, 2024

Respectfully submitted,

| | |
|---|---|
| HENRY LIU<br>*Director, Bureau of Competition* | JONATHAN S. KANTER<br>*Assistant Attorney General* |
| LAURA ALEXANDER<br>*Deputy Director, Bureau of Competition* | DOHA G. MEKKI<br>*Principal Deputy Assistant Attorney General* |
| LEIGH BARNWELL<br>KARA KING<br>KENNETH H. MERBER<br>ERIC ZEPP<br>*Attorneys, Bureau of Competition* | ANDREW J. FORMAN<br>*Deputy Assistant Attorney General*<br><br>DAVID B. LAWRENCE<br>*Policy Director* |
| ANISHA DASGUPTA<br>*General Counsel* | MARKUS BRAZILL<br>*Counsel to the Assistant Attorney General* |
| /s/ Kenneth H. Merber<br>Kenneth H. Merber, DC No. 985703<br>Federal Trade Commission<br>600 Pennsylvania Avenue, NW<br>Washington, DC 20580<br>Telephone: (202) 326-3573<br>Email: kmerber@ftc.gov | DANIEL E. HAAR<br>NICKOLAI G. LEVIN<br>STRATTON C. STRAND<br><br>YIXI (CECILIA) CHENG<br>*Attorneys*<br><br>/s/Yixi (Cecilia) Cheng<br>Yixi (Cecilia) Cheng, CA No. 325216<br>U.S. Department of Justice<br>Antitrust Division<br>950 Pennsylvania Ave NW, #3224<br>Washington, DC 20530<br>Telephone: 202-705-8342<br>Email: yixi.cheng@usdoj.gov |

---

[4] Finally, to the extent defendants are claiming that plaintiffs must identify some confidential information "shared *among the Lessor Defendants*," Mot. 25 (emphasis in original), rather than shared *with a common entity*, they are mistaken. Sharing confidential pricing information with a common pricing agent can be equivalent to sharing that information directly with a competitor. Where, as here, plaintiffs' allegations involve a conspiracy to *centralize* pricing decisions in a third-party algorithm, it is irrelevant to the scheme whether landlords share confidential information among themselves or with only the pricing agent; the alleged scheme is designed to obviate the need for competitors to share information directly with each other.

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 7

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342

TESSA M. GORMAN
*United States Attorney*

*s/ Rebecca S. Cohen*
REBECCA S. COHEN, WSBA No. 31767
Assistant United States Attorney
Western District of Washington
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Fax:  206-553-4067
Email:  rebecca.cohen@usdoj.gov

*Counsel for the United States of America*

Statement of Interest of the United States
(Case No. 2:23-cv-01391-RSL) - 8

U.S. Department Of Justice
950 Pennsylvania Ave. NW #3224
Washington, DC 20530
Telephone: (202) 705-8342