The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MCKENNA DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,<br><br>                             Plaintiffs,<br><br>    v.<br><br>YARDI SYSTEMS, INC., BRIDGE PROPERTY MANAGEMENT, L.C., CALIBRATE PROPERTY MANAGEMENT, LLC, DALTON MANAGEMENT, INC., HNN ASSOCIATES, LLC, LEFEVER MATTSON, MANCO ABBOTT, INC., MORGUARD CORPORATION, R.D. MERRILL REAL ESTATE HOLDINGS, LLC, SUMMIT MANAGEMENT SERVICES, INC., and CREEKWOOD PROPERTY CORPORATION,<br><br>                          Defendant. | No. 2:23-cv-01391-RSL<br><br>**LCR 37 JOINT SUBMISSION REGARDING PLAINTIFFS' REQUEST FOR PRODUCTION NO. 1**<br><br>**NOTE ON MOTION CALENDAR**: April 8, 2024 |

I.       MOVING PARTY'S INTRODUCTORY STATEMENT

**Background.** Plaintiffs Mckenna Duffy and Michael Brett (collectively "Plaintiffs") are the moving party for this submission. Plaintiffs are putative class representatives in a class action lawsuit against Yardi Systems, Inc. ("Yardi") and Landlord Defendants[1] (collectively, "Defendants"). They allege that Defendants orchestrated a nationwide price-fixing conspiracy that imposes artificially high rental prices on renters of multifamily housing.

Plaintiffs allege in their First Amended Complaint (ECF No. 113, hereafter "FAC") that Yardi operates as a central "hub," and Yardi's clients—including competing Landlord Defendants, who rent multifamily properties to putative class members—operate as the "spokes" by agreeing to use a software called RENTmaximizer.[2] FAC ¶¶ 29-31. When clients agree to use RENTMaximizer, they also agree to share competitively sensitive information with Yardi. FAC ¶ 12. In return, Yardi's clients then receive automated RENTmaximizer pricing recommendations that are based in part on competitively sensitive information shared by their competitors. FAC ¶ 13. This allows Yardi's clients, including Landlord Defendants, to charge their tenants—putative class members—higher rents than they would otherwise be able to in a competitive market. Consistent with Plaintiffs' allegations, Yardi itself concluded in a 2015 nationwide study that there was "significant statistical proof that RENTmaximizer produces consistently better results than the market[.]" FAC ¶ 122.

Proving—and quantifying—the impact of Defendants' conspiracy requires data on who used RENTmaximizer, when, and where. Plaintiffs have thus sought targeted documents from Yardi to confirm the number of multifamily housing units impacted by the conspiracy, identify Landlord Defendants' unnamed co-conspirators, and uncover relevant evidence to support

---

[1] Defendants Bridge Property Management, L.C., Calibrate Property Management, LLC, Dalton Management, Inc., HNN Associates, LLC, LeFever Mattson, Manco Abbott, Inc., Morguard Corporation, R.D. Merrill Real Estate Holdings, LLC, Summit Management Services, Inc., and Creekwood Property Corporation, collectively, are the "Landlord Defendants" identified in the First Amended Complaint, ECF No. 113, ¶ 2 fn 3.

[2] All references herein to RENTMaximizer also include by reference Revenue IQ—a newly named version of the same product according to Yardi's website. FAC ¶ 2 fn. 4.

Plaintiffs' claims. This would allow efficiency in the progression of the case by identifying

discoverable sources of admissible evidence and defining the scope and impact of the

conspiracy.  The documents sought are well within Rule 26(b)(1)'s scope and there is no basis to

delay production at this stage in the case. But Yardi has refused to produce any responsive client

data—even data within its possession, custody, and control—except as related to the named

Landlord Defendants.

**Procedural history.** To prevent delay and advance the case while Defendants' motions

to dismiss were pending before the Court, Plaintiffs initially served three limited Requests for

Production on Yardi on October 30, 2023. Berman Decl. Ex. A.[3] Yardi served Responses and

Objections on November 29, 2023. Berman Decl. Ex. B. Since then, Plaintiffs have met and

conferred with Yardi on December 21, 2023 and February 27, 2024 and have exchanged multiple

emails in between seeking a compromise to prevent this Motion. Berman Decl. ¶¶ 4-8. Plaintiffs

and Yardi came to an agreement on Request for Production No. 3.

However, the Parties are at an impasse regarding Request for Production No.1 ("RFP No.

1"), which seeks documents identifying all entities (clients) that use RENTmaximizer, the length

of time the entity has subscribed to RENTmaximizer, and the properties that are covered by the

entity's subscription. To date, Yardi has offered only to produce responsive documents related to

named Landlord Defendants. It has meanwhile refused to produce any documents or data related

to entities not expressly identified (including unnamed co-conspirators) in Plaintiffs' FAC.

In an attempt to reach compromise, Plaintiffs on two separate occasions have narrowed

the scope of RFP No. 1, and proposed that Yardi make a more limited production while

Defendants' motions to dismiss are pending. Berman Decl. ¶¶ 4-8.[4]  First, Plaintiffs proposed

that Yardi produce documents related to entities that use RENTmaximizer only in a state where

---

[3] RFP 1—the RFP at issue here—seeks documents related to Yardi's clients, including their identity and the number of units priced using RENTmaximizer; RFP 2 seeks documents related to Yardi conferences at which RENTmaximizer was discussed; RFP 3 seeks documents sufficient to show standard contract terms between Yardi and its clients related to RENTmaximizer.

[4] Plaintiffs have reserved their right to seek, in the event Defendants' motions to dismiss are denied, a fuller production pursuant to RFP No. 1, including documents related to all Yardi RENTmaximizer users.

any current named Landlord Defendant operates multifamily properties. Yardi rejected this proposal. Next, Plaintiffs further narrowed RFP No. 1, and proposed that Yardi produce documents related to entities that use RENTmaximizer only in states in which *two* currently named Landlord Defendants operate multifamily properties. Based on publicly available information, Plaintiffs understand this to impact approximately 13 states, although Yardi has represented it could be fewer. Yardi rejected this proposal, and again refused to produce any documents in response to RFP No. 1 beyond those related to Landlord Defendants, leading to the filing of this Joint Submission.

## II.   RESPONDING PARTY'S INTRODUCTORY STATEMENT

**Background**. Yardi is the responding party for this submission. Plaintiffs allege that Yardi, ten co-defendant property owners and managers (the "Lessor Defendants"), and five named co-conspirators orchestrated a nationwide price-fixing conspiracy based merely on their use of Yardi's revenue management software, RENTmaximizer. Plaintiffs bring suit on behalf of a putative class of every person who leased multifamily housing in the United States from any RENTmaximizer client since September 2019. FAC ¶¶ 36–50. In addition to naming the ten Lessor Defendants and five co-conspirators, the FAC includes a single paragraph placeholder for "[c]o-conspirator John Does 1–100," who allegedly comprise all of the other unnamed users of RENTmaximizer. *Id.* ¶ 51. The class period is alleged to begin on September 8, 2019. *Id.* ¶ 169.

On December 15, 2023, Defendants filed an omnibus motion to dismiss the FAC ("Omnibus Motion to Dismiss"), which is fully briefed.[5] As explained therein, the FAC lacks any plausible allegations of an agreement between Yardi and the Lessor Defendants to fix prices or unlawfully exchange competitively sensitive information, let alone a horizontal agreement among the Lessor Defendants to do so. This is not surprising, because there are no such agreements. Plaintiffs have simply identified a group of Yardi customers and alleged an antitrust conspiracy based merely on their use of the same revenue management software product.

---

[5] Defendants HNN Associates, LLC and R.D. Merrill Real Estate Holdings, LLC also filed individual motions to dismiss (Dkt. # 139, 141).

Nonetheless, through this motion, Plaintiffs seek to exponentially broaden the scope of this action by obtaining discovery into every RENTmaximizer customer since 2015, before the Court has even ruled on the Omnibus Motion to Dismiss. Plaintiffs' suggestion that such discovery will serve the interests of "efficiency" is baseless. The only efficient course of action is to allow the Court to rule on the sufficiency of the existing claims before subjecting Yardi and its clients to intrusive and potentially unnecessary discovery, which Plaintiffs all but concede is aimed at adding additional parties to the litigation based solely on their use of RENTmaximizer.

**Procedural history**. On October 27, 2023, the parties conferred regarding a discovery schedule. Tabaie Decl. ¶ 3. Defendants advised Plaintiffs of their intention to file a motion to dismiss. Defendants further advised that because discovery is likely to impose substantial burdens and would be highly intrusive, a stay of discovery was appropriate. *Id*. Plaintiffs' counsel agreed not to seek discovery from the Lessor Defendants pending a ruling on a motion to dismiss, but said they intended to serve discovery on Yardi. *Id*. On November 10, 2023, the parties filed a Joint Status Report and Discovery Plan, which memorialized Plaintiffs' agreement not to seek discovery from the Lessor Defendants and set forth a 24-month period for fact discovery that begins to run when this Court rules on any motions to dismiss (Dkt. # 119).[6]

On October 30, 2023, Plaintiffs served a First Set of Requests for Production of Documents and First Set of Interrogatories on Yardi. Tabaie Decl. ¶ 4. Yardi timely served its Responses and Objections.[7] *Id*. ¶ 6.

Despite alleging a class period that begins in September 2019, Plaintiffs' Request No. 1 sought information about every company that has ever used Yardi's revenue management software product since 2015, including each property, address, number of units, and subscription dates. Following several meet-and-confer sessions, Yardi agreed to produce this information for the Lessor Defendants, but objected to producing such information for companies not named as defendants in the FAC. *Id*. ¶ 7-11. Good cause exists to deny Plaintiffs' motion.

---

[6] The parties also exchanged initial disclosures on November 3, 2023.  Tabaie Decl. ¶ 5.
[7] In response to Request for Production No. 3, Yardi agreed to produce templates of customer contracts relating to use of RENTmaximizer during the putative class period.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.    DISPUTED DISCOVERY REQUESTS

**REQUEST FOR PRODUCTION 1**: Documents sufficient to show during the Relevant Time Period each Entity that uses Your RENTmaximizer and/or Revenue IQ service, including but not limited to, the identity of each Subscriber, each property, including address and number of units, that uses RENTmaximizer and/or Revenue IQ, the date of the beginning of the subscription (specifying month and year) for each property, the end, if any, of the subscription (specifying month and year) for each property, and the number of units at each property covered by the subscription.

**RESPONSE**: Yardi incorporates by reference its General Objections. Yardi objects to Request No. 1 on the grounds that it purports to impose burdens and obligations beyond those imposed by Federal Rule of Civil Procedure 26. Yardi further objects to this Request as overly broad, unduly burdensome, and seeking documents not reasonably calculated to lead to the discovery of evidence admissible at trial, and because the burden and/or expense of compiling the documents outweighs its likely benefit considering the needs of the case and the importance of the proposed discovery in the context of resolving the issues in dispute. Yardi further objects to this Request to the extent it seeks information for individuals and/or entities not party to this action, as such information is irrelevant and unduly burdensome to produce. Yardi objects to this Request because it seeks information outside of the relevant time period at issue. Finally, Yardi objects to this Request as premature in light of Defendants' forthcoming Motion to Dismiss and Motion to Stay Discovery, which will be filed on December 15, 2023. Yardi proposes meeting and conferring with Plaintiffs about responding to this Request No. 1 after Yardi's forthcoming Motion to Stay Discovery has been ruled on.[8]

**Moving Party's Argument**

A "party may move for an order compelling … discovery," if the party "has in good faith conferred or attempted to confer with the … party failing to make … . discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Here, as explained above, Plaintiffs have endeavored on multiple occasions to come to a resolution with Yardi regarding production in response to RFP No. 1. After offering to narrow the scope of the RFP twice, and receiving the same boilerplate objections, Plaintiffs are moving for relief from the Court to compel production in response to RFP No. 1 to ensure efficient progress of the case.

Plaintiffs seek targeted relevant documents that Yardi has never alleged are privileged. Fed. R. Civ. P. 26(b)(1) ("parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."). Relevant information is information

---

[8] Due to Plaintiffs' agreement not to seek discovery from the Lessor Defendants, Yardi did not end up filing a motion to stay discovery.

"reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Courts have broad discretion in determining relevancy for discovery purposes, and information within the scope of discovery need not be admissible in evidence to be discoverable. *U.S. Fidelity and Guar. Co. v. Lee Investments, LLC*, 641 F.3d 1126, 1136 (9th Cir. 2011); Fed. R. Civ. P. 26 (b)(1).

**Yardi's client data is highly relevant**. At issue in this motion is arguably the most basic, and essential, discovery in this case: documents identifying which landlords used RENTmaximizer, as well as how long they used the product, where they used it, and the specific number (and identity) of units priced. This information is not publicly available and is necessary to (a) identify unnamed co-conspirators; and (b) prove Plaintiffs' claims. There are two basic reasons this information is relevant and discoverable.

*First*, while Plaintiffs have identified and named certain Landlord Defendants based on independent investigation, the identity of all co-conspirators participating in this price-fixing agreement is not public and is within the possession, custody, and control of Yardi. Plaintiffs do not have access to it.

Yardi objects that the information requested in RFP No. 1 is "irrelevant" because it involves "non-parties." But those "non-parties" are not disinterested or neutral third parties; instead, they are potential unnamed co-conspirators and/or defendants identified in Plaintiffs' complaint (*see* FAC ¶ 51) who, like named Landlord Defendants, artificially inflated rent prices by using RENTmaximizer. Their identity is thus the proper subject of discovery. Courts recognize that in antitrust conspiracies, the "proof of illegal conduct lies largely in the hands of the alleged antitrust conspirators." *Kingray, Inc. v. NBA, Inc.* 188 F. Supp. 1177, 1186 (S.D. Cal. Feb. 1, 2002) (quoting *Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998)). Indeed, the Ninth Circuit has made clear that "where the identity of alleged defendants will not be known prior to the filing of a complaint … the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other

grounds." *Soo Park v. Thompson*, 851 F.3d 910, 928 n.21 (9th Cir. 2017) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642–43 (9th Cir. 1980)); *see also Amazon.com Inc. v. Kitsenka*, No. C22-1574-RSL-MLP, 2023 WL 3902911, at *2 (W.D. Wash. May 22, 2023) ("[c]ourts routinely allow early discovery for the limited purpose of identifying defendants on whom process could not otherwise be served[.]"); *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2016 WL 164294, at *5 (N.D. Cal. Jan. 14, 2016) ("Nor must a party conclusively prove an anonymous defendant's liability before discovering his or her identity."). And courts routinely permit discovery into the "identity of unknown co-conspirators." *Marshall v. Bramer*, 110 F.R.D. 232, 233 (W.D. Ky. 1985); *see, e.g.*, *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 2:14-CV-2119-RFB-VCF, 2015 WL 3649623, at *3 (D. Nev. June 10, 2015) (information relevant and discoverable because it would "assist in identifying Defendants' co-conspirators … which will help discover Defendants' methods of carrying out the trafficking scheme."); *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 735 (S.D.N.Y. 1989) ("Evidence of the specific identity of exhibitors, attendees, speakers and suppliers who allegedly have acted in concert with the defendant, is largely in defendant's hands. Plaintiff should be allowed to conduct full discovery in order possibly to further substantiate such claims.").

Yardi's refusal to produce its client identities would, if accepted, create a Catch-22 for Plaintiffs and arbitrarily shield otherwise potentially culpable parties from liability.[9] Plaintiffs are plainly entitled to discover the identities of RENTmaximizer users. Additionally, permitting this discovery early in the case would further judicial efficiency by ensuring that all relevant parties are named as early as possible, which will in turn facilitate the resolution of any early motion practice related to specific defendants and coordinated discovery across named Landlord Defendants. It will also allow Plaintiffs to better (and sooner) identify individuals and entities

---

[9] At the same time, Defendants have attempted to capitalize on this information asymmetry in their joint motion to dismiss, arguing that Plaintiffs' conspiracy allegations are implausible because there is insufficient geographic overlap among *named* Landlord Defendants' properties. ECF No. 138 at 15-16.

with discoverable information and admissible evidence related to their allegations, e.g., employees of unnamed co-conspirators with evidence relevant to the alleged conspiracy.[10]

**Second**, the information sought in RFP No. 1—how many units were priced using RENTmaximizer, when, where, and by who—bears on foundational questions of liability, impact, and damages, including among other things (1) the basic fact of who was harmed by Defendants' conduct[11]; and (2) how and to what extent various parts of the country were impacted by the alleged scheme, including the relationship between rates of RENTmaximizer use and landlords' ability to raise prices about competitive levels. For example, Yardi has boasted about RENTmaximizer clients' success in raising prices above market rates not only nationally, but in areas "in which a significant number of properties" use RENTmaximizer. *See* FAC ¶¶ 119-22. Without the information sought in RFP No. 1, Plaintiffs will be unable to replicate this type of analysis—which is potentially critical to proving their claims—across other geographies and time periods.

Further, Plaintiffs allege two separate claims[12] under the rule of reason, which requires they "prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022). As the parties' motion to dismiss briefing on this issue illustrates, the information sought in RFP No. 1 is relevant to many core issues implicated by Plaintiffs' rule of reason claim, including whether named Landlord Defendants and their co-conspirators (among them currently unnamed co-conspirators) were able to raise prices above competitive levels or,

---

[10] Additionally, parties' lack of pursuit of discovery regarding unnamed co-conspirators has been used as a defense in antitrust cases to preclude damage claims related to those entities. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 2012 WL 6708866, at *3 (N.D. Cal. Dec. 26, 2012).

[11] Plaintiffs seek to represent a class composed of "*all* persons and entities in the United States that leased multifamily housing … from a landlord that used Yardi's RENTmaximizer or Revenue IQ software programs[.]" FAC ¶ 169 (emphasis added). Without discovery into the properties Yardi's clients priced with RENTmaximizer, Plaintiffs would have no way to identify all putative class members.

[12] Plaintiffs plead Counts II and III of their complaint under the rule of reason. FAC ¶¶ 191, 208. Plaintiffs also plead Count I in the alternative under the rule of reason. *Id.* ¶ 183.

alternatively, whether they had market power in a properly defined market. *See* ECF No. 138 at 31-43; ECF No. 142 at 25-41.

**Yardi's boilerplate objections lack any basis in law or fact**. Both in its response to Plaintiffs' discovery requests and throughout negotiations, Yardi has generally relied on improper general boilerplate objections. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome…' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections… . Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper.").

For example, despite raising a burden objection, Yardi has not detailed why the straightforward client information Plaintiffs seek, which is within its possession, custody, or control, would be unduly burdensome to produce. *See Doe v. Trump*, 329 F.R.D. 262, 270–71 (W.D. Wash. 2018) ("the party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections with competent evidence."). Indeed, while Plaintiffs have twice proposed significantly limiting the scope of RFP No.1 while motions to dismiss are pending—from a request for nationwide data to one for data from just 13 states—Yardi has continued to maintain that production would be unduly burdensome, but meanwhile has offered no explanation why. It is difficult to comprehend how such client data would be unduly burdensome to produce when Yardi has previously performed (and publicized) analyses using exactly this information—specifically, analyses comparing "*all* RENTmaximizer' properties performance against their market, the submarket-equivalent properties." FAC ¶¶ 119-22 (emphasis added).

Yardi has also objected that it should not be required to produce documents and data in response to RFP No. 1 from outside the class period, i.e., from before September 2019. But it is "beyond dispute that discovery is not limited to the class period." *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF AJWX, 2012 WL 3791716, at *4 (C.D. Cal. Mar. 12, 2012); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 956, 970 (N.D. Cal. 2005) (same); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 357 n.5 (N.D. Ill. 2005) ("where the information is

otherwise relevant, the statute of limitations is not a basis for barring discovery") (collecting cases). Instead, the general rule in antitrust cases is that plaintiffs are "entitled to discovery for some period before the defendant's anticompetitive conduct allegedly began" because "damages in antitrust cases are often calculated by showing the before-and-after effect of a defendant's anticompetitive conduct." *IsoNova Technologies LLC v. Ovainnovations, LLC*, 2021 WL 7185073, at *1 (N.D. Iowa Oct. 8, 2021); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2009 WL 10703132, at *1 (D.D.C. July 13, 2009) ("It is well settled that the 'temporal scope of discovery should not be confined to the limitations period of the antitrust statutes, or to the damage period, and plaintiff is ordinarily permitted to discover defendant's activities for a reasonable period of time antedating the earliest possible date of the actionable wrong.'") (quoting *Arvco Cont. Corp. v. Weyerhaeuser Co.*, No. 08-CV-548, 2009 WL 311125, at *4 (W.D. Mich. Feb. 9, 2009)); *see also In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, No. 21 C 305, 2023 WL 4181198, at *5 (N.D. Ill. June 26, 2023) (finding appropriate start date for document discovery was two years prior "to the earliest specific start date" of alleged antitrust conspiracy).

The same rule should apply here. Plaintiffs allege that Yardi launched RENTmaximizer in approximately 2011, and that its use has grown since that time. FAC ¶¶ 65-70. Information regarding RENTmaximizer use over time is plainly relevant to understanding the scope and impact of the conspiracy, including whether and to what extent RENTmaximizer users have been able to charge higher (more supracompetitive) prices during the conspiracy. In particular, it is critically important for Plaintiffs to obtain data regarding landlords' full history of RENTmaximizer use, including when they began using RENTmaximizer, to understand how their pricing behavior has changed over time, including the "before and after effect" of the conspiracy.[13] Yardi's objection to the scope of RFP No. 1 is "artificial, arbitrary and designed to

---

[13] For example, if Yardi were to only produce documents and data from late 2019 onwards, but a Landlord Defendant began using RENTmaximizer in 2016, Plaintiffs would lack any ability to meaningfully compare that landlord's pricing behavior in the pre- and post-RENTmaximizer adoption periods.

avoid the production of relevant documents." *In re Seagate Tech. II Sec. Litig.*, No. C-89-2493 (A)-VRW, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993).

**The Court should compel production now.** Yardi has also objected to Plaintiffs' Request as premature, and initially indicated that it would file a motion to stay discovery while Defendants' motions to dismiss are pending. But neither Yardi nor any Defendant has done so. Further, while "district courts have discretion to limit discovery" for "good cause" under Federal Rule 26, "[a] pending motion to dismiss is generally not grounds for staying discovery." *Edmonds v. Amazon.com, Inc.*, No. C19-1613JLR, 2020 WL 8996835, at *1 (W.D. Wash. Mar. 6, 2020) (denying motion to stay). As courts have observed, "[h]ad the Federal Rules contemplated that a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Dorian v. Amazon Web Servs., Inc.*, 2022 WL 3155369, at *1 (W.D. Wash. Aug. 8, 2022). They do not.

Here, as in *Edmonds*, the "fatal flaw with [Yardi's] argument is that it assumes the motion to dismiss will resolve the case," while meanwhile ignoring that, "[i]f the court allows the case to proceed beyond the motion to dismiss, discovery will be necessary to facilitate the prompt resolution of the case." 2020 WL 8996835, at *2. As explained above, compelling Yardi to produce the information sought in RFP No. 1 will further judicial efficiency by (1) ensuring that all relevant parties are identified as early as possible; (2) facilitating the resolution of any early motion practice related to new specific defendants and coordinated discovery across named Landlord Defendants and their co-conspirators; and (3) allowing Plaintiffs to more promptly identify individuals and entities with discoverable information and admissible evidence related to their allegations.

Finally, the parties have agreed to an efficient case schedule under which Plaintiffs' class certification is due 15 months after a ruling on the motions to dismiss. ECF No. 119. And the parties are prepared to submit an ESI Protocol and Protective Order by April 25, 2024. ECF No. 147. There is no reason to delay relevant discovery that will ensure the orderly progression of the case according to these deadlines.

**Responding Party's Response**

Rule 26 grants district courts broad authority to limit or stay discovery upon a showing of good cause. *See Silbaugh v. Chao*, 2018 WL 2317555, at *1 (W.D. Wash. May 22, 2018).

Good cause exists to limit discovery into Yardi clients not named as defendants or co-conspirators in this action for three reasons. ***First***, the Omnibus Motion to Dismiss, which is fully briefed, raises substantial threshold challenges to the validity of Plaintiffs' claims and, if granted, would dispose of all claims. Plaintiffs should not be granted intrusive discovery about non-parties and non-named purported co-conspirators when this Court has not yet concluded that they state a viable claim against the *current* defendants. ***Second***, Plaintiffs will not be prejudiced if their motion is denied; indeed, given that they waited until now to bring this motion, they can hardly claim prejudice or an urgent need for discovery, particularly given the Court's pending ruling on the Omnibus Motion to Dismiss. ***Third***, Plaintiffs all but concede their motive for bringing the present motion: because they cannot establish the elements of an antitrust conspiracy on the current pleading, they seek the names of additional companies to lump into an amended pleading. Not only is this an improper basis for seeking discovery, but any such amendment would be futile.

By way of background, courts have long recognized that limiting discovery "may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive." *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). In *Twombly*, the Supreme Court upheld the dismissal of an antitrust action in which the plaintiff alleged that the incumbent regional Bell operating companies engaged in a range of anticompetitive conduct. 550 U.S. at 549–51, 558. Recognizing the "unusually high cost" of antitrust discovery, *id.* at 559 (citation omitted), the Court instructed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, '"this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."'" *Id.* at 558 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 233-34 (3d ed. 2004)); *see also Rutman Wine Co*., 829 F.2d 729, 738 (9th Cir. 1987) (finding that it "defies common sense" to permit discovery to go forward before determining whether a plaintiff can state a claim).

Courts routinely apply this logic in imposing a complete stay of discovery in antitrust cases. *See, e.g.*, *Arcell v. Google LLC*, 2022 WL 16557600, at *1 (N.D. Cal. Oct. 31, 2022) (staying discovery to avoid undue burden on defendants and noting discovery costs in antitrust actions are "prohibitive"); *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *2–3 (C.D. Cal. Sept. 17, 2015) ("[T]he arguments raised in the [motions to dismiss] are compelling and deserve careful consideration before allowing the parties to proceed with costly and time-consuming discovery."); *In re Graphics Processing Units Antitrust Litig. ("In re GPUs")*, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007) (granting motion to stay and noting "antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly*").

Here, Yardi has acted in good faith by agreeing to produce the information called for in Request 1 for the Lessor Defendants, in addition to producing client contract templates (Request 3). However, discovery relating to non-party Yardi clients is improper and unwarranted.

**<u>Defendants' Omnibus Motion to Dismiss weighs in favor of limiting discovery</u>**. Courts routinely find that a pending motion to dismiss supports staying or limiting discovery. In making this determination, courts typically consider the motion's merits and whether the plaintiff will suffer prejudice. *See Petitt v. Altman*, 2022 WL 670921, at *1 (W.D. Wash. Mar. 7, 2022) (Lasnik, J.); *see also Travelers Prop. Cas. Co. of Am. v. H.D. Fowler Co.*, 2020 WL 832888, *1 (W.D. Wash. Feb. 20, 2020) (conducting "preliminary peek" at motion to dismiss). Here, both factors strongly favor limiting discovery.

> **a.  *Plaintiffs fail to allege viable claims*.**

The Omnibus Motion to Dismiss contains multiple compelling arguments in favor of complete dismissal of the FAC. As such, this action may well be dismissed in its entirety, rendering additional discovery unnecessary and pointlessly intrusive.

In brief, Plaintiffs claim that Yardi and the Lessor Defendants orchestrated a price-fixing conspiracy that inflated rents for apartments nationwide. However, not only do Plaintiffs engage in impermissible group pleading by lumping the Lessor Defendants together indiscriminately, they fail to allege the *sine qua non* of a price-fixing claim—an agreement. They do not plead any facts to plausibly suggest an agreement between Yardi and the Lessor Defendants, or among the Lessor

Defendants, to fix rental rates. There is no agreement to abide by the product's rent recommendations, nor a single communication or meeting on that subject. The sole commonality is an independent decision to use Yardi's product. Moreover, Plaintiffs repeatedly undermine their own claims. They acknowledge that the recommendations are just that—recommendations, which users are free to reject.[14] One need look no further than Plaintiffs' own leases to see that the Lessor Defendants make independent pricing decisions, as they each received a different and substantial rent concession. The FAC also cites documents describing Yardi's product as "completely configurable"[15] and "flexible and customizable"[16] based on each property's goals and objectives, yet Plaintiffs make no allegation that the Lessor Defendants configured it in the same way. The purported "conspiracy" is devoid of factual support and is no conspiracy at all.

Plaintiffs' failure to allege an agreement is unsurprising given the facial implausibility of their claims. The Lessor Defendants do not compete in a purported nationwide market, and thus have no incentive or ability to carry out the alleged price-fixing conspiracy. Plaintiffs also acknowledge the common sense reality that prospective tenants do not view apartment leases across the United States as interchangeable. FAC ¶ 147 (acknowledging tenants seek apartments "close to their offices, schools, [and] communities"). Plaintiffs' theory of a nationwide market nevertheless would have one believe that a prospective tenant seeking an apartment in Miami would consider an apartment in San Francisco or Boston or Atlanta to be reasonable substitutes. Plaintiffs' nationwide geographic market fails at the gate. *See In Re: RealPage Inc., Rental Software Antitrust Litig.*, 2023 WL 9004806 (M.D. Tenn. Dec. 28, 2023) (rejecting nationwide student housing market as "confound[ing] . . . reality"). Plaintiffs also fail to plead a relevant product market or that the Lessor Defendants possess market power—equally fatal to their rule-of-reason claims. Plaintiffs have simply identified a group of Yardi customers and alleged a nationwide conspiracy based on nothing more than their use of the same software product.

---

[14] FAC ¶ 13.
[15] *Id.* ¶ 77 n.87.
[16] *Id.* ¶ 92 n.118.

The Omnibus Motion to Dismiss may well dispose of the entire action. Even if the Court denies the motion in whole or part, the parties will benefit from the Court's insight into the sufficiency of Plaintiffs' pleading, which will guide the scope and course of the litigation. *See Malone v. Clark Nuber, P.S.*, 2008 WL 8933296, at *1 (W.D. Wash. Nov. 5, 2008) (refusing to lift stay and noting that even if motions to dismiss were not granted in full, the court's rulings "may narrow the issues and the appropriate scope of discovery"). In these circumstances, denying a request for discovery into companies that are not even named in this action pending a ruling on the Omnibus Motion to Dismiss is eminently reasonable.

### b.  *Plaintiffs will not be prejudiced by limiting discovery to named defendants.*

Plaintiffs will not suffer any material harm or prejudice if discovery is limited to the named defendants. Even assuming the FAC is not dismissed in full, this case is in its infancy. A period of delay will not adversely impact Plaintiffs. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4397175, at *4 (C.D. Cal. June 8, 2015) ("[P]laintiffs seeking damages awards are not substantially injured by some delay."); *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4–5 (N.D. Cal. Nov. 15, 2012) ("The potential delay in Plaintiff's ability to recover penalties also does not constitute a substantial injury.").

Indeed, Plaintiffs' argument that discovery into unnamed parties will "further judicial efficiency" is completely undercut by their agreement to stay discovery with respect to the *named* Lessor Defendants, and by the fact that they waited until now to bring this motion. Moreover, the two-year discovery period begins to run only when the motions to dismiss are resolved. Assuming Plaintiffs are entitled to discovery about non-parties—which Yardi does not concede—Plaintiffs will have ample time to try to seek such discovery if the FAC survives, and will have the same amount of time to do so whether or not the Court denies their current request.

Plaintiffs' reliance on *Edmonds v. Amazon.com, Inc.* is misplaced. 2020 WL 8996835, at *1 (W.D. Wash. Mar. 6, 2020). There, the defendant sought a stay of the parties' initial disclosures and Rule 26(f) requirements, which would have effectively stayed the entire case given that case deadlines would only be set following the filing of the joint status report. *Id.* Here, the Parties have already served initial disclosures, filed a Joint Status Report and Discovery Plan, filed a stipulated

protective order, and are negotiating an ESI protocol. In addition, Yardi has agreed in good faith to produce the requested information with respect to the Lessor Defendants, in addition to producing client contract templates. *Cf. Gibson v. MGM Resorts Int'l*, 2023 WL 4455726, at *4 (D. Nev. July 11, 2023) (finding plaintiffs in a similar antitrust case concerning revenue management software would not be prejudiced by a stay of discovery where defendants agreed to provide limited discovery and to negotiate an ESI protocol and protective order while motion to dismiss was pending). The situation here is nowhere close to the total standstill the court sought to avoid in *Edmonds*.[17]

**Plaintiffs are not entitled to discovery of the "Doe co-conspirators."** The FAC improperly attempts to exponentially broaden the alleged conspiracy with nothing more than a bare allegation that "[c]o-conspirators John Does 1–100" are "Yardi's clients" who "used its RENTmaximizer."[18] Plaintiffs now argue they should be given an opportunity to identify these unknown clients. In addition to the reasons given above, the motion should be denied because Plaintiffs' request is improper.

As an initial matter, the use of Doe pleading is disfavored in federal court. *See, e.g.*, *Turner v. Cnty. of Los Angeles*, 18 F. App'x 592, 596 (9th Cir. 2001) ("The district court also properly dismissed all allegations against unidentified "Doe" defendants. As a general rule, the use of Doe pleading is disfavored in federal court."); *McMillan v. Dep't of Interior*, 907 F. Supp. 322, 328–29 (D. Nev. 1995) ("Generally, 'Doe' pleading is improper in federal court. There is no provision in the Federal rules permitting the use of fictitious defendants. Accordingly, the Court will dismiss John Does 1—100 from this action." (citations omitted)), *aff'd sub nom. McMillan v. U.S. Dep't of Interior*, 87 F.3d 1320 (9th Cir. 1996).

Furthermore, the FAC does not allege any facts about these hypothetical co-conspirators, other than their mere use of Yardi's revenue management software. Even where a plaintiff is

---

[17] Plaintiffs' reliance on *Dorian v. Amazon Web Services, Inc.* is similarly misplaced. 2022 WL 3155369, at *1 (W.D. Wash. Aug. 8, 2022). The *Dorian* court found as part of its "preliminary peek" at the motion to dismiss that the parties' dispute regarding the applicability of the extraterritoriality doctrine and dormant commerce clause could not be resolved without further discovery. *Id.* at *2. The FAC raises no such issues and is facially deficient as a matter of law.

[18] FAC ¶ 51.

legitimately unable to name a defendant or co-conspirator, she is not excused from describing a Doe's actions with specificity. *See Wilson v. Washington Tr. Bank*, 2017 WL 3597478, at *3 (E.D. Wash. Aug. 21, 2017) (finding that "[f]or Plaintiff to properly name 'John Doe' defendants, he must provide all of the information he would normally provide if he already knew their names"); *see also Lake v. Hurley*, 2020 WL 1041696, at *3–4 (E.D. Cal. Mar. 4, 2020) ("[I]f a prospective defendant's identity is unknown, plaintiff must identify the John Doe as best as possible, and allege specific acts that the doe defendant did, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y."), *report and recommendation adopted sub nom. Lake v. Weiss*, 2020 WL 1677423 (E.D. Cal. Apr. 6, 2020); *Strejac v. Youthcare*, 2009 WL 2473681, at *4 (W.D. Wash. Aug. 11, 2009) (Lasnik, J.) (finding that absent "allegations about what each Doe defendant allegedly did," plaintiff failed to state a claim against that defendant).

Simply put, Does cannot "serve[] as a catch-all to encompass any possible additional party." *North v. State of Washington, et al*, 2023 WL 8281609, at *3 (W.D. Wash. Nov. 30, 2023) (Lasnik, J.). Yet that is precisely how Plaintiffs try to use them here. In support of their motion, they rely on cases in which a party sought the identity of a *specific* unknown individual against whom the plaintiff had made concrete allegations. In other words, while the individual or entity's name may not have been known, their actions were well known and well pled.[19] These cases merely illustrate the deficiency in Plaintiffs' allegations here, where the Does are described simply as RENTmaximizer users with no other supporting allegations specific to them.[20] To the extent

---

[19] *See, e.g.*, *Amazon.com Inc. v. Kitsenka*, 2023 WL 3902911, at *2 (W.D. Wash. May 22, 2023) (seeking third-party account information for eight specific individuals who allegedly sold counterfeit goods on plaintiff's platform); *Antman v. Uber Techs., Inc.*, 2016 WL 164294, at *5 (N.D. Cal. Jan. 14, 2016) (seeking third-party subscriber information at a particular internet address for an individual who allegedly breached defendant's secure database); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 2015 WL 3649623, at *3 (D. Nev. June 10, 2015) (seeking, in unopposed motion to compel, certain information from specific third party businesses who transacted with defendants); *Marshall v. Bramer*, 110 F.R.D. 232, 233-34 (W.D. Ky. 1985) (seeking discovery into identity of specific Ku Klux Klan and Confederate Officers Patriotic Society members for whom plaintiffs "submitted strong support for their contention" that the individuals were responsible for burning plaintiffs' house down), *aff'd*, 828 F.2d 355 (6th Cir. 1987); *see also Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (alleging that certain police officers made a witness unavailable to plaintiff during her criminal murder trial).

[20] Several of Plaintiffs' cited cases also describe the "extensive efforts" undertaken by plaintiffs to try to determine the identity of a Doe. *See, e.g.*, *Amazon.com Inc.*, 2023 WL 3902911, at *1 (noting plaintiffs

---

1    Plaintiffs argue that it is enough to allege they are RENTmaxmizer users, they merely highlight

2    the core flaw in their claims—the FAC does not allege a plausible basis to conclude that an

3    independent decision to use Yardi's software constitutes an antitrust violation.

4           Plaintiffs' suggestion that they are entitled to discovery into every Yardi customer using

5    the software for a nine-year period in order to shore up their claims is also meritless. They argue

6    that discovery into unnamed entities will help establish "who was harmed" and "how and to what

7    extent various parts of the country were impacted" and whether the "Landlord Defendants and

8    their co-conspirators . . . had market power in a properly defined market." As an initial matter,

9    Plaintiffs should have compiled evidence to support their good faith claims before filing the FAC.

10   In any event, if the FAC is dismissed, such discovery is irrelevant.

11          To the extent Plaintiffs seek the discovery in order to try to amend their complaint, their

12   request is improper. *See Rutman Wine Co.*, 829 F.2d at 738 (noting Rule 12(b)(6) motion

13   "enable[s] defendants to challenge the legal sufficiency of complaints without subjecting

14   themselves to discovery"); *Neal v. City of Bainbridge Island*, 2021 WL 2105301, at *1 (W.D.

15   Wash. May 25, 2021) (rejecting argument that plaintiff was entitled to discovery during pendency

16   of motion to dismiss to "shore up any weakly-pled claims").[21] Regardless, any attempt at

17   amendment would be futile. Merely adding more company names to an amended pleading will not

18   solve the fundamental deficiencies in Plaintiffs' claims, and they have not contended otherwise.

19   At the same time, those companies could become subject to burdensome and expensive litigation,

20

21

22

23

24   worked with private investigators); *Marshall*, 110 F.R.D. at 234 (noting plaintiffs' investigator "questioned residents of Sylvania, officials at the police department, and public officials"). Plaintiffs describe no such
25   efforts here.
        [21] *See also U.S. v. Medtronic PLC*, 2022 WL 541604, at *5 (C.D. Cal. Feb. 23, 2022) (noting Rule
26   12(b)(6) motions are not "for testing whether the plaintiff will be able to 'find evidence to support the
     pleadings'"); *Tracy v. U.S.*, 243 F.R.D. 662, 664 (D. Nev. 2007) ("[T]he court asks only whether the
27   pleadings are sufficient to establish a claim, not whether the Plaintiff could find evidence to support the
     pleadings." (*citing Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001))), *affirmed in relevant*
28   *part*, 301 F. App'x 675 (9th Cir. 2008).

given that Plaintiffs are now claiming they "are potential unnamed . . . defendants" (*see supra* at 5), not just unnamed "Doe" co-conspirators, as alleged in the FAC.[22]

Indeed, Plaintiffs have no connection to the vast majority of the Lessor Defendants, let alone the "Does." They live in two buildings affiliated with one Lessor Defendant, who gave them concessions and thus did not charge them rates suggested by RENTmaximizer. Plaintiffs' attempt to obtain discovery into numerous other companies with which they have no connection, based on the flimsiest of pretexts, should be rejected. Not only is a dispositive motion pending, but no class has been certified.

In sum, Plaintiffs are broadcasting their plan to try and add numerous additional defendants to this already expansive case, before the Omnibus Motion to Dismiss is ruled upon, based on a single sentence in the FAC suggesting that anyone that has ever used Yardi's software over a nine-year period is somehow an antitrust conspirator. For all of the aforementioned reasons, the more prudent course is to ascertain whether Plaintiffs have stated a viable claim in the first instance before confronting the propriety of discovery into anonymous "Does." Plaintiffs' motion should be denied at this time.

**Moving Party's Reply**

Yardi does not meaningfully dispute the relevance of the critical, limited information sought. It also makes no attempt to substantiate its burden objection. That is, Yardi generally abandons its previous grounds for opposing production.

Instead, Yardi pivots to requesting a stay. But for Yardi to prevail, the Court must not only be "convinced that [Plaintiffs] will be unable to state a claim for relief," *Lemmon v. Pierce Cnty.*, 2021 WL 5217291, at *1 (W.D. Wash. July 7, 2021), but also "consider whether plaintiff will be prejudiced." *Garner v. Amazon.com, Inc.*, 2022 WL 716840, at *1 (W.D. Wash. Mar. 10,

---

[22] Plaintiffs' professed fears about preserving damages claims are unwarranted at this stage. *In re TFT-LCD (Flat Panel) Antitrust Litigation* involved a summary judgment motion following the close of discovery. 2012 WL 6708866, at *3 (N.D. Cal. Dec. 26, 2012), *aff'd*, 637 F. App'x 981 (9th Cir. 2016). Plaintiffs' reliance on *Expoconsul International, Inc. v. A/E Systems, Inc.* is perplexing given that it pre-dates *Twombly* by nearly 20 years and thus has no bearing here. 711 F. Supp. 730, 735 (S.D.N.Y. 1989).

2022). An unknown delay would be prejudicial: Plaintiffs' class certification motion is due just 15 months after a motion to dismiss ruling.

Yardi suggests that *Twombly* requires routine antitrust discovery stays. This is incorrect. *Crownalytics, LLC v. SPINS, LLC*, 2022 WL 17416656, at *2 (D. Colo. Dec. 5, 2022); *Las Vegas Sun, Inc. v. Adelson*, 2020 WL 2114352, at *11 (D. Nev. May 4, 2020). It also ignores that Plaintiffs seek only targeted discovery.

DATED this 8th day of April, 2024.   Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Steve W. Berman*
    Steve W. Berman (WSBA No. 12536)
Theodore Wojcik (WSBA No. 55553)
Stephanie A. Verdoia (WSBA No. 58636)
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com
Email: stephaniev@hbsslaw.com
Email: kellyf@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: riop@hbsslaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATION</u>

I certify that the full response by the responding party has been included in this submission, and that prior to making this submission the parties conferred to attempt to resolve this discovery dispute in accordance with LCR 37(a).

*/s/ Steve W. Berman*
Steve W. Berman

1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 8, 2024, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.


*/s/ Steve W. Berman*
Steve W. Berman