1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| MCKENNA DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>YARDI SYSTEMS, INC., *et al.*,<br><br>          Defendants. | Case No. 2:23-cv-01391-RSL<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION; AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.     General Principles**

1.     An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.     As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.

HAGENS BERMAN

3.      Applicability:  This ESI Protocol Order will govern the production of ESI and paper documents. To the extent that a party collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the parties will meet and confer concerning the potential formats of the production of any such documents.

4.      Cooperation:  The parties acknowledge their duty to work together cooperatively throughout the discovery process. The parties agree that they will adhere to the principles of reasonableness and proportionality. Further, the parties agree to meet-and-confer with one another in good faith and in a timely manner to address and resolve any disputes.  If the parties are unable to resolve such disputes, either party may raise the dispute to the Court for resolution as provided for in Local Rule 37(a) of this Court.

5.      While this ESI Protocol Order is intended to address the majority of documents and data sources handled in this matter, there may be situations where the parties come into contact with data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources.  In the event such data sources are likely to contain relevant materials, the parties agree to meet and confer in good faith about potential production from such sources.

**B.**    **ESI Disclosures**

1.      Within 20 days of entry of responding to the opposing party's first sets of request for production, or at a time mutually agreed to by the parties:

2.      <u>Custodians</u>. Each party will disclose an initial list of proposed custodians. The custodians shall be identified by name title, and a short description of the types of relevant information that this custodian is expected to possess.  The parties agree to meet and confer about the relevance, proportionality, and burden of the custodians.

3.      If, after the parties identify initial document custodians, a requesting party determines that an additional document custodian should be added, then the requesting party may advise the producing party in writing of the proposed additional document custodian and the basis for the request.  The parties will, 45 days following the Court's entry of an order on the

HAGENS BERMAN

motions to dismiss, meet and confer regarding a protocol for consolidated requests for additional custodians, which shall address issues including but not limited to the number of additional consolidated requests for custodians made to each Defendant.  No party shall make requests for additional custodians in the absence of this protocol.  The parties agree that, in any event, any requesting party shall not be permitted to make requests for additional custodians, absent extraordinary good cause, within 90 days of the close of fact discovery.

a.      For document custodians agreed on by the parties or ordered by the Court, a producing party will take reasonable steps to identify whether unique responsive ESI (including text messages and/or iMessages), if any, are located on any cellphones in the possession, custody, or control of the producing party, and whether such unique, responsive information, if limited in scope, can be produced in a less burdensome manner that would not require the imaging of an entire device.  For example, in the instance of a limited group of unique, responsive text messages or instant messages, a screenshot of the communication(s) would suffice.  For those document custodians with unique, responsive ESI that is not so limited, the parties shall, pursuant to the provisions of this protocol, produce the responsive non-privileged communications, unless they are "synched" or saved elsewhere (e.g., on a server, laptop, desktop computer, or "cloud" storage). The parties shall meet and confer regarding the potential disclosure of additional information related to cellphone data, including custodial cell phone numbers.

4.      Non-custodial Data Sources. A list of non-custodial data sources (*e.g.*, shared drives, servers, cloud storage) in the producing party's possession, custody, or control, if any, likely to contain responsive ESI.

5.      Inaccessible Data. A list of data sources, if any, likely to contain responsive ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.      ESI Discovery Procedures**

1.      Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources

HAGENS BERMAN

1  (including custodians), and other appropriate computer- or technology-aided methodologies,

2  before any such effort is undertaken. The parties shall continue to cooperate in revising the

3  appropriateness of the search methodology.

4         2.    <u>Search Terms</u>. The parties shall meet and confer concerning the search terms and

5  methodology to be used by the producing party and issues related to the proportionality,

6  relevance, and burden of the proposed search methodology. If, after disclosure of the producing

7  party's proposed search method, search parameters, and search terms, and prior to the conducting

8  of any searches, and after a reasonable meet and confer process, a requesting party believes in

9  good faith that the producing party's proposals regarding search, retrieval, and production would

10  result in deficiencies in production, the requesting party may make their initial requests for

11  different or additional search methods, parameters, or search terms within twenty one business

12  days. To the extent that the producing party objects to the additional and/or revised terms, the

13  parties agree that the producing party will provide information to show that the

14  proposed/additional terms impose undue burden or do not assist in identifying potentially

15  responsive documents.

16         a.  Prior to running searches:

17            i.    The producing party shall, with regard to structured data, disclose

18  reasonable information regarding the databases (such as the name of the database) and queries

19  used, and with regard to other electronic discovery, disclose reasonable information regarding

20  the data sources (including, where relevant, the particular custodians) and search terms used, any

21  file type and date restrictions, and any other methodology that it proposes to use to locate ESI

22  likely to contain responsive and discoverable information. The producing party may provide

23  unique hit counts for a search query if requested.

24            ii.    To the extent any search term or query produces a disproportionate

25  number of hits, the parties agree to meet and confer in good faith prior to collection. The

26  producing party may identify each search term or query returning overbroad results

27  demonstrating the overbroad results and a counter proposal correcting the overbroad search or

28  query.

AGREEMENT RE DISCOVERY OF ELECTRONICALLY STORED
INFORMATION AND ORDER – 4

**HAGENS BERMAN**

b.      Upon reasonable request, a party shall disclose additional information pertinent to the relevance of a particular discovery request or the proportionality and burden of producing documents from a particular source or a particular type of documents.

c.      **Use of TAR:**  If a party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parties will meet and confer in good faith to discuss the process for the use of TAR prior to the application of TAR in those instances, including the extent of disclosure of information related to the TAR tool's procedures, prioritization and training of the TAR tool.

3.      **Structured data:** To the extent a discovery request calls for the production of responsive ESI contained in a structured database, the producing party shall reasonably attempt, provided it is not unduly burdensome or disproportionate to the needs of the case, to extract such data for review by the requesting party. To the extent this is not reasonably practicable, or to the extent a producing party contends that such a report is unduly burdensome or disproportionate to the needs of the case, the parties shall meet and confer in good faith to discuss the requested structured data with the understanding that the requesting party may be required to engage a neutral third party with the appropriate skills and expertise. Production Format

a.      The general proposed product format for document production is set forth in Appendix A, including relevant Metadata fields to be produced to the extent reasonable.

b.      The producing party must take all appropriate measures to preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

c.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

4.      De-duplication. The parties may de-duplicate their ESI production across custodial and non-custodial data sources, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file, and the duplicate file path information produced in the All Paths metadata field. If

HAGENS BERMAN

1 processing and production is done on a rolling basis, updated duplicate custodians and All Paths

2 fields with additional values shall be provided in an overlay metadata load file. The producing

3 party shall identify whether the overlay replaces previously produced fields for a file or

4 supplements them.

5        5.   <u>Email Threading.</u>  The parties, at their election, may use analytics technology to

6 identify email threads and need only produce the unique most inclusive copy and related family

7 members. and may exclude lesser inclusive copies, provided that all emails with responsive

8 attachments are produced, regardless of their role within the thread, as determined by the

9 producing party's eDiscovery software analytics. Upon reasonable request, the producing party

10 will produce a less inclusive copy of a specific email thread so long as such a request is

11 proportional to the needs of the case and does not create undue burden for the producing party.

12 The parties agree to meet and confer regarding the proportionality and burden of such a request.

13        6.   <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an

14 electronic format, the production of hard-copy documents will include a cross-reference file that

15 indicates document breaks and sets forth the custodian or custodian/location associated with each

16 produced document. Hard-copy documents will be scanned using Optical Character Recognition

17 technology and searchable ASCII text files will be produced (or Unicode text format if the text is

18 in a foreign language). The parties will meet and confer on the procedure to be used if the

19 Producing Party believes that the cost would outweigh the usefulness of scanning (for example,

20 when the condition of the paper is not conducive to scanning and will not result in accurate or

21 reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (e.g.,

22 the unique Bates Number of the first page of the corresponding production version of the

23 document followed by its file extension).

24 **D.**   **Preservation of ESI**

25        The parties acknowledge that they have an obligation, as expressed in Fed. R. Civ. P.

26 37(e), to take reasonable and proportional steps to preserve discoverable information in the

27 party's possession, custody, or control. With respect to preservation of ESI, the parties agree as

28 follows:

AGREEMENT RE DISCOVERY OF ELECTRONICALLY STORED
INFORMATION AND ORDER – 6

**HAGENS BERMAN**

1.     Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall take reasonable and proportional steps to preserve all discoverable ESI in their possession, custody, or control.

2.     Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

> a.   Deleted, slack, fragmented, or other data only accessible by forensics.
>
> b.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
>
> c.   On-line access data such as temporary internet files, history, cache, cookies, and the like.
>
> d.   Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).
>
> e.   Interim automatically saved drafts, as opposed to drafts saved by a user.
>
> f.   Dynamic fields of databases or log files that are not retained in the usual course of business.
>
> g.   Back-up data that is duplicative of data that is more accessible elsewhere.
>
> h.   Server, system or network logs.
>
> i.   Data remaining from systems no longer in use that is unintelligible on the systems in use.
>
> j.   Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.     Privilege**

1.     **Production of Privilege Logs:**  Except as provided otherwise below, for any document withheld in its entirety, the producing party will produce privilege logs in MS Excel format or any other format that permits electronic sorting and searching.  Privilege logs will be produced to all other parties no later than 60 days after the substantial completion of the producing party's document production unless a different deadline is agreed to by the parties.

HAGENS BERMAN

2.      **Privilege Log Requirements:** To the extent applicable, each party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and a description of privileged material consistent with Fed. R. Civ. P. 26(b)(5).

        a.      Objective metadata includes the following (as applicable to the document types as shown in Appendix A):

            i.      A unique privilege log identifier

            ii.      Custodian

          iii.      CustodianOther or CustodianAll (if applicable)

          iv.      Author

            v.      From

          vi.      To

         vii.      CC

        viii.      BCC

          ix.      Subject or Filename

            x.      Date Sent

          xi.      Date Received

         xii.      Date Created

        b.      In addition to the objective metadata fields, a party must also include a field on its privilege log entitled "Attorney/Description of Privileged Material" that, consistent with Fed. R. Civ. P. 26(b)(5) will enable other parties to assess the claim, and a field listing the privilege claim asserted. Where the information cannot be determined by reference to other objective metadata, a party must manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata, unless such information is not reasonably discernable from the document.

2.      **Documents Redacted for Privilege:** As an initial production matter, redacted documents need not be logged as long as the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time, unless the privilege or protection is contained in these fields) is not

**HAGENS BERMAN**

redacted. For redacted documents where the subject matter is not decipherable as a result of redactions, a description of the contents of the document that is sufficient to understand the subject matter of the document may be requested.  The producing party will undertake reasonable efforts to make limited redactions of privileged or work product information.  After receipt of the production, the requesting party may request in good faith that the producing party create a privilege log for specific redacted documents and explain the basis for specific redactions so long as such a request is not disproportionate to the needs or the case and is not unduly burdensome. The parties agree to meet and confer about the proportionality and burden of such a request.

3.      **Challenges to Privilege Claims**:  Following the receipt of a privilege/redaction log, a requesting party may identify, in writing (by Bates/unique identified number), the particular documents that it believes do not meet the requirements of this Order. The producing party shall respond to such a request within 30 days. If a party challenges a request for further information, the parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court.

4.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

5.      Communications between a party and its outside counsel and communications between a Defendant's employees and its in-house litigation counsel created after September 8, 2023 are not required to be included in privilege logs.

6.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

7.      Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed

HAGENS BERMAN

by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

**F.      Clawback Process**

1.      Any party or non-party may request the return of any produced material or information on the grounds of privilege or work product protection by identifying it, stating the basis for withholding such material or information from production, and providing any other information that would be listed on a supplemental privilege log.

2.      If a party attempts to clawback a document authored or received by an individual who is scheduled for a deposition within 15 days of the date of the deposition, and the propriety of the clawback is not resolved pursuant to F(4) prior to the date of the deposition, then the parties will meet and confer on the appropriate course of action, which may, but need not necessarily include: rescheduling the deposition until the issue is resolved by the Court, conferring prior to the deposition to determine if the document may be used in the deposition subject to agreed-upon limitations; and/or calling the Court if the clawback is made during the deposition to determine if immediate resolution is possible.

3.      Notwithstanding the foregoing, the parties agree that any document used by any party in a deposition, expert report, or court filing in this action (with the exception of a motion to determine the existence of any privilege) shall not be eligible for protection under Rule 502(d) as a clawed-back document if the producing party does not clawback that document pursuant to this ESI Protocol within 30 calendar days of its use. For a document used by a party in a deposition, expert report, or court filing in this action that is clawed back after 30 calendar days of its use, Rule 502(b) shall govern any dispute with respect to the producing party's potential waiver of attorney-client privilege or work product protection with respect to the document.

HAGENS BERMAN

4.      Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the clawback of produced documents or information on the grounds of privilege or work product protection. If a party or non-party requests the return of such produced material or information then in the custody of one or more parties, the possessing parties shall within 7 business days: destroy or return to the requesting party or non-party the produced material or information and all copies thereof, or notify the producing party or non-party that it wishes to challenge the claim of privilege or work product protection and has sequestered the material until the issues can be resolved. The parties agree to meet and confer regarding the claim of privilege. If, at the conclusion of the meet and confer process, the parties are still not in agreement, they may bring the issue to the Court. A party challenging a clawback request may use the content of the clawed-back document for the sole purpose of filing a motion with the Court under seal.

**G.   Redactions**

1.      In addition to any redactions required by law, a producing party may redact personal information to the extent that the information falls within one of the following categories: (1) information that relates to the medical or health issues of an individual, (2) social security numbers, taxpayer-identification numbers, driver's license numbers, personal address information and/or phone numbers, passport numbers, financial-account numbers or other bank account information, or personal passcodes. Such redactions should be identified as "PII" on the redactions.

2.      Unless otherwise agreed, a party may not make redactions based on an assertion that the data is not relevant. The only redactions permitted are on the basis of privilege and the categories listed in G(1).

3.      The parties agree that, where ESI items need to be redacted, they shall be produced solely in TIFF format, or JPG format if producing documents in color, with each redaction clearly indicated, except in the case of personal database files and Excel spreadsheets, which shall be redacted in native format. Any non-privileged metadata fields reasonably available shall be provided. The parties understand that for certain MS Excel documents or other file types or files, TIFF redactions may be impracticable. These documents may be redacted

HAGENS BERMAN

using litigation database applications that can redact native Excel files, or in native format by inserting "[REDACTED]" in the cells from which data has been deleted before production.

**H.      Non-Party Discovery**

1.      A party that issues a non-party subpoena (the "issuing party") shall include a copy of this ESI Protocol Order with the subpoena.

2.      The issuing party shall be responsible for producing any documents obtained under a subpoena to all other parties.

3.      If the non-party production is not Bates-stamped, the issuing party shall endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other parties.

DATED: May 6, 2024                        Respectfully submitted,

                                          **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                          */s/ Steve W. Berman*
                                          Steve W. Berman (WSBA No. 12536)

                                          */s/ Theodore Wojcik*
                                          Theodore Wojcik (WSBA No. 55553)

                                          */s/Breanna Van Engelen*
                                          Breanna Van Engelen (WSBA No. 49213)

                                          */s/ Stephanie A. Verdoia*
                                          Stephanie A. Verdoia (WSBA No. 58636)

                                          */s/ Xiaoyi Fan*
                                          Xiaoyi Fan (WSBA No. 56703)

                                          1301 Second Avenue, Suite 2000
                                          Seattle, WA 98101
                                          Telephone: (206) 623-7292
                                          Facsimile: (206) 623-0594
                                          Email: steve@hbsslaw.com
                                          Email: tedw@hbsslaw.com
                                          Email: breannav@hbsslaw.com
                                          Email: stephaniev@hbsslaw.com
                                          Email: kellyf@hbsslaw.com

**HAGENS BERMAN**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Attorneys for Plaintiffs MCKENNA DUFFY and MICHAEL BRETT*

DATED: May 6, 2024.

**VAN KAMPEN & CROWE PLLC**

/s/ Al Van Kampen
Al Van Kampen (WSBA No. 13670)
P.O. Box 33632
Seattle, WA 98133
Telephone: (206) 441–1121
Email: avankampen@vkclaw.com

**VINSON & ELKINS LLP**

Michael W. Scarborough (*pro hac vice*)
Dylan I. Ballard (*pro hac vice*)
M. Kevin Costello (*pro hac vice*)
Madison Lo (*pro hac vice*)
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979–6900
Email: mscarborough@velaw.com
Email: dballard@velaw.com
Email: kcostello@velaw.com
Email: mlo@velaw.com

Stephen Medlock (*pro hac vice*)
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639–6500
Email: smedlock@velaw.com

Mackenzie Newman (*pro hac vice*)
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Telephone: (212) 237–0000
Email: mnewman@velaw.com

*Attorneys for Defendant Bridge Property Management, L.C.*

Respectfully submitted,

**DEBEVOISE & PLIMPTON LLP**

/s/ Abraham Tabaie
Abraham Tabaie (*pro hac vice*)
650 California Street
San Francisco, CA 94108
Telephone: (415) 738–5700
Email: atabaie@debevoise.com

Maura K. Monaghan (*pro hac vice*)
Michael Schaper (*pro hac vice*)
Kristin D. Kiehn (*pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
Telephone: (212) 909–6000
Email: mkmonaghan@debevoise.com
Email: mschaper@debevoise.com
Email: kdkiehn@debevoise.com

*Attorneys for Defendant Yardi Systems, Inc.*

**BAILEY DUQUETTE PC**

/s/ Hozaifa Cassubhai
Hozaifa Cassubhai (WSBN No. 39512)
William Burnside (WSBN No. 36002)
800 Fifth Ave, Suite 101-800
Seattle, WA 98104
Phone: (206) 225–2250
Fax : (866) 233–5869
Email: hozaifa@baileyduquette.com
        will@baileyduquette.com

*Attorneys for Defendant Calibrate Property Management, LLC*

**HAGENS BERMAN**

1

**CABLE HUSTON LLP**

2
*/s/ Brian S. Epley*
Brian S. Epley (WSBA No. 48412)
3    Jon W. Monson (WSBA No. 43912)
1455 SW Broadway, Suite 1500
4    Portland, OR 97201–3412
Telephone: (503) 224–3092
5    Email: jmonson@cablehuston.com
Email: bepley@cablehuston.com

6

7    *Attorneys for Defendant Dalton
Management, Inc.*

8    **SHOOK, HARDY & BACON L.L.P.**

9    */s/ Steven Rich*
Steven Rich (WSBA No. 48444)
10   701 Fifth Avenue, Suite 6800
Seattle, WA 98104
11   Telephone: (206) 344–7600
Email: srich@shb.com

12
Ryan Sandrock (*pro hac vice*)
13   555 Mission Street, Suite 2300
San Francisco, CA 94105
14   Telephone: (415) 544–1900
Email: rsandrock@shb.com

15   *Attorneys for Defendant LeFever Mattson
Property Management*

16

17   **K&L GATES LLP**

18   */s/ Christopher M. Wyant*
Christopher M. Wyant (WSBA No. 35561)
19   Tyler Lichter (WSBA No. 51090)
925 Fourth Avenue, Suite 2900
20   Seattle, WA 98104
Phone: (206) 623–7580
21   Fax: (206) 623–7022
Email: chris.wyant@klgates.com
22        tyler.lichter@klgates.com

23   Lauren Norris Donahue (*pro hac vice*)
70 W. Madison St., Suite 3300
24   Chicago, IL 60602
Telephone: (312) 372–1121
25   Fax: (312) 827–8000
Email: lauren.donahue@klgates.com

26
Derek Sutton (*pro hac vice*)
27   301 Hillsborough St., Suite 1200
Raleigh, NC 27603
28   Telephone: (919) 743–7331

**FOGARTY LAW GROUP PLLC**

*/s/ Paul E. Fogarty*
Paul E. Fogarty (WSBN No. 26929)
1904 Third Avenue, Ste 933
Seattle, WA 98101
Telephone: (206) 441–0172
Email: pfogarty@fogartylawgroup.com

**NORTON ROSE FULBRIGHT US LLP**

Michael Swarztendruber (*pro hac vice*)
2200 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 855–8067
michael.swarztendruber@nortonrosefulbright.com

Eliot Turner (*pro hac vice*)
1301 McKinney, Suite 5100
Houston, TX 77010
Telephone: (713) 651–5113
Email: eliot.turner@nortonrosefulbright.com

*Attorneys for Defendant Creekwood Property
Corporation*

**PERKINS COIE LLP**

*/s/ David A. Perez*
David A. Perez (WSBA No. 43959)
Elvira Castillo (WSBA No. 43893)
Tiffany Lee (WSBA No. 51979)
Marten King (WSBA No. 57106)
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.6767
Email: DPerez@perkinscoie.com
Email: ECastillo@perkinscoie.com
Email: TiffanyLee@perkinscoie.com
Email: MKing@perkinscoie.com

Adrianna Simonelli (WSBA No. 58472)
1120 NW Couch Street, Tenth Floor
Portland, OR 97209–4128
Telephone: 503–727–2000
Facsimile: 503–727–2222
Email: ASimonelli@perkinscoie.com

*Attorneys for Defendant HNN Associates, LLC*

**STOKES LAWRENCE, P.S.**

*/s/ Valerie Walker*
Valerie Walker (WSBA No. 52584)
Mathew Harrington (WSBA No. 33276)

HAGENS BERMAN

| | |
|---|---|
| 1 | Fax: (919) 516–2122<br>Email: derek.sutton@klgates.com | 1420 Fifth Avenue, Suite 3000<br>Seattle, WA 98101–2393 |
| 2 | | Telephone: (206) 626–6000<br>Email: Valerie.Walker@stokeslaw.com |
| 3 | *Attorneys for Defendant R.D. Merrill Real<br>Estate Holdings, LLC* | Email: Mathew.Harrington@stokeslaw.com |

1  Fax: (919) 516–2122
   Email: derek.sutton@klgates.com

2  *Attorneys for Defendant R.D. Merrill Real
3  Estate Holdings, LLC*

4  **GORDON REES SCULLY
   MANSUKHANI, LLP**

5  /s/ Todd A. Bowers
6  Todd A. Bowers (WSBA No. 24638)
   701 5th Avenue, Suite 2100
7  Seattle, WA 98104
   Telephone: (206) 695–5197
8  Email: tbowers@grsm.com

9  **ROETZEL & ANDRESS**

10 Stephen W. Funk (*pro hac vice*)
   222 South Main Street, Suite 400
11 Akron, OH 44308
   Telephone: (330) 849–6602
12 Cell: (330) 819–5387
   Email: sfunk@ralaw.com
13
   *Attorneys for Defendant Summit*
14 *Management Services, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1420 Fifth Avenue, Suite 3000
Seattle, WA 98101–2393
Telephone: (206) 626–6000
Email: Valerie.Walker@stokeslaw.com
Email: Mathew.Harrington@stokeslaw.com

**SPENCER FANE LLP**

Jessica Nelson (*pro hac vice*)
Donald Heeman (*pro hac vice*)
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402
Telephone: (612) 268–7006
Email: jnelson@spencerfane.com
Email: dheeman@spencerfane.com

*Attorneys for Defendant Manco Abbott, Inc.*

**BRADLEY BERNSTEIN SANDS LLP**

/s/ Heidi B. Bradley
Heidi B. Bradley (WSBA No. 35759)
2800 First Avenue, Suite 326
Seattle, WA 98121
Telephone: (206) 337–6551
Email: hbradley@bradleybernstein.com

/s/ Darin M. Sands
Darin M. Sands (WSBA No. 35865)
1425 SW 20th Ave., Suite 201
Portland, OR 97201
Telephone: (503)734–2480
Email: dsands@bradleybernstein.com

*Attorneys for Defendant Morguard Management
Company Inc.*

1

**ORDER**

2

Based on the foregoing, IT IS SO ORDERED.

3

4

Dated this 7th day of May, 2024.

5

6

Robert S. Lasnik
UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAGENS BERMAN

# APPENDIX A

## PRODUCTION FORMAT PROTOCOL

### I.      DEFINITIONS

**The following definitions and terms shall apply in this APPENDIX A:**

1. "Document" carries its broad meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy/paper material. A draft or non-identical copy is a separate Document within the meaning of this term.

2. "ESI" means electronically stored information, and carries a broad meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

3. "Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

4. "Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

5. "Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

6. "Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

7. "OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

8. "Producing Party" means the party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

9. "Requesting Party" means the party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

HAGENS BERMAN

10.     "Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard document review systems. Tagged Image File Format (TIFF) and JPG images are examples of Static Images.

## OVERVIEW

**The production format has four main components.**

1.      A directory containing images of every page of every Document in the production, Bates-numbered sequentially.

2.      A directory containing Native Files for a subset of the Documents, each file named with the Bates number of the first page of the Document it represents and the confidentiality designation, with no additional text beyond this, and with the same extension as the original Native File type of the Document.

3.      A directory containing OCR or Extracted Text files, one file per Document, each file named with the Bates number of the first page of the Document it represents with no additional text beyond this, followed by ".txt" suffix.

4.      Load Files containing the Metadata for each Document in .DAT file format, and an image load file in .OPT format that provides relative links to every page of the images associated with the documents referenced in the accompanying .DAT load file.

## II.     FORMAT FOR PRODUCTION

**Commencement of Production.**

The production of Documents shall proceed at such time, place, and in such sequence as allowed under the Federal Rules of Civil Procedure, as agreed to by the parties, or permitted by the Court.

**General Format of Production.**

Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form, where reasonably feasible. Notwithstanding the foregoing provisions of this paragraph, the parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Documents are not susceptible to production in the format or methods of production addressed herein. In that event, the parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**HAGENS BERMAN**

**Production Format.**

All documents shall be produced in the following formats when reasonably feasible:

1. <u>Electronic Production of Paper Documents</u>. Documents that are maintained in paper format shall be scanned at 300 x 300 dots per inch (DPI) or greater resolution, in single-page Group IV TIFF format, and shall reflect the full and complete information contained in the original Document. Hard copy Documents shall be produced with associated OCR files at the same time that the TIFF files are produced and with a Load File that includes at least the following Metadata fields: Begin Bates; End Bates; Begin Family; End Family; Pages; TextPath; Placeholder; File Extension; Custodian; All Custodians; Confidentiality; and Redacted, as those fields are described in Section III, below. If color is material to the understanding of a document, the Requesting Party may request that a document be re-produced in single-page color JPG image format. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing" or "auto-rotation," should be turned on when documents are run through the process. Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the document. If the content of the Document is obscured by the affixed notes, the Document and notes shall be scanned separately.

2. <u>Production of Electronically Stored Information (ESI)</u>. Unless otherwise specified, Document images shall be generated from electronic Documents as single page Group IV TIFF images that reflect the full and complete information contained on the original Document. If color is material to the understanding of a document, the Requesting Party may request that a  document be re-produced in singe-page color JPG image format.  In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. The failure to withhold such text for a redacted Document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

3. <u>File Structure</u>. The Producing Party shall produce the following sets of files with each production.

    a. <u>Image Load File.</u>

        (1) Every document referenced in a production image load file must have all corresponding images, text and metadata.

        (2) The name of the image load file must mirror the name of the delivery volume and should have an .OPT file extension.

        (3) The volume names must be reasonably consecutive (e.g. ABC001, ABC002…).

        (4) The load file must contain one line per image.

**HAGENS BERMAN**

(5)    Every image in the delivery volume must be contained in the image load file.

(6)    The image key must be named the same as the Bates number of the image.

(7)    Load files must not span across media.

(8)    File should be placed in the root directory or a folder labeled "DATA."

a.    <u>Metadata Load File</u>.

(1)    Each production has one load file, in "Concordance" style .DAT format.

(2)    Values must be enclosed by þ (ASCII Decimal 254).

(3)    Values must be separated by the "Device Control 4" character, ASCII decimal 20.

(4)    The first line of the load file must contain the column/field names

(5)    The fields Begin Bates and End Bates must be present, and the first fields listed in the load file.

(6)    The field NativePath must be present if native files are included in the document production.

(7)    Each subsequent row must contain the Metadata for one Document.

(8)    Every row must have the same number of columns/fields (empty values are acceptable).

(9)    Text must be encoded in UTF-8.

(10)   File should be placed in the root directory or a folder labeled "DATA."

b.    <u>OCR and Extracted Text Files (.TXT Files)</u>.

(1)    A single text file for each Document containing all the Document's pages, in text.

(2)    Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document.

(3)    Text must be encoded in UTF-8.

(4)

HAGENS BERMAN

(5)     Files should be placed in a directory labeled "TEXT."

c.     <u>Image Files.</u>

(1)     Single-page Group IV TIFF or JPG images for each Document, containing all images for that document.

(2)     Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the first page of the document (i.e., the "Begin Bates" number), and <ext> is the appropriate extension for the image format (.tif, .jpg).

(3)     Files should be placed in the "IMAGES" subdirectory.

4.     <u>Illegible Documents.</u> The Producing Party and the Requesting Party shall meet and confer to attempt to resolve problem(s) related to documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Requesting Party.

a.     <u>Native Format Documents.</u> The parties recognize that it may be appropriate for certain Documents to be produced in Native Format, such as spreadsheets, engineering drawings, presentations or slides, and audio and video files. In all cases, unless there is no textual content, an OCR or Extracted Text file shall be produced along with the Native File. The parties agree to meet and confer regarding the production of certain file types in native format where necessary.

b.     <u>Excel and Access Databases.</u> To the extent that responsive documents exist in Excel or another spreadsheet program, documents shall be produced in Native Format, or a format agreed to by the parties. To the extent that the document format constitutes a database created or maintained in Access or another database program, Documents shall be produced in their Native Format, or in a format agreed to by the parties, where reasonably feasible. If a database is based upon proprietary software, the parties shall meet and confer regarding the format of production, which shall be a reasonably feasible format, to enable review by the Receiving Party. An image placeholder shall be provided for each document produced in Native Format. Each placeholder shall contain the phrase "DOCUMENT PRODUCED IN NATIVE FORMAT," or something similar, and shall be stamped with confidentiality designation and the Bates number corresponding to the native file.

c.     <u>PowerPoint Presentations (PPT).</u> PPT presentations should be produced in Native Format (*e.g.*, as .PPT files). PPT presentations that require redactions shall be produced in single-page TIFF or JPG format, along with speaker notes. The linked native file name should also match the Begin Bates field with the appropriate file extension. Any hidden slides or speakers notes should be included in PPT presentations.

HAGENS BERMAN

d. <u>Password-Protected, Encrypted or Proprietary-Software Files</u>: With respect to any ESI items that are password-protected or encrypted within the scope of review, the Producing Party will take reasonable steps to request passwords from custodians to remove the protection and produce an unencrypted version of the file. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Producing Party shall advise the Requesting Party. To the extent that the Requesting Party would need to use proprietary software to view certain ESI, the Parties agree to meet and confer regarding the next steps, if any, with respect to such ESI.

e. <u>Audio and Video Data</u>. Parties should make best efforts to ensure care is taken for collection and production of any responsive audio and/or video data, and to preserve any Metadata that may be associated with those items. These data types may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies.

f. <u>Word Documents (or similar)</u>. Microsoft Word documents (.DOC, .DOCX, or substantially similar non-Microsoft file formats) should be produced in single-page TIFF or JPG format for each Document, containing all images for that document, and should be imaged in a manner that captures tracked changes and comments. Upon the request of the Requesting Party, documents with tracked changes and comment shall be re-produced in color JPG image format. To the extent a Requesting Party believes the converted image format distorts, omits, or causes information to be improperly displayed, the Requesting Party may request the Document in Native Format and the Producing Party shall meet and confer to attempt to resolve the problem(s).

g. To the extent the Producing Party produces a Document in Native Format, the following specifications apply:

(1) Filenames must be unique in the production, unless the content is identical. Files should be named for the starting Bates number of the associated Document.

(2) The filename must retain the file extension corresponding to the original Native Format (*e.g.*, an Excel 2003 spreadsheet's extension must be .xls).

5. <u>Color</u>. For any non-native documents where color is material to the understanding of the document or parts thereof (e.g., pie and bar charts), the document shall be, at the request of the Requesting Party, re-produced as single page color JPG images, or documents that need to be produced in color may be produced in native format. Otherwise, non-native document images may be produced in black and white.

**HAGENS BERMAN**

6.     <u>Production Media</u>. A Producing Party may produce Documents electronically (via secure FTP, for example), or on an external hard drive, DVD, CD-ROM, or such other readily accessible computer or electronic media as the Producing Party and the Requesting Party may hereafter agree upon (the "Production Media"). Production Media should be labeled on its face with the production date, the production volume, the Bates range contained on the Production Media, and any confidentiality notation that may be required by the Protective Order entered in this case. Where not practicable to label Production Media on its face, a letter or email with the required information should be provided. If the Producing Party encrypts or "locks" the production, the Producing Party shall include, under separate cover, instructions regarding how to decrypt the files, and any necessary passwords.

7.     <u>Document Unitization</u>. When scanning paper documents into Document images, they shall be unitized in a manner to maintain the Document(s) and any attachments as they existed in their original state, as reasonably feasible. Any applicable folder structure information should also be provided. Responsive attachments to e-mails stored shall be produced contemporaneously and sequentially immediately after the parent e-mail.

8.     <u>Duplicates</u>. A Producing Party who has more than one identical copy of an electronic Document (i.e., the Documents are actual duplicates) need only produce a single copy of that Document if the documents do not have any attachments. Document families that are exact duplicates on the family level may only be deduplicated when the parent email/document and all attachments are exact duplicates. For avoidance of doubt, a Producing Party may de-duplicate actual duplicate documents across custodians, but all custodians should be identified in the All Custodians and duplicate file paths shall be identified in the All Paths metadata fields.

9.     <u>Bates Numbering</u>. Each Producing Party shall Bates number its production(s) as follows:

   a.     Each Bates number should consist of a unique identifier consisting of a prefix, followed by nine numbers (*e.g.*, ABC000000001). The prefix should be substantially similar for all pages produced by the same Producing Party throughout this litigation, and the bates sequence shall not contain spaces. Each page of a Document must have its own Bates number, and Bates numbers should be sequential.

   b.     <u>Document Images</u>. Each page of a produced Document shall have a legible, unique page identifier (Bates number) electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. No other legend or stamp should be placed on the document other than a confidentiality designation (where applicable), a privilege designation, or a redaction stamp (where applicable). For confidential documents the confidentiality designation shall be "burned" onto each Document's image

at a location that does not unreasonably obliterate or obscure any information from the source Document.

c.  <u>Native Format Documents</u>. In order to preserve the integrity of any Native Format Documents that will be produced, no Bates number, confidentiality legend or redaction information should be added to the content of the Native Format Document. Each native should have an individual Bates number assigned in the file name.

If documents cannot be rendered to a readable TIFF/JPG format, and the document needs to be redacted for personally identifiable information or privileged content, the native documents may be redacted by creating a new copy of the native document and inserting "Redacted" or similar language where the protected content is located. In that circumstance, a copy of the original native file will be maintained and the party will identify documents redacted in native format in the Redacted metadata field.

## III.    METADATA FIELDS

**A.    For scanned hard copy documents, the Producing Party will provide the Metadata fields below, to the extent reasonably feasible.**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image (Y/N). |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| Production Volume | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

HAGENS BERMAN

**B.**   **For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the Producing Party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | If the Producing Party engages in deduplication, then Identification of all file paths for duplicate copies |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Title | Title field value extracted from the Metadata of the Native File. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |

HAGENS BERMAN

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Document Type | Document type. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (*i.e.*, hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |
| Production Volume | Production volume number (*e.g.*, V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |

HAGENS BERMAN