UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MCKENNA DUFFY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> YARDI SYSTEMS, INC., *et al.*, <br><br> Defendants. | CASE NO. 2:23-cv-01391-RSL <br><br> AMENDED ORDER DENYING R.D. MERRILL'S MOTION TO DISMISS |

This matter comes before the Court on "Defendant R.D. Merrill Real Estate Holdings, LLC's Motion to Dismiss." Dkt. # 139. R.D. Merrill does business as Pillar Properties (hereinafter, "Pillar") and leases mulitifamily residential units in the Puget Sound region. Pillar joins in defendants' joint motion to dismiss (Dkt. # 138) and further argues that the claims against it are implausible given the facts alleged in the First Amended Complaint, documents that can be incorporated by reference, and documents of which the Court can take judicial notice. The Court has denied the joint motion to dismiss by separate order. The following discussion deals only with Pillar's requests for judicial notice and its argument that plaintiffs have failed to plausibly suggest that Pillar was involved in the alleged conspiracy.

AMENDED ORDER DENYING R.D. MERRILL'S MOTION
TO DISMISS - 1

# BACKGROUND

Plaintiffs allege that, in or before 2016, Pillar joined an on-going conspiracy to share detailed, competitively sensitive, non-public information that would be used by a third party, Yardi Systems, Inc., to establish supracompetitive rental rates in the multifamily housing market in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Dkt. # 113 at ¶¶ 43 and 178-208. The alleged combination and conspiracy involved (a) a set of vertical agreements between Yardi and each individual lessor defendant for the use of Yardi's revenue management software, (b) a continuing horizontal agreement between and among the lessor defendants and other co-conspirators to provide their commercially sensitive information to Yardi, to use Yardi's revenue management software, and to implement the recommendations generated thereby, and (c) a shared understanding that Yardi would use the commercially sensitive information provided by the putative competitors to recommended rental rates above what would be earned in a truly competitive market.

Both of the named plaintiffs rented multifamily residential units from Pillar in Seattle. Plaintiffs allege that they paid inflated prices as a result of Pillar's use of Yardi's centralized pricing system. Pillar requests that the Court take judicial notice of three leases, the first dated February 17, 2021, between McKenna Duffy and The Wave (Dkt. # 140-2 at 5-77), the second dated December 21, 2022, between McKenna Duffy/Henry Keiser and The Nolo (Dkt. # 140-2 at 79-161), and the third dated August 26, 2020, between Michael Brett and The Wave (Dkt. # 140-2 at 163-235). Pillar offers the documents to show that

The Wave leases contain "One-Time Concessions" off the stated rental price (Dkt. # 140-2 at 17 and 175) and that plaintiffs affirmatively acknowledged that the rent charged was a fair representation of the market rate for similar dwellings at comparable properties (Dkt. # 140-2 at 17, 91, and 175).

## DISCUSSION

**A. Request for Judicial Notice**

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

Pillar requests that the Court incorporate and take judicial notice of the three leases signed by the named plaintiffs and a webpage titled "Success Stories – Pillar Properties on Elevate." Pillar argues that these documents are expressly referenced, cited, and used as the basis of certain allegations in the First Amended Complaint.

**1. Incorporation by Reference**

A document that is not physically attached to a complaint may nevertheless be incorporated by reference into the pleading "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Mere reference to a document in the complaint is not sufficient: rather, the document must be integral to or form the basis of plaintiff's claims. *Id.* at 908-09. In addition, the document's authenticity must not be in question and there must be no disputed issues as to the document's relevance. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citations omitted). The relevance and authenticity of the three leases are not disputed, and although they are referenced only once in the First Amended Complaint, the existence of the leases is critical to plaintiffs' standing to pursue their claims.

With regards to the webpage regarding Pillar's success in using Yardi's products, plaintiffs chose to quote certain language from the webpage in the First Amended Complaint, asserting that "[a]nother 'success story' available on Yardi's website states that Landlord Defendant Pillar Properties' use of RENTmaximizer 'drive[s] higher revenue, manage[s] costs and balance[s] risk.'" Dkt. # 113 at ¶ 92. The reference to the webpage is

very limited and is offered as support for plaintiffs' allegation that Pillar was able to raise rents as a result of its use of RENTmaximizer. That factual allegation could have been made without citation to this document, however, and the mere mention of a document does not make it part of the pleading for purposes of a Rule 12(b)(6) analysis. *Ritchie*, 342 F.3d at 908. If Pillar intends to dispute plaintiffs' allegations that its revenues increased when it began using RENTmaximizer, it will have to do so through the presentation of contrary evidence on summary judgment, not by incorporating a non-integral document into the complaint.

**2. Judicial Notice**

As an alternative to incorporation by reference, the Court could take judicial notice of the webpage. Pursuant to Federal Rule of Evidence 201(b), facts that can be judicially noticed "are not subject to reasonable dispute" because it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pillar argues that the webpage can be considered in the context of the motion to dismiss because it was published on the internet and, having cited it themselves, plaintiffs have not disputed its existence, authenticity, or relevance. *See Daniels-Hall*, 629 F.3d at 998-99 (taking judicial notice of a list of approved vendors "displayed publicly" on websites). The Court finds that the existence of the webpage meets the standards for judicial notice set forth in Federal Rule of Evidence 201(b).

### 3. Scope of Judicial Notice

In the circumstances presented here, neither incorporation by reference nor judicial notice under Rule 201 means that the Court must accept the statements contained in the documents as true. Plaintiffs' refer to their leases and the webpage for certain purposes. Their use does not suggest that plaintiffs vouch for the accuracy of every statement in the cited documents, and their accuracy will not be presumed. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014-15 (9th Cir. 2018); *Lopez v. Apple, Inc.*, No. 19-CV-04577-JSW, 2021 WL 4059106, at *2 n.2 (N.D. Cal. Sept. 2, 2021). Just as importantly, when considering the leases and the webpage in the context of a Rule 12(b)(6) motion, their contents must be viewed in the light most favorable to plaintiffs.

### B. Contract, Combination or Conspiracy

To state a claim under § 1 of the Sherman Act, plaintiffs must plead "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) which is intended to restrain or harm trade; (3) which actually injures competition; and (4) harm to the plaintiff from the anticompetitive conduct." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1129 (9th Cir. 2015) (internal quotation mark and citation omitted). For the reasons stated in the Order Denying Defendants' Joint Motion to Dismiss, Dkt. # 187 at 5-11, plaintiffs have adequately alleged "'a conscious commitment to a common scheme designed to achieve an unlawful objective'" on the part of the lessor defendants, including Pillar. *PLS.com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 842 (9th Cir. 2022), *cert. denied sub nom. The Nat'l Ass'n of Realtors v. The*

*PLS.com, LLC*, __ U.S. __ 143 S. Ct. 567 (2023)) (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)). The who, what, with whom, where, and when of the scheme are adequately alleged. In a nutshell, Pillar entered into a formal agreement with Yardi as early as 2016 to provide its commercially sensitive data, knowing Yardi was collecting similar data from Pillar's competitors which it would use to generate rental rate recommendations that would result in supracompetitive returns.

Pillar argues, however, that its willingness to offer concessions on rental rates, as it apparently did at one of its buildings in 2020 and 2021, makes plaintiffs' conspiracy allegations implausible. Pillar would have the Court interpret the rent concessions as proof that it did not agree to implement RENTmaximizer's pricing recommendations. To do so would require the Court to ignore many of the allegations in the First Amended Complaint and to draw multiple inferences in Pillar's favor. Plaintiffs allege that Pillar entered into an agreement with Yardi to turn over its commercially-sensitive data in exchange for Yardi's pricing recommendations: Pillar's argument rests on the contrary (and less-than-compelling) assertion that it paid for a service it never intended to use. According to the allegations, Yardi advertised its services as automating the lessors' pricing decisions, and Pillar understood that implementing the recommendations was critical to the success of the enterprise. Plaintiffs also allege that the lessor defendants generally adopted Yardi's pricing recommendations, that defendants engaged in conduct to facilitate and enforce the implementation of the pricing recommendation, and that Yardi was, in fact, able to

generate above-market prices for its clients using a system that required adoption of its recommendations for success.

That Pillar made "concessions" at one building in the midst of the COVID-19 pandemic does not debunk these allegations and does not make implausible a conspiracy to manipulate rental prices. First, Yardi's recommended lease rate can be achieved in any number of ways, including presenting the recommended rate to consumers as a straight per month charge or offering the unit at a higher monthly price that is then reduced by a negotiated "concession." Second, even if the concessions identified in plaintiffs' leases represent a divergence from Yardi's recommended rental rate, there is no reason to assume at the motion to dismiss stage that the negotiated rate would bring the overall price of the rental to something approximating that which would have prevailed in ordinary market conditions. *See In re RealPage, Inc., Rental Software Antitrust Litig. (No. II)*, No. 3:23-MD-03071, 2023 WL 9004806, at *35, n.26 (M.D. Tenn. Dec. 28, 2023). Taken in the light most favorable to plaintiffs, the allegations of the First Amended Complaint amply suggest that Pillar engaged in a Yardi-centered conspiracy in violation of § 1 of the Sherman Act.[1]

---

[1] As discussed in the Order Denying Defendants' Joint Motion to Dismiss, the fact that plaintiffs' allegations are sufficient to survive a Rule 12(b)(6) motion does not mean that a conspiracy in fact exists. Pillar may ultimately be able to show it did not understand what Yardi was offering or how its system worked, that it did not use Yardi's pricing recommendations, or that it ignored the pricing recommendations so often as to overcome allegations of concerted action. At this stage of the proceeding, however, plaintiffs have adequately alleged both invitation and acceptance and sufficient plus factors to give rise to a plausible inference of a preceding agreement.

AMENDED ORDER DENYING R.D. MERRILL'S MOTION
TO DISMISS - 8

Pillar also argues that its participation in an unlawful conspiracy to restrain trade is implausible because (a) only one other Seattle-area lessor is named as a defendant, (b) the named plaintiffs conceded in their leases that the rental rates to which they agreed were competitive market prices, and (c) the First Amended Complaint mischaracterizes public statements regarding Pillar's use of Yardi's products. The First Amended Complaint contains allegations regarding other, non-defendant Yardi clients who accepted the invitation to join the on-going conspiracy. It also alleges that Pillar's relationship with Yardi was successful in that it allowed Pillar to charge supracompetitive prices. That only two (or three) Seattle-area lessors are named as defendants does not make implausible Pillar's participation in a nationwide conspiracy to delegate pricing decisions to a centralized third party.[2] With regards to plaintiffs' lease terms, viewing the leases in the light most favorable to plaintiffs, the fact that Pillar felt the need to include a declaration of competitiveness in its form lease suggests that the other lease terms, such as the rental rate itself, would imply otherwise. Baldly asserting that the rent charged is "fair" and "reflective of the rent for a similar dwelling at comparable properties" – and then compelling plaintiffs to agree with those assertions – is insistent and excessive, bringing to mind the old Shakespearean adage, "The lady doth protest too much, methinks." *Hamlet*, Act III, Scene II, l. 219. Finally, plaintiffs' allegation that Pillar was able to raise rents as a result of using RENTmaximizer could have been made without citation to Yardi's

---

[2] Pillar allegedly controls over 2000 units in Seattle, while defendants HNN Associates, LLC, and Bridge Property Management (controlling over 50 rental complexes and some portion of 50,000 units, respectively) operate in the communities just south of Seattle.

AMENDED ORDER DENYING R.D. MERRILL'S MOTION
TO DISMISS - 9

webpage. Even if the reference were excised from the complaint, it does not alter the plausibility of plaintiffs' conspiracy allegations.

For all of the foregoing reasons, Pillar's motion to dismiss (Dkt. # 139) is DENIED.

DATED this 5th day of December, 2024.

*signature*
Robert S. Lasnik
United States District Judge