Hon. Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| *In Re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION | No. 2:23-cv-01391-RSL |
| MCKENNA DUFFY, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., *et al.*,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PHASED DISCOVERY**<br><br>(Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053)<br><br>**NOTE ON MOTION CALENDAR: March 14, 2025** |



**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................4

    A. Yardi's proposal is based on a mischaracterization of the factual record. ..................4

    B. Bifurcation would be impractical, inefficient, and prejudicial. ...................................5

        1. There is significant overlap between individual and class discovery..............6

        2. Yardi's proposal would unduly delay class certification. ...............................7

        3. Phased discovery would not promote judicial economy. ................................8

        4. Phased discovery would significantly prejudice Plaintiffs............................11

III. CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abramson v. Gohealth LLC*,
   No. 19 C 6318, 2020 WL 5209817 (N.D. Ill. Sept. 1, 2020) ..................................................... 1

*Baker v. Colonial Life & Acc. Ins. Co.*,
   No. C14-0319JLR, 2014 WL 3850848 (W.D. Wash. Aug. 5, 2014) ...................... 1, 10, 11, 13

*Blair v. Assurance IQ LLC*,
   No. C23-0016-KKE, 2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) ........................ 4, 6, 7, 8

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ................................................................................................................... 6

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ................................................................................................................. 1

*CRS, LLC v. Valve Corp.*,
   No. C08-0361RAJ, 2008 WL 11343649 (W.D. Wash. Aug. 1, 2008) ..................................... 1

*Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*,
   No. 8:10-CV-2008-T-33TGW, 2011 WL 486123 (M.D. Fla. Feb. 7, 2011) ........................... 3

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   258 F.R.D. 167 (D.D.C. 2009) ............................................................................................. 3, 9

*True Health Chiropractic, Inc v. McKesson Corp.*,
   No. 13–CV–02219–JST, 2015 WL 273188 (N.D. Cal. Jan. 20, 2015) .................................... 7

*United States v. Boeing Co.*,
   No. C22-0485-JLR, 2023 WL 5836487 (W.D. Wash. Aug. 31, 2023) .............................. 3, 10

### OTHER AUTHORITIES

Fed. R. Civ. P. 23 ............................................................................................................................ 6, 7



I.     INTRODUCTION

Courts in this district regularly recognize that "[b]ifurcation is the exception rather than the rule."[1] As Judge Robart explained, "virtually every defendant in every civil case hopes that a dispositive motion or other tactic will result in an adjudication of no liability. Were that hope, by itself, sufficient to warrant "phased" discovery, then discovery would always occur in stages."[2] But a defendant's claim that they will prevail on the merits "does not by itself justify phased discovery." In particular, "phased discovery invites additional discovery dispute." This is because "discovery that is solely relevant to one issue is rare, and the court is reluctant to encourage the parties to expend resources arguing over whether the discovery one party seeks belongs in one phase of discovery rather than another."[3] Courts also recognize it is "common for Defendants seeking bifurcation to 'paint a dismal picture of Plaintiffs' prospects.'"[4]

Having lost the motion to dismiss, Yardi now proposes to phase discovery with a highly curated initial phase of merits discovery. Yardi's proposal should be denied because it is an invitation to (1) improperly cabin antitrust discovery in an attempt to have the Court issue dispositive rulings on the basis of a narrow and slanted factual record; and (2) introduce needless, prejudicial complexity and delay into the litigation of the case.

*First*, the Supreme Court has long held that in an antitrust case, "plaintiffs should be given the full benefit of their proof, without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each."[5] The Court properly gave Plaintiffs "the full benefit of the proof" in collectively considering these various factual components at the motion to dismiss stage to determine whether they alleged concerted activity, i.e., evidence of "horizontal agreement[] among

---

[1] *Baker v. Colonial Life & Acc. Ins. Co.*, No. C14-0319JLR, 2014 WL 3850848, at *2-3 (W.D. Wash. Aug. 5, 2014).

[2] *CRS, LLC v. Valve Corp.*, No. C08-0361-RAJ, 2008 WL 11343649, at *1 (W.D. Wash. Aug. 1, 2008).

[3] *Id.*

[4] *Abramson v. Gohealth LLC*, No. 19 C 6318, 2020 WL 5209817, at *3 (N.D. Ill. Sept. 1, 2020) (quoting *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 488 (C.D. Cal. 2012)).

[5] *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962).

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 1
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

competitors with regards to pricing structures[.]"[6] In denying the motion to dismiss, this Court cited numerous different factual components of Plaintiffs' allegations that will be relevant to establishing Yardi's—and lessor defendants'—liability, including that Yardi advertised its revenue management software to lessors "as automating the lessors' pricing decisions," that "the lessor defendants understood that implementing the system was critical to the success of the enterprise and therefore generally adopted Yardi's pricing recommendations," "that defendants engaged in conduct to facilitate and enforce the implementation of the pricing recommendations," and that "Yardi was, in fact, able to generate above-market prices using a system that required adoption of its recommendations for success."[7]

Yardi's proposal, on the other hand, is a blatant effort to limit discovery to a single factual issue and exclude discovery into other factual allegations on which the Court expressly relied in finding that Plaintiffs plausibly alleged a Section 1 claim. Indeed, while Plaintiffs have already served written discovery related to these factual allegations that the Court relied upon, Yardi has refused to produce any response on numerous relevant issues during its proposed first phase of discovery.[8]

Indeed, Yardi makes the remarkable proposal that the Court rule on a dispositive motion involving a claim of a horizontal conspiracy among landlord defendants without any discovery *at all* being taken of the conspirator landlords. Under Yardi's proposal, dispositive motion practice will occur before *any* direct discovery into issues such as the landlords' reasons for using RENTmaximizer (including, critically, whether they believed that the collective use of RENTmaximizer would allow them to charge supracompetitive prices), or the extent to which landlords engaged in direct communications with each other regarding price and then used that information in RENTmaximzier

---

[6] *Duffy, et al. v. Yardi Sys., Inc., et al.*, No. 2:23-cv-01391-RSL (W.D. Wash. Dec. 4, 2024), ECF No. 187 ("MTD Order") at 15.

[7] MTD Order at 7, 10.

[8] Declaration of Steve W. Berman in Support of Plaintiffs Opposition to Defendants' Motion for Phased Discovery ("Berman Decl."), Ex. 1 (Yardi's responses and objections to Plaintiffs third set of Requests for Production).

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 2
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

to generate pricing recommendations.[9] This is despite the fact that the Court's motion to dismiss order repeatedly emphasized factual allegations related to the actions of the landlord defendants as critical in denying dismissal of Plaintiffs' claims.[10]

*Second*, Yardi's proposal would generate significant procedural complexity and inevitably lead to numerous discovery disputes. Courts recognize that "[b]ifurcated discovery fails to promote judicial economy when it requires ongoing supervision of discovery."[11] Here, disputes are particularly likely because Yardi is not simply proposing a division between class and merits discovery or between liability and damages issues, which is the kind of bifurcation that is sometimes employed.[12] Instead, Yardi proposes a phase of discovery solely focused on a narrow segment of liability-related issues that it has self-selected. Even when bifurcation is proposed along more readily distinguishable lines, courts recognize that it raises significant concerns because "if district courts as neutral arbiters of the law find the distinction between merits and class issues to be murky at best, and impossible to discern at worst, the Court cannot imagine how parties with an incentive to hold back damaging evidence, can properly draw the line between these categories of evidence during 'phased' discovery."[13]

Here, if phased discovery is granted on the terms that Yardi has requested, then disputes will inevitably arise about whether materials relate to the working of Yardi's Revenue IQ software that Yardi claims should be the sole focus of phase one. Indeed, Yardi is currently refusing to produce materials in response to RFPs targeted at key issues related to the functioning of Revenue IQ such as (1) communications between Yardi employees and landlord defendants related to the operation of Revenue IQ; (2) Yardi's marketing materials to Revenue IQ users and potential users; (3) the rate at

---

[9] In their Amended Complaint, Plaintiffs alleged that certain lessor defendants communicated directly with their competitors to exchange rental pricing information. Am. Compl. (ECF No. 113) ¶¶ 25-26, 140-142.

[10] *See* MTD Order at 4, 7-12.

[11] *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009).

[12] *See, e.g.*, *United States v. Boeing Co.*, No. C22-0485-JLR, 2023 WL 5836487, at *3 (W.D. Wash. Aug. 31, 2023) (granting bifurcation on issues of liability and damages).

[13] *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, No. 8:10-CV-2008-T-33TGW, 2011 WL 486123, at *2 (M.D. Fla. Feb. 7, 2011).

which recommendations are implemented; and (4) Yardi's analyses of the success at Revenue IQ in raising rents.[14]

Furthermore, Yardi's proposal will cause significant delay and inefficiency because it contemplates a trifurcation of the discovery/dispositive motion process with (1) an initial discovery phase and partial dispositive motion briefing; (2) discovery and class certification briefing; (3) a second round of dispositive motion practice. Courts have repeatedly rejected bifurcation proposals, even when they do not contemplate *two* rounds of dispositive motion practice, because they result in "needless duplication" of "at least two lengthy steps in this litigation: discovery and dispositive motions practice."[15]

Yardi's proposal would force the Court to rule on dispositive motions without a sufficiently developed factual record, significantly delay the litigation, and generate numerous discovery disputes. Plaintiffs respectfully request that the Court deny Yardi's motion to phase discovery.

## II.     ARGUMENT

### A.     Yardi's proposal is based on a mischaracterization of the factual record.

Yardi's primary justification for phased discovery is that limited discovery on Yardi alone will support its claims about how Revenue IQ functions. But the discovery that has occurred to date has already confirmed that "lessor defendants entrust Yardi with their sensitive commercial information in order to obtain and implement the supracompetitive rental rates generated by Yardi's algorithm."[16]

First, Yardi has produced representative contracts for Revenue IQ. All of these contracts require users to give Yardi broad rights to use their confidential information. For example, one sample agreement states that "***Client acknowledges and agrees that Yardi may aggregate compile, use and disclose Client data provided to Yardi*** as part of the services in order to improve, develop, or enhance

---

[14] Berman Decl., Ex. 3 (Letter from Plaintiffs' counsel to Yardi re discovery conferences, dated March 10, 2025) ("Discovery Letter").

[15] *Blair v. Assurance IQ LLC*, No. C23-0016-KKE, 2023 WL 6622415, at *8 (W.D. Wash. Oct. 11, 2023).

[16] MTD Order at 12.

the Services."[17] The sample agreement further states that "**Client agrees to provide current and relevant data to Yardi regarding the properties/units/items for which Yardi provides Services**."[18] Yardi's motion for phased discovery never addresses this contractual language.

Second, Yardi repeatedly states in its own discovery responses that it has not identified a single Revenue IQ user who did not agree to this contractual language that allows Yardi to use their data.[19] In short, every single Revenue IQ user, including each of the lessor defendants, entered into contracts entrusting Yardi with their sensitive commercial information as a condition for receiving Revenue IQ service—and understood that the data may be "aggregated, compiled, or used" by Yardi as part of the services. Again, Yardi's motion never acknowledges its own admissions on this issue.

Third, Yardi's own discovery responses also explain in detail that Revenue IQ provides various benchmarking data to users on other competitor properties. This "benchmarking information" is based on "leasing, operational, and financial data from Yardi property management clients."[20] Users are able to select the specific competitor properties that form the benchmark. Therefore, Yardi itself has already admitted that the pricing recommendations from Revenue IQ are provided hand in hand to lessor defendants alongside confidential pricing and supply information about competitor properties. Yardi's motion never addresses the undisputed fact that confidential pricing information from competitors is provided through Revenue IQ to the landlord defendants.

In short, the limited discovery that has been conducted to date already supports Plaintiffs' allegations.

**B.    Bifurcation would be impractical, inefficient, and prejudicial.**

In determining whether to bifurcate discovery, courts consider the following factors "(1) the overlap between individual and class discovery; (2) whether bifurcation promotes Rule 23(c)(1)(A)'s

---

[17] ECF No. 186-2 at 4-5 (emphasis added).

[18] *Id*.

[19] *See, e.g.*, Berman Decl., Ex. 2 at 22-23 (in response to Request No. 13, "Yardi responds that following a reasonable search, it is not aware of any such agreement with any Revenue IQ user").

[20] *See* Yardi's Response and Objections to Plaintiffs' Second Set of Interrogatories to Defendant Yardi, ECF No. 182-2 at 17.

requirement that certification be decided '[a]t an early practicable time'; (3) judicial economy; and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery."[21] Each of these factors favor not bifurcating discovery in this case.

### 1. There is significant overlap between individual and class discovery.

The Supreme Court has made clear that class certification requires "a rigorous analysis" of Rule 23(a)'s prerequisites, and "[s]uch an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim."[22] "Class determination" will therefore "generally involve considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[23] Applying this well-established case law, courts in this district have rejected proposals to bifurcate discovery in class cases that involve an initial merits portion, and then discovery related to class certification issues.[24] These courts have explained that the "the distinction between merits discovery and class discovery 'is not always clear,' and '"[m]any courts are, for this reason, reluctant to bifurcate class and merits discovery.'"[25]

Here too there is significant overlap between the merits and class issues. The overlap includes the existence of common questions of law or fact, as well as predominance under Rule 23(a)(2) and (b)(3). Yardi makes no effort to argue that merits and class issues do not overlap. Indeed, Yardi appears to concede that the operation of Revenue IQ is a question of law and fact common to the class. This factor favors not bifurcating discovery.

---

[21] *Blair*, 2023 WL 6622415, at *6.

[22] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013).

[23] *Id.* at 34.

[24] *See, e.g*, *Blair*, 2023 WL 6622415, at *6 (rejecting proposal to bifurcate because, in part, there was overlap between the "class determination inquiry" and the "merits of [Plaintiff's] claims").

[25] *Id.* (quoting *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-MAT, 2020 WL 5759782, at *1 (W.D. Wash. Sept. 28, 2020)).

### 2. Yardi's proposal would unduly delay class certification.

FRCP 23(c)(1)(A) specifically directs district courts to determine whether an action should be certified as a class action "[a]t an early practicable time[.]"[26] As courts in this district have recognized, the Advisory Committee notes to the 2003 amendment note that a defendant "may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified" but caution against "'forcing an artificial and ultimately wasteful division between 'certification discovery' and 'merits discovery.'"[27]

Contrary to the instructions of FRCP 23, Yardi's proposal would significantly delay determination of class certification. Yardi claims that the initial phase of discovery would only take four months. But the dispositive motion practice that follows would then unfold over a period of months. Further, Yardi's proposal would prohibit *any* additional discovery until the Court issues an order on Yardi's contemplated dispositive motion. If the Court denied that motion, only then would Plaintiffs be able to begin discovery related to class certification. This would lead to significant delays in deciding whether the class should be certified. By contrast, Plaintiffs intend to propose in the upcoming case management statement a discovery schedule that would have a class certification motion presented to the Court within 12 months of an order denying phased discovery.

Courts have rejected similar requests for initial merits-based phases of 45-90 days before discovery into class certification occurs, because of the unacceptable additional delay it would create before a determination on class certification could be made.[28] The same concerns apply here. This factor favors denying the motion.

---

[26] *Blair*, 2023 WL 6622415, at *7.

[27] *Id.* (quoting Fed. R. Civ. P. 23(c), Advisory Committee Notes, 2003 Amendment).

[28] *True Health Chiropractic, Inc v. McKesson Corp.*, No. 13–CV–02219–JST, 2015 WL 273188, at *2 (N.D. Cal. Jan. 20, 2015) (explaining how a forty-five day initial period for merits discovery would significantly delay a decision on class certification).

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 7
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

### 3. Phased discovery would not promote judicial economy.

Courts repeatedly recognize that bifurcation rarely promotes judicial economy because it "poses a substantial risk of complicating this litigation with a slew of disputes" over whether discovery relates to one phase or another.[29]

Here, disputes are particularly likely because Yardi's own written discovery responses already make clear that it does intend to hold back numerous types of information from the first phase of discovery related to key elements of Plaintiffs' allegations, including (1) marketing materials that Yardi provided to customers about the workings of its software (i.e. the invitation that Yardi extended to users); (2) documents related to the rate at which landlord defendants accept recommendations; (3) communications between Yardi employees and landlord defendants related to the operation of Revenue IQ; (4) Yardi's analyses of the success at Revenue IQ in raising rents; and (5) documents related to the actual configurations that Revenue IQ users have selected.[30]

During subsequent meet and confers, Yardi has claimed that some documents related to these categories may be produced during the first phase because they also relate to the issues that Yardi has curated to be part of the proposed first phase.[31] But it is prejudicial to Plaintiffs to allow Yardi to be the sole arbiter of the materials that it produces in phase one, based on a responsiveness standard that it has carefully selected to favor itself.[32]

And, in any case, disputes will inevitably arise about whether materials relate to the working of Yardi's Revenue IQ software that Yardi claims should be the sole focus of phase one. For example, Yardi has repeatedly emphasized that users are able to select their own configurations of Revenue IQ to generate price recommendations, arguing that this undermines Plaintiffs' allegations. But Yardi is currently refusing to produce (in phase one) comprehensive information about what configurations

---

[29] *Blair*, 2023 WL 6622415, at *7.

[30] Ex. 3, at 2-3, 5-6 (Discovery Letter).

[31] *Id.*

[32] Remarkably, for certain categories of documents, Yardi stated during meet and confers that it would consider producing them only if Plaintiffs first agreed to phased discovery. This gamesmanship is a bad omen, and also shows the amorphous nature of Yardi's proposed phases.

that lessor defendants actually selected, and has instead proposed to produce only information about the potential configurations that were available to users.[33] But the configurations that users actually select (including the extent to which users select the same configuration) is obviously relevant to the question of how, in practice, Revenue IQ generates pricing outputs and whether concerted activity may be inferred from the configurations that are selected.

Similarly, during a meet and confer, Yardi stated that nothing about the frequency with which recommended rates are accepted should be part of the initial phase of discovery and Yardi has objected to producing any such materials.[34] Remarkably, at the same time, Yardi acknowledged on the meet and confer that it is standard practice for adjustments in the rate recommendations generated by Revenue IQ to be automatically incorporated into changes to the publicly advertised rates that lessor defendants post to potential defendants through Yardi's Rent Café program.[35] This admission is consistent with Plaintiffs' allegations that rate recommendations from Revenue IQ are accepted at very high rates—allegations that the Court credited in its Order, stating that "the lessor defendants intended to and, for the most part, did adhere to Yardi's pricing recommendations."[36] Discovery into this issue is obviously relevant, and clearly related to any inquiry into how the Revenue IQ product actually works.

These are just two examples of the innumerable set of potential disputes that will arise if phased discovery on only an ill-defined portion of merits issues is allowed. Indeed, it illustrates why Courts recognize that "[b]ifurcated discovery fails to promote judicial economy when it requires ongoing supervision of discovery."[37]

Even setting aside the two rounds of dispositive motion practice, Yardi's proposal also does not promote judicial economy because it is unclear what summary judgment practice would even follow the initial phase. This is because Plaintiffs' claims do not rise and fall on the extent to which

---

[33] Ex. 3, at 3 (Discovery Letter).

[34] *Id*. at 4.

[35] *Id*.

[36] MTD Order at 10.

[37] *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009).

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 9
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

confidential information from one horizontal competitor was directly used to provide pricing recommendations for other competitors. There are two reasons for this. *First*, Plaintiffs' separate claim in Count II of their complaint—for a set of vertical contractual agreements between Yardi and users of Yardi's product—does not rise or fall on whether confidential information was exchanged between competitors. *Second*, there is no legal requirement that, for Plaintiffs to prevail on their hub-and-spoke claim in this case, it is necessary for a third party like Yardi to facilitate the exchange of confidential information between competitors—instead, this fact has so far only been treated by this Court and others as relevant to whether an agreement between (or "concerted action" by) horizontal competitors can be plausibly *inferred* at the pleading stage. As discussed above, the Court has already recognized that there are numerous other factors from which an agreement could (or could not) be inferred—none of which would be the subject of discovery during Yardi's proposed initial phase.

It is a waste of judicial resources to ask the Court to make a summary adjudication on a factual issue that, on its own, is not dispositive of liability. Indeed, courts specifically recognize that bifurcation is inappropriate where the issues are "so intertwined that separating them would create confusion to the trier of fact."[38]

Therefore, although "bifurcation would be more convenient" for Yardi, "it would be less convenient for the court: bifurcation would only create an extra procedural complication and require the court to preside over multiple phases of the case."[39] Judicial economy strongly favors rejection of Yardi's proposal for phased discovery.

---

[38] *United States v. Boeing Co.*, No. C22-0485-JLR, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023).

[39] *Baker Colonial Life & Acc. Ins. Co.*, No. C14-0319JLR, 2014 WL 3850848, at *3 (W.D. Wash. Aug. 5, 2014).

**4.    Phased discovery would significantly prejudice Plaintiffs.**

Courts recognize, as a general matter, the significant prejudice to plaintiffs from phased discovery, such as the delay in reaching ultimate adjudication of the case.[40] Here, Plaintiffs would suffer multiple forms of prejudice, even apart from the delay of a determination on class certification.

First, as discussed in detail above, Yardi's proposal would force Plaintiffs to respond to dispositive motion practice on an abbreviated record that failed to include discovery into numerous key factual allegations that the Court relied upon in its motion to dismiss order.[41] To provide just a few examples, Yardi's proposal would either deny or significantly limit Plaintiffs' access to numerous types of directly relevant information during phase one (much of which is necessarily in the possession of the lessor defendants), including potential evidence that:

- confidential benchmarking information is a critical input that lessor defendants rely upon when adopting Yardi's pricing recommendations, i.e., lessor defendants rely on Yardi's pricing recommendations because they can *validate* them against confidential information that Yardi also provides;
- lessor defendants rely on Yardi's recommendations because they know these recommendations are based in part of confidential information that Yardi collects;
- lessor defendants engage in extensive direct communications about price that are then used as inputs into Yardi's revenue management software.

Second, Plaintiffs would be prejudiced by the vagueness of Yardi's proposal, which is unclear on key issues such as whether there will be expert reports during its proposed "phase one", and exactly what dispositive motion(s) it intends to file at the end of the phase. For example, Plaintiffs will potentially need to prepare expert reports, within a four-month period, before they know the subjects on which Yardi intends to move for summary judgment or adjudication after the conclusion of phase

---

[40] *See, e.g.*, *Baker*, 2014 WL 3850848, at *3 (rejecting bifurcation and noting that "any prejudice" to defendant is "outweighed by the prejudice that [plaintiff] could potentially suffer if the court were to follow [defendant's] suggestion to deviate from the ordinary course of litigation and address [defendant's] defenses first").

[41] Ex. 3 (Discovery Letter).

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 11
Case No. 2:23-cv-01391-RSL

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

one. This is very different from a usual case schedule, where the parties understand that there will be one round of dispositive motion practice, and that a single round of expert reports should address all the anticipated issues of material fact which may be a basis for summary judgment.

Third, pragmatically, Yardi's proposal, as well as its conduct to date, is designed to limit Plaintiffs in phase one to the discovery that has occurred in *Mach*—even though Plaintiffs' case is much broader[42] and contains numerous additional allegations that have not been part of discovery in *Mach* (such as Revenue IQ's provision of confidential benchmarking information to users). During meet and confers, Yardi has repeatedly stated that (1) it plans, at some point, to produce the materials produced to date in *Mach* in response to Plaintiffs' RFPs; and (2) Plaintiffs should review those materials before seeking to negotiate the parameters of additional productions that are responsive to Plaintiffs' RFPs here.[43] In practice, Plaintiffs will be significantly prejudiced by having to—within a proposed four-month period—review materials produced in another case, negotiate additional discovery that is responsive to Plaintiffs' requests after completing that review, undoubtedly fight over whether that material should be part of phase one, and then take the further discovery (such as depositions) that would be necessary to respond to Yardi's proposed dispositive motion practice. The prejudice is further heightened because Yardi has not, to date, produced any of the materials that it has produced in *Mach* even though (1) discovery has been open in this case since December 2024; (2) Plaintiffs have requested that Yardi produce the materials; (3) Yardi claims in the motion that it is able to quickly and efficiently produce the materials; and (4) the materials are obviously responsive to Plaintiffs' RFPs.[44] This inexplicable delay further hinders Plaintiffs' ability to efficiently conduct discovery under the phased schedule that Yardi has proposed.

By contrast, there would not be prejudice to Defendants from denying the motion because "Defendants do not ordinarily have a right to have discovery on their defenses before the plaintiff gets

---

[42] Plaintiffs' claims are nationwide and involve more than 40 defendants; the *Mach* Plaintiffs' claims are limited to California and involve less than 10 defendants.

[43] Ex. 3 at 4-6 (Discovery Letter).

[44] Ex. 3 at 6-7 (Discovery Letter).

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 12
Case No. 2:23-cv-01391-RSL

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

merits discovery."[45] As courts in this district recognize, "denying bifurcation would merely require" Defendants "to shoulder the ordinary burdens of litigation. This cannot fairly be called prejudice."[46]

### III.   CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion to phase discovery.

I certify that this memorandum contains 4,187 words, in compliance with the Local Civil Rules.

DATED: March 10, 2025

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: */s/ Steve W. Berman*
    Steve W. Berman (WSBA No. 12536)

By: */s/ Theodore Wojcik*
    Theodore Wojcik (WSBA No. 55553)

By: */s/ Stephanie A. Verdoia*
    Stephanie A. Verdoia (WSBA No. 58636)

By: */s/ Xiaoyi Fan*
    Xiaoyi Fan (WSBA No. 56703)

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com
Email: stephaniev@hbsslaw.com
Email: kellyf@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email: rios@hbsslaw.com

*Attorneys for Plaintiffs*

---

[45] *Baker*, 2014 WL 3850848, at *3.

[46] *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2025, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Steve W. Berman
Steve W. Berman

PLTFS' OPPOSITION TO DEFS' MOTION FOR PHASED DISCOVERY - 14
Case No. 2:23-cv-01391-RSL

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX