1

Hon. Robert S. Lasnik

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

8

## WESTERN DISTRICT OF WASHINGTON

## AT SEATTLE

9

10

*In Re* YARDI REVENUE MANAGEMENT
ANTITRUST LITIGATION

No. 2:23-cv-01391-RSL

11

12

MCKENNA DUFFY and MICHAEL BRETT,
individually and on behalf of all others similarly
situated,

**PLAINTIFFS' OPPOSITION TO
MOVING DEFENDANTS' MOTION TO
DISMISS BASED ON LACK OF
PERSONAL JURISDICTION**

13

14

Plaintiffs,

(Consolidated with Case Nos.
2:24-cv-01948; 2:24-cv-02053)

15

v.

16

YARDI SYSTEMS, INC., *et al.*,

17

Defendants.

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................2

III.   LEGAL STANDARD ........................................................................................3

IV.   ARGUMENT ......................................................................................................4

      A.     Section 12 of the Clayton Act confers nationwide personal jurisdiction over the Moving Defendants. .................................................4

      B.     The Moving Defendants are subject to personal jurisdiction in the relevant forum—the United States. .................................................6

           1.     The Moving Defendants are "at home" in the United States. ........................7

      C.     The Moving Defendants are subject to specific personal jurisdiction because of their forum-related activities in the nationwide multifamily housing market. .................................................7

           1.     Each Moving Defendant purposefully directed its participation in the conspiracy to the United States. .................................................8

           2.     Plaintiffs' claims arise out of Moving Defendants' forum-related activities. 12

      D.     Moving Defendants have not made a "compelling case" that it is unreasonable or unfair to litigate in Washington. .................................................12

V.     CONCLUSION ................................................................................................14

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS - i



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

## TABLE OF AUTHORITIES

2

Page(s)

CASES

3

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,

4

 368 F.3d 1174 (9th Cir. 2004) ................................................................................4

5

*American Needle, Inc. v. National Football League*,

6

 560 U.S. 183 (2010) ........................................................................................6

7

*BNSF Ry. Co. v. Tyrrell*,

 581 U.S. 402 (2017) ........................................................................................4

8

*Burger King Corp. v. Rudzewicz*,

9

 471 U.S. 462 (1985) ......................................................................................11

10

*Cal. Clippers, Inc. v. U.S. Soccer Football Ass'n*,

 314 F. Supp. 1057 (N.D. Cal. 1970) ........................................................................5

11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

12

 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014) ...........................................................9

13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,

 27 F. Supp. 3d 1002 (N.D. Cal. 2014) ......................................................................9

14

*In re Chicken Antitrust Litig.*,

15

 407 F. Supp. 1285 (N.D. Ga. 1975) ........................................................................5

16

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*,

17

 2019 WL 6735604 (N.D. Cal. Dec. 11, 2019) ..............................................4, 7, 9, 12

18

*D'Augusta v. Am. Petroleum Inst.*,

19

 117 F.4th 1094 (9th Cir. 2024) ..............................................................................5

20

*Dadbod Apparel LLC v. Hildawn Design LLC*,

 2025 WL 449278 (E.D. Cal. Feb. 10, 2025) .............................................................10

21

*Daimler AG v. Bauman*,

22

 571 U.S. 117 (2014) .....................................................................................6, 7

23

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,

 592 U.S. 351 (2021) ........................................................................................6

24

*FTC v. Americans for Fin. Reform*,

25

 720 F. App'x 380 (9th Cir. 2017) ............................................................................4

26

*Galope v. Deutsche Bank Nat'l Trust Co.*,

27

 2014 WL 8662645 (C.D. Cal. 2014) .....................................................................10

28

*In re German Auto. Mfrs. Antitrust Litig.*,
   392 F. Supp. 3d 1059 (9th Cir. 2019) ................................................................... 13

*Go-Video, Inc. v. Akai Elec. Co.*,
   885 F. 2d 1406 (9th Cir. 1989) .............................................................................. 6

*GovernmentGPT Inc. v. Axon Enter. Inc.*,
   2025 WL 743998 (D. Ariz. Mar. 7, 2025) ............................................................ 5

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
   2020 WL 5135816 (N.D. Cal. Aug. 31, 2020) ...................................................... 5

*Kowalski v. Integral Seafood LLC*,
   2007 WL 1376378 (D. Haw. May 4, 2007) ......................................................... 10

*Leanne C. Z. v. Comm'r of Soc. Sec.*,
   2025 WL 949344 (W.D. Wash. Mar. 28, 2025) .................................................. 12

*Learning Evolution, LLC v. CPG Catnet Inc.*,
   2022 WL 484999 (S.D. Cal. Feb. 16, 2022) .................................................... 9, 11

*McCarthy v. Intercontinental Exchange, Inc.*,
   2022 WL 4227247 (N.D. Cal. Sept. 13, 2022) ................................................. 5, 9

*McManus v. Tato*,
   184 F. Supp. 958 (S.D.N.Y. 1959) ....................................................................... 5

*Myers v. Bennett Law Offices*,
   238 F.3d 1068 (9th Cir. 2001) .............................................................................. 3

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2022 WL 3161673 (S.D. Cal. Aug. 8, 2022) ................................................. 10, 11

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2020 WL 2747115 (S.D. Cal. May 26, 2020) ..................................................... 10

*In re Packaged Seafood Prods. Antitrust Litig.*,
   338 F. Supp. 3d 1118 (S.D. Cal. 2018) ....................................................8, 9, 12, 13

*Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*,
   2019 WL 4058971 (W.D. Wash. Aug. 28, 2019) ................................................ 4

*S&W Forest Prods. Ltd. v. Shake*,
   2019 WL 3716457 (W.D. Wash. Aug. 7, 2019) ................................................... 5

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ......................................................................*passim*

*S.F. Comprehensive Tours, LLC v. Tripadvisor, LLC*,
   2021 WL 4394253 (D. Nev. Sept. 24, 2021) ....................................................... 5

*Shields v. Federation Internationale de Natation*,
   419 F. Supp. 3d 1188 (N.D. Cal. Dec. 16, 2019) ................................................................ 5, 9

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ................................................................................................ 11

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
   715 F.3d 716 (9th Cir. 2013) ..................................................................................... 8, 9, 11

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................................. 3

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ............................................................................................. 8

*Zango, Inc. v. Kaspersky Lab, Inc.*,
   568 F.3d 1169 (9th Cir. 2009) ...................................................................................... 12, 13

### STATUTES

15 U.S.C. § 22 .................................................................................................................................. 4

### OTHER AUTHORITIES

Fed. R. Civ. P. 4(k)(1)(A)................................................................................................................ 3

*United States v. Google LLC*,
   No. 1:20-cv-03010, ECF No. 1 (D.D.C. Compl. Filed Oct. 20, 2020) ................................ 6

*United States v. Google LLC*,
   No. 1:23-cv-00108, ECF No. 1 (E.D. Va. Compl. Filed Jan. 24, 2023) ............................... 6

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# I.    INTRODUCTION

Plaintiffs allege a coordinated and far-reaching price-fixing conspiracy in the United States rental housing market that affects millions of Americans. Plaintiffs have pled that Yardi Systems, Inc. ("Yardi") and the Landlord Defendants—including each of the Moving Defendants[1]—have conspired to artificially raise rents for multifamily housing across the country. At the center of this scheme is Yardi's RENTmaximizer software, which uses confidential data shared by landlords to algorithmically set rent prices not independently, but collectively, leading to higher rents nationwide. Far from operating independently, alongside their co-conspirators, each Moving Defendant has knowingly participated in a shared pricing system, contractually provided competitively sensitive data to Yardi, and benefited from the coordinated, supracompetitive pricing that RENTmaximizer produces.

Moving Defendants now seek to avoid liability for their participation in the conspiracy by asking this Court to make an unsupported exception to established antitrust practice. Specifically, they argue that this Court lacks personal jurisdiction over them under Section 12 of the Clayton Act, solely because, unlike other Defendants, they are organized as limited liability companies rather than corporations. But courts in this Circuit and beyond have long recognized that Section 12 can apply to all antitrust defendants, including LLCs, so long as they maintain minimum contacts with the United States—a standard that is indisputably met here.

Plaintiffs have alleged detailed facts showing that each Moving Defendant knowingly and actively participated in the nationwide conspiracy by sharing confidential rental data with Yardi, delegating price-setting authority to a shared algorithm, and reaping the benefits of supracompetitive rental pricing across the country. These Moving Defendants are not passive bystanders (managing over 500 properties in approximately 20 states); they are active and essential participants in a conspiracy that has distorted the U.S. rental market, and it is reasonable to assert personal jurisdiction over each in the United States. The motion to dismiss should be denied.

---

[1] The Moving Defendants include Banyan Realty Partners LLC, Envolve Communities, LLC, Grubb Properties, LLC, The Habitat Company LLC, LumaCorp LLC, McWhinney Property Management, LLC, Singh Management Co. LLC, Walton Communities, LLC, Woodward Management Partners, LLC, and Towne Properties Asset Management Company Ltd.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## II.    STATEMENT OF FACTS

Plaintiffs allege a nationwide conspiracy orchestrated by Yardi Systems, Inc. ("Yardi") in which Landlord Defendants—including each Moving Defendant—participate by sharing commercially sensitive data and delegating to Yardi's algorithmic software ("RENTmaximizer") responsibility for setting multifamily housing prices. Order Denying Defendants' Joint Motion to Dismiss, ECF No. 187 ("MTD Order"), at 7; Compl. ¶¶ 2, 15-16.[2] The Landlord Defendants effectively outsource the management of rental pricing from a landlord to Yardi itself, which then implements higher prices collectively across a group of landlords. Compl. ¶ 5. RENTmaximizer is marketed as a software that will "automate" lessors' "rental pricing process" and help "multifamily property managers maximize rental income" by "increasing . . . revenue by 3 to 6 percent." *Id.*; MTD Order at 10. This is touted as an effective way to "eliminat[e] rent rate guesswork and traditional sales devices such as concessions and specials." Compl. ¶¶ 5, 22, 99, 101; MTD Order at 7. Landlord Defendants therefore collectively adopted a coordinated pricing strategy implemented and enforced by Yardi's RENTmaximizer product. Compl. ¶ 20.

To facilitate the conspiracy, each Landlord Defendant signed a contract with Yardi and agreed to provide its data with the understanding that it will be shared with competitors. *Id.* ¶¶ 14-15, 119; MTD Order at 7. Further, Plaintiffs allege that Landlord Defendants provide information to Yardi Matrix—a commercial real estate intelligence source that provides "nationwide intelligence on markets, submarkets, competition, developments, rents, occupancy, and more"—through rent surveys that occur multiple times annually to collect current pricing information and more. Compl. ¶¶ 8, 12. This information is then entered into RENTmaximizer. *Id.* ¶ 12. Yardi advertises that ultimately each client will have "complete visibility" into their market, including economic trends and "performance benchmarking" "compared to the market, submarket, and competition" to factor into rent projections and calculations to "enhance revenue management strategy." *Id.* ¶¶ 8, 12, 146.

---

[2] All "Compl. ¶" citations herein refer to the Consolidated Class Action Complaint, ECF No. 226 (filed Mar. 5, 2025).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Finally, Landlord Defendants and Yardi appear to collectively monitor and enforce compliance with Yardi's automated pricing. Landlord Defendants have direct communications with their competitors regarding their pricing in furtherance of their conspiracy. *Id.* ¶¶ 28, 190. And Yardi provides its RENTmaximizer users with "dedicated revenue managers" who regularly meet and communicate with property managers regarding their pricing improvements advice to "maximize returns." *Id.* ¶ 111.

As a result of Landlord Defendants' exchange of competitive data and reliance on Yardi's algorithmic pricing determinations, rent for multifamily housing properties are higher not only among Landlord Defendants' properties, but among all RENTmaximizer users. *Id.* ¶¶ 5, 30, 150-155. A preliminary regression analysis finds that, in three large U.S. cities, rents were on average 6% higher for properties priced used RENTmaximizer. *Id.* ¶ 151; MTD Order at 7. Similarly, a nationwide analysis of the impact of RENTmaximizer performed by Yardi itself found that RENTmaximizer "saw rental rates over 2% above the market"—which Yardi deemed "significant statistical proof that RENTmaximizer produces consistently better results than the market." Compl. ¶¶ 152,155.

Plaintiffs allege these artificially high rental rates impact all Americans by raising the levels of unaffordability throughout the United States and in specific regional submarkets. *Id.* ¶¶ 201-218. The Moving Defendants alone operate in approximately 20 states and manage over 500 properties across the United States. *Id.* ¶¶ 47, 55, 61, 65, 67, 75, 78, 79, 80, 83.

## III.    LEGAL STANDARD

A district court may exercise personal jurisdiction over a defendant "if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirement of due process." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001); Fed. R. Civ. P. 4(k)(1)(A). Only if no statute confers jurisdiction, does the court apply the law of the state in which the district court sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 799 (9th Cir. 2004) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)).

To satisfy due process, the defendant must have "minimum contacts" with the territorial jurisdiction of a court that does not "offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

(1945)). The Ninth Circuit has held that the "relevant forum" that a "defendant must have minimum contacts in a suit brought under Section 12 of the Clayton Act is *the United States*, rather than a particular state." *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 2019 WL 6735604, at *7 (N.D. Cal. Dec. 11, 2019) (emphasis added) (quoting *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004)).[3]

## IV.    ARGUMENT

### A.    Section 12 of the Clayton Act confers nationwide personal jurisdiction over the Moving Defendants.

Section 12 of the Clayton Act expands service of process against corporate antitrust defendants nationwide. 15 U.S.C. § 22. The Supreme Court has recognized that "Congress' typical mode of providing for the exercise of personal jurisdiction has been to authorize service of process." *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 409 (2017) (using 15 U.S.C. § 22 as an example); *Action Embroidery*, 368 F.3d at 1177 ("A statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process."). Accordingly, the Ninth Circuit has held that Section 12 of the Clayton Act "provides for nationwide personal jurisdiction." *See Cont'l Auto. Sys.*, 2019 WL 6735604, at *6 (citing *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir. 1989)).

Here, Plaintiffs have sufficiently alleged a nationwide price fixing conspiracy and established the Moving Defendants' minimum contacts in the United States. They therefore appropriately ask this Court to confer personal jurisdiction over each Defendant. A plaintiff "need only make a prima facie showing of jurisdictional facts" to survive a motion to dismiss a complaint for lack of personal jurisdiction. *Schwarzenegger*, 374 F.3d at 800 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). Further, the uncontroverted allegations in the complaint "must be taken as true" and conflicts between the facts must be resolved in Plaintiffs' favor. *Id.*; *Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co.*, 2019 WL 4058971, at *1 (W.D. Wash. Aug. 28, 2019). The Moving Defendants have not contested any of Plaintiffs' key factual allegations—including each Defendant's contractual

---

[3] *Accord FTC v. Americans for Fin. Reform*, 720 F. App'x 380, 383 (9th Cir. 2017) (affirming the district court's finding that the FTC Act's nationwide service of process provision national contacts analysis was appropriate for El dorado Trailer Sales, LLC and E.T.S. Ventures, LLC).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

relationship to share confidential data with Yardi and the rise of rent prices in the multifamily housing market nationwide.

The Moving Defendants ignore this well-pled conspiracy and instead ask this Court to make a first-of-its kind decision in the Western District of Washington and hold that Congress did not intend Section 12 of the Clayton Act to include limited liability companies based on non-binding and distinguishable case law.[4] *See* Non-Resident LLC Defendants' Motion to Dismiss Based on Lack of Personal Jurisdiction, ECF No. 380 ("Mot."), at 19-20. Those arguments fail. First, in *D'Augusta v. American Petroleum Institute*, the Ninth Circuit recently stated that the district court erred "under our precedent" by dismissing a limited partnership when Section 12 of the Clayton Act granted personal jurisdiction over any corporate antitrust defendant with "minimum contacts with the nation." 117 F.4th 1094, 1100 n.1 (9th Cir. 2024). The Moving Defendants take a logical leap to assert that courts "routinely . . . strictly constru[e] the term 'corporation' to exclude LLCs from its scope." Mot. at 19-20. Even a quick search establishes this premise to be untrue. Rather, courts "routinely" interpret a variety of business organizations to be incorporated under the scope of Section 12.[5] The Supreme Court has itself recognized the importance of not letting the formal structure of entities prevent application

---

[4] Three cases cited by Moving Defendants were decided before limited liability companies were introduced in the United States. *See McManus v. Tato*, 184 F. Supp. 958, 959 (S.D.N.Y. 1959); *Cal. Clippers, Inc. v. U.S. Soccer Football Ass'n*, 314 F. Supp. 1057, 1061 (N.D. Cal. 1970); *In re Chicken Antitrust Litig*., 407 F. Supp. 1285, 1299 (N.D. Ga. 1975). More recent decisions cited by the Moving Defendants have continued to rely on these (or even older) outdated decisions or out-of-circuit decisions. *See S.F. Comprehensive Tours, LLC v. Tripadvisor, LLC*, 2021 WL 4394253, at *5 (D. Nev. Sept. 24, 2021); *GovernmentGPT Inc. v. Axon Enter. Inc*., 2025 WL 743998, at *6 (D. Ariz. Mar. 7, 2025).

[5] *See, e.g*., *McCarthy v. Intercontinental Exchange, Inc*., 2022 WL 4227247, at *2 (N.D. Cal. Sept. 13, 2022) (denying dismissal on personal jurisdiction grounds for multiple LLCs and a national association by finding minimum contacts met for United States defendants because each one was a United States *company* "operating in the United States"); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2020 WL 5135816, at *2 (N.D. Cal. Aug. 31, 2020) (finding the court had personal jurisdiction over a Hong Kong *limited company* based on its participation in a price-fixing conspiracy in the United States); *S&W Forest Prods. Ltd. v. Shake*, 2019 WL 3716457, at *3 (W.D. Wash. Aug. 7, 2019) (holding British Columbia limited companies are subject to the national contact analysis under Section 12); *Shields v. Federation Internationale de Natation*, 419 F. Supp. 3d 1188, 1202 (N.D. Cal. Dec. 16, 2019) (finding international federation subject to personal jurisdiction under Section 12 and that "[t]here is no dispute that the relevant forum for the Court's jurisdictional analysis in these antitrust actions is the United States as a whole, and not merely California").

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    of the antitrust statutes. *See American Needle, Inc. v. National Football League*, 560 U.S. 183, 193

2    (2010) (stating that the Sherman Act is "aimed at substance rather than form" and "substance, not

3    form, should determine whether a[n] . . . entity is capable of conspiring under § 1") (citation omitted).

4         Second, the Moving Defendants' position would go against decades of litigation in the Ninth

5    Circuit and ignore actions brought by the FTC and DOJ (1) entering judgments against LLCs in

6    violation of the Sherman Act and (2) alleging that jurisdiction and venue are proper for non-resident

7    LLCs under Section 12 of the Clayton Act. *See, e.g.*, *United States v. Google LLC*, No. 1:20-cv-03010,

8    ECF No. 1 (D.D.C. Compl. Filed Oct. 20, 2020); *United States v. Google LLC*, No. 1:23-cv-00108,

9    ECF No. 1 (E.D. Va. Compl. Filed Jan. 24, 2023).

10         Third, the Moving Defendants' position simply defies both common sense and the purpose of

11    the Clayton Act. Taken to its logical conclusion, any corporation could then avoid antitrust liability in

12    every federal court outside of its home district merely by converting to an LLC. This explicitly goes

13    against the statutory purpose of Section 12. *See Go-Video*, 885 F.2d at 1413 ("Looking to the text of

14    section 12, . . . the purpose of the Clayton Act . . . [is] designed to expand the reach of the antitrust

15    laws and make it easier for plaintiffs to sue for antitrust violations.").

16         Therefore, the Clayton Act establishes the United States as the relevant forum to analyze the

17    Moving Defendants' minimum contacts in an antitrust conspiracy. Plaintiffs have pleaded

18    uncontroverted facts to establish personal jurisdiction that comports with due process over the Moving

19    Defendants.

20    **B.    The Moving Defendants are subject to personal jurisdiction in the relevant forum—the United States.**

21         The Moving Defendants incorrectly attempt to narrow the jurisdictional analysis to a single

22    state. Mot. at 12-18. But, under the provisions of the Clayton Act, the Moving Defendants' contacts

23    with the United States are sufficient to establish general and specific jurisdiction in this Court. The

24    Constitution allows a court to exercise general or specific personal jurisdiction over defendants. *Ford*

25    *Motor Co. v. Mont. Eighth Jud. Dist. Ct*., 592 U.S. 351, 358 (2021). General jurisdiction over a

26    defendant applies when the defendant is "at home" in the relevant forum. *Daimler AG v. Bauman*, 571

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

U.S. 117, 137 (2014). General jurisdiction authorizes the court to hear any claim against it, regardless of the claim's connection to the forum where the court sits. *Ford Motor Co.*, 592 U.S. at 358.

### 1. The Moving Defendants are "at home" in the United States.

Each Moving Defendant has declared that it is incorporated and has its principal place of business in the United States, where it owns or manages multifamily housing.[6] The Supreme Court has held that the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (quoting Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L.Rev. 721, 735 (1988)) (alteration in original). District courts in this circuit have found these bases are sufficient to find general jurisdiction over non-resident LLCs as well. *See Cont'l Auto. Sys.*, 2019 WL 6735604, at *7 (finding general jurisdiction over defendants who were incorporated in the United States and maintained their principal place of business in the United States—including LLCs).

The Moving Defendants incorrectly cabin their analysis to whether or not they are "at home" in Washington. Mot. at 14-15. As explained above, the United States is the relevant forum to analyze minimum contacts for antitrust defendants served under Section 12 of the Clayton Act's nationwide service of process. Here, there is no disagreement over whether or not each Moving Defendant is at home in the United States. A representative for each Moving Defendant has declared their contacts are wholly within the United States, including their principal place of business and headquarters. Further, each Moving Defendant has attested to owning or managing physical properties within the United States, and several of them have attested that they operate properties in multiple states.[7]

### C. The Moving Defendants are subject to specific personal jurisdiction because of their forum-related activities in the nationwide multifamily housing market.

The Moving Defendants contend that only a Washington state jurisdictional analysis should be performed and therefore do not address the impact or intent of the alleged conspiracy (to which they

---

[6] LumaCorp, LLC is the only Moving Defendant that does not explicitly state its state of incorporation, but declares its principal place of business is in Texas.

[7] *See, e.g.*, ECF No. 380-2 at 2-3; ECF No. 380-4 at 2-3; ECF No. 380-5 at 3; ECF No. 380-7 at 1; ECF No. 380-7 at 3; ECF No. 380-8 at 2-3; ECF No. 380-9 at 2; ECF No. 390-11 at 2-3.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   each agreed and helped facilitate) on multifamily renters in the United States. But Plaintiffs allege a

2   *nationwide* conspiracy among Yardi and the Landlord Defendants, who share competitively sensitive

3   data and raise prices on multifamily housing throughout the United States, as well in specific regional

4   submarkets. Compl. ¶¶ 196, 201-218. Specific Jurisdiction is proper when the cause of action arises

5   out of the defendant's forum-related activities. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

6   *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). The Ninth Circuit has established a "three-part

7   test to analyze whether a party's 'minimum contacts' meet the due process standard for the exercise of

8   specific personal jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741-

9   42 (9th Cir. 2013). Plaintiffs must show that the non-resident defendant "purposefully direct[ed] his

10  activities or consummate[d] some transactions with the forum or resident thereof" and that the "claim

11  must be one which arises out of or relates to the defendant's forum-related activities." *Id.* at 741-42

12  (citing *Schwarzenegger*, 374 F.3d at 802). Once Plaintiffs make this showing, the burden shifts to the

13  defendant to make a compelling case that an exercise of personal jurisdiction over defendant is not

14  reasonable. *See* Section IV.D., *infra*.

> **1.    Each Moving Defendant purposefully directed its participation in the conspiracy to the United States.**

15
16          When determining whether a defendant purposefully directed activities or transactions toward

17  the relevant forum state, the Ninth Circuit looks for: (1) a committed intentional act, (2) expressly

18  aimed at the forum state, and (3) that causes harm the defendant knows is likely to be suffered in the

19  forum state. *Schwarzenegger*, 374 F.3d at 803. "An antitrust defendant expressly aims an intentional

20  act at a forum state when its allegedly anticompetitive behavior is targeted at a resident of the forum

21  state, or at the forum itself." *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118,

22  1158 (S.D. Cal. 2018) (citing *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743

23  (9th Cir. 2013)).

24          Moving Defendants state that Plaintiffs cannot possibly meet the purposeful direction test

25  because a nationwide antitrust conspiracy is insufficient to establish an intentional act expressly aimed

26  at Washington. Mot. at 17. Again, this ignores the United States as the relevant forum for actions

27  brought under Section 12 of the Clayton Act—indicated by the multitude of cases that have established

28

1    personal jurisdiction in the United States based on defendants' (including LLCs') participation in

2    antitrust conspiracies.[8]

3        For example, courts have held that antitrust defendants—including LLPs—acted intentionally

4    when plaintiffs alleged defendants were "receiving information, monitoring [] projects, corresponding

5    with [co-conspirator] executives, investors, and competitors, and exchanging confidential

6    information." *In re Packaged Seafood*, 338 F. Supp. 3d at 1157. Courts have even held that simply

7    entering into a joint-venture agreement to restrain trade is sufficient to allege an intentional act. *See*

8    *Learning Evolution, LLC v. CPG Catnet Inc.*, 2022 WL 484999, at *4 (S.D. Cal. Feb. 16, 2022).

9    Specific jurisdiction has been established for defendants nationwide when defendants coordinated

10   pricing decisions in relation to United States market conditions, discussed prices in United States

11   dollars, and shared marketing information related to United States customers. *In re Cathode Ray Tube*

12   *(CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002 (N.D. Cal. 2014); *see also In re W. States*, 715 F.3d at 743-

13   44 (finding specific personal jurisdiction over entities that made agreements "which tended to advance

14   or control the market prices" and made "strategic marketing policies and decisions . . . that affected

15   the market prices").

16       Here, Plaintiffs not only allege an explicit contract between each Moving Defendant and Yardi

17   to facilitate a conspiracy in the United States multifamily housing rental market, Compl. ¶ 15, but also

18   make multiple well-pled allegations that each Landlord Defendant received confidential information

19   from co-conspirators, provided confidential information to co-conspirators, and monitored the

20   facilitation of the conspiracy with Yardi and other Defendants, through RENTmaximizer, Yardi

21   Matrix, and revenue managers, to artificially raise prices of multifamily properties in the market—

22   *nationwide*. Compl. ¶¶ 11, 12, 14-17, 19.

23       This is factually distinct from the cases relied on by Moving Defendants. *See Learning*

24   *Evolution, LLC*, 2022 WL 484999, at *4 (stating the "only link" between the defendant and the forum

25

26   _____

     [8] *See Cont'l Auto. Sys.*, 2019 WL 6735604, at *6; *In re Cathode Ray Tube (CRT) Antitrust Litig.*,
     2014 WL 1091589, at *6 (N.D. Cal. Mar. 13, 2014); *McCarthy*, 2022 WL 4227247, at *2 (denying

27   dismissal on personal jurisdiction grounds for multiple LLCs and a national association by finding
     minimum contacts is met for United States defendants because each one was a United States *company*

28   "operating in the United States"); *Shields*, 419 F. Supp. 3d at 1202.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1    was the plaintiff); *Galope v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 8662645, at *3 (C.D. Cal. 2014)

2    (finding "no allegation" that defendant aimed any conduct at the forum); *In re Packaged Seafood*

3    *Prods. Antitrust Litig.*, 2020 WL 2747115, at *5 (S.D. Cal. May 26, 2020) (stating plaintiff "failed to

4    allege any contacts" the defendants created with the forum); *see also In re Packaged Seafood Prods.*

5    *Antitrust Litig.*, 2022 WL 3161673, at *1 (S.D. Cal. Aug. 8, 2022) (finding existence of personal

6    jurisdiction on motion for reconsideration and denying motion for summary judgment based on lack

7    of personal jurisdiction).

8            The Moving Defendants try to frame Plaintiffs' allegations as, at most, "mere knowledge" that

9    pricing strategies would impact residents in Washington.[9] Mot. at 18. But Moving Defendants ignore

10   Plaintiffs' substantive well-pled allegations (which must be taken as true) that exhibit more than "mere

11   knowledge" of "pricing strategies" that may impact renters in Washington. Yardi's own marketing

12   materials make this exceedingly clear, touting that Yardi users will be able to "beat the market by a

13   minimum of 2%" when they allow Yardi to "manage [their] pricing." Compl. ¶ 6. To do so, Landlord

14   Defendants contractually agree to share pricing and occupancy data with Yardi, and receive price

15   recommendations that incorporates competitor data in return. Compl. ¶¶ 14-15. This, combined with

16   routine market surveys incorporated into the Yardi Matrix, provides "national intelligence" to

17   Landlord Defendants and allows each to prioritize coordinated pricing over occupancy or

18   concessions—impacting the entire nationwide multifamily housing market. Compl. ¶¶ 12, 16, 117-

19   118. The intended affect was to raise rental prices nationwide—and Plaintiffs have well-pled

20   allegations regarding a preliminary economic analysis showing this impact on rental prices in

21   communities across the country. Compl. ¶ 151.

22

23   _____

24        [9] To do so, they rely on dissimilar cases—none of which alleged exchanges of confidential pricing
     information or a nationwide price fixing conspiracy—and where courts found plaintiffs had "no
25   allegations," or merely conclusory allegations, of wrongful conduct related to the forum. *See, e.g.,*
     *Dadbod Apparel LLC v. Hildawn Design LLC*, 2025 WL 449278, at *4 (E.D. Cal. Feb. 10, 2025)
26   (finding "two paragraphs" that "constitute[d] the bulk of the new allegations supporting personal
     jurisdiction" were based on information and belief and therefore insufficient to establish personal
27   jurisdiction); *Kowalski v. Integral Seafood LLC*, 2007 WL 1376378, at *3 (D. Haw. May 4, 2007)
     (patient infringement action providing no new facts showing "any" actions by defendant that "caused
28   effects in the forum").

The Ninth Circuit has held that when allegations go beyond a "mere foreseeable effect" and instead allege acts that "intended to have" an effect, it is sufficient to constitute express aiming. *See In re W. States*, 715 F.3d at 744. For example, the Ninth Circuit found that allegations that "officers or directors made agreements 'which tended to advance or control the market price of natural gas that its affiliates sold in the United States or in Wisconsin'" and "made 'strategic marketing policies' and decisions to report prices to natural gas price indices 'that affected the market prices of natural gas'" was sufficient to establish jurisdiction. *Id*. at 744. Therefore, Plaintiffs' allegations that each Landlord Defendant agreed to a coordinated pricing strategy and reported pricing information to competitors and Yardi is sufficient.

Moving Defendants also attempt to redirect the Court to their lack of properties or mailing addresses in Washington, but the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) ("a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence . . . .").

Finally, Moving Defendants rely on two cases where the Court ultimately acknowledged broader application of personal jurisdiction under a conspiracy theory of jurisdiction. *In re Packaged Seafood*, 2022 WL 3161673, at *2 ("In this case, there is no dispute about the existence of a conspiracy, no dispute about [defendant's] participation in the conspiracy, and no dispute that [d]efendants sold millions of dollars in tuna in Kansas . . . . [Defendant] is subject to personal jurisdiction in Kansas under the conspiracy theory of jurisdiction."); *Learning Evolution, LLC*, 2022 WL 484999, at *4.

Recognizing the unique nature of conspiracies, the Ninth Circuit has previously stated that a district court may exercise jurisdiction "where substantial acts in furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that the acts would be performed in the forum state." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995) (citation omitted). Here, the Moving Defendants have not disputed the existence of the conspiracy, or their participation in it as alleged by Plaintiffs. Each Landlord Defendant was effectively put on notice that acts in furtherance of the conspiracy would be performed in every state where multifamily housing is available for rent when they signed the contract agreeing to share their data as it is "necessary to

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Yardi's provision of the Services" and the services are based on physical rental properties pricing nationwide. Compl. ¶¶ 12, 14, 30, 97.

To the extent the Court does not find the Moving Defendants are subject to general or specific jurisdiction in the United States, conspiracy jurisdiction is applicable in this instance.

**2.    Plaintiffs' claims arise out of Moving Defendants' forum-related activities.**

The final factor to prove purposeful direction is to prove the "claim arises out of" defendants' forum related activities. *Schwarzenegger*, 374 F.3d at 802. This is determined using the "but for test," which "requires 'some nexus between the cause of action and the defendant's activities in the forum.'" *In re Packaged Seafood*, 338 F. Supp. 3d at 1161 (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 387 (9th Cir. 1988), *overruled on other grounds*, 499 U.S. 585 (1991)). In federal antitrust cases, the "but for test can be met by establishing the plaintiffs paid artificially high prices for the relevant products as a result of the defendant's activities." *Id.* (citing *In re CRT*, 27 F. Supp. 3d at 1013).

Plaintiffs have adequately pled that renters pay artificially higher prices to rent multifamily housing across the country as a result of Yardi and Landlord Defendants conspiring to share pricing and other competitively sensitive data. The Moving Defendants do not address this element and therefore have waived any argument that Plaintiffs have failed to sufficiently allege whether or not the "claim arises out of" Defendants' forum related activities. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("[A]rguments not raised by a party in an opening brief are waived."); *Leanne C. Z. v. Comm'r of Soc. Sec.*, 2025 WL 949344, at *3 (W.D. Wash. Mar. 28, 2025).

**D.    Moving Defendants have not made a "compelling case" that it is unreasonable or unfair to litigate in Washington.**

The Moving Defendants have provided no evidence that the exercise of personal jurisdiction in Washington would be unreasonable. Specific jurisdiction is "presumptively reasonable" if plaintiffs establish purposeful direction of defendants' activities to the forum and that the claim arises out of or relates to the activities. *Cont'l Auto. Sys.*, 2019 WL 6735604, at *8 (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)). Defendants have not provided a case, much less a "compelling" one, establishing "that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King*, 471 U.S. at 476-78).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

To assess reasonableness, a court must weigh seven factors: (1) the extent of the defendant's purposeful interjection in the forum; (2) the burden on the defendant; (3) the extent of any conflict with the sovereignty of the defendant's domicile; (4) the forum state's interest in adjudicating the dispute; (5) the efficient resolution of the dispute; (6) the convenience and effectiveness of the plaintiff's relief; and (7) the existence of an alternative forum. *In re Packaged Seafood*, 338 F. Supp. 3d at 1162 (citing *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1198-99 (9th Cir. 1988)).

The Moving Defendants have made no attempt to argue that jurisdiction in Washington would be unreasonable and have thus waived any such argument. *See Zango*, 568 F.3d at 1177 n.8 ("[A]rguments not raised by a party in an opening brief are waived."). Even if they had addressed it, the factors weigh in favor of Washington for numerous reasons, including: the lack of burden on the Defendants to litigate in Washington; the lack of conflict with each Defendant's domicile; the efficient resolution of the dispute; and the convenience and effectiveness of Plaintiffs' relief.

In particular, the Moving Defendants have only confirmed that significant inefficiencies would result were the Court to grant their motion—as it would require that Plaintiffs file multiple actions arising from the same set of facts in various states across the country. This is the problem Congress attempted to avoid by implementing nationwide service of process under the Clayton Act. It would also rewind the progress made so far by the voluntary coordination Plaintiffs engaged in to consolidate and transfer the previous competing actions to this Court. This efficiency was recognized by Judge Michelle Williams prior to transferring the *Frank* action under the first to file rule.[10]

Courts in the Ninth Circuit have found arguments related to burden or inconvenience insufficient to "overcome clear justifications for the exercise of jurisdiction" unless they are "so great as to constitute a deprivation of due process." *See In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1068 (9th Cir. 2019) (quoting *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1481 (9th Cir. 1986) (finding personal jurisdiction reasonable even when hundreds of defendants' employees were located in Germany)).

---

[10] Order Granting Intervenors' Motion to Intervene and to Transfer, *Frank v. Yardi Systems Inc.*, No. 8:24-cv-00617-MWC-KES, ECF No. 180 (C.D. Cal.).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1      It is therefore undisputed that it is reasonable to assert personal jurisdiction over each Moving

2  Defendant and thereby comport with due process.

3                                    **V.      CONCLUSION**

4      For the foregoing reasons, Plaintiffs respectfully request this Court deny Moving Defendants'

5  motion to dismiss for lack of personal jurisdiction.

6  DATED this 19th day of May, 2025.          Respectfully submitted,

7                                             HAGENS BERMAN SOBOL SHAPIRO LLP

8                                             */s/ Steve W. Berman*
                                             Steve W. Berman (WSBA No. 12536)
9
                                             */s/ Theodore Wojcik*
10                                            Theodore Wojcik (WSBA No. 55553)

11                                            */s/ Stephanie A. Verdoia*
12                                            Stephanie A. Verdoia (WSBA No. 58636)

13                                            */s/ Xiaoyi Fan*
14                                            Xiaoyi Fan (WSBA No. 56703)

15                                            1301 Second Avenue, Suite 2000
                                             Seattle, WA 98101
16                                            Telephone: (206) 623-7292
                                             Facsimile:  (206) 623-0594
17                                            Email: steve@hbsslaw.com
                                             Email: tedw@hbsslaw.com
18                                            Email: stephaniev@hbsslaw.com
19                                            Email: kellyf@hbsslaw.com

20                                            Rio S. Pierce (*pro hac vice*)
                                             HAGENS BERMAN SOBOL SHAPIRO LLP
21                                            715 Hearst Avenue, Suite 300
22                                            Berkeley, CA 94710
                                             Telephone: (510) 725-3000
23                                            Facsimile:  (510) 725-3001
                                             Email: rios@hbsslaw.com
24
25                                            *Attorneys for Plaintiffs*

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS - 14

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2          I certify that this memorandum contains 5,251 words, in compliance with the Local Civil Rules.

3

DATED: May 19, 2025                    */s/ Steve W. Berman*
4                                                    Steve W. Berman

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS - 15

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX