Hon. Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| *In Re YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION* | No. 2:23-cv-01391-RSL |
| WYLIE DUFFY, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., *et al.*,<br><br>Defendants. | **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH FPI MANAGEMENT, INC.**<br><br>NOTE ON MOTION CALENDAR: October 17, 2025<br><br>(Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053) |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT WITH FPI MANAGEMENT, INC.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. BACKGROUND .........................................................................................................1

    A. Settlement Negotiations ...................................................................................2

    B. The Settlement Consideration and Release of Claims .....................................3

        1. Monetary Relief ....................................................................................3

        2. Injunctive Relief and Cooperation in the Consolidated Federal Actions ...................................................................................3

        3. Settlement Release ...............................................................................4

    C. Settlement Administration ................................................................................4

        1. Plan of Allocation and Notice and Implementation of Settlement ............................................................................................4

III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................5

    A. Legal Standard .................................................................................................5

    B. The Settlement Is Fair, Reasonable, and Adequate .........................................7

        1. The Settlement Resulted from Extensive Arm's-Length Negotiations .........................................................................................7

        2. The Settlement Represents Substantial Relief for the Class .......................7

        3. The Settlement Avoids Additional Litigation Costs and Risks ....................................................................................................7

        4. Counsel Are Experienced Litigators .........................................................8

        5. Counsel May Request Reasonable Attorneys' Fees and Reimbursement of Costs ..............................................................................8

        6. Plaintiffs May Request Reasonable Service Awards for Named Plaintiffs .......................................................................................8

    C. The Settlement Class Merits Certification .......................................................8

        1. Rule 23(a)(1): The Settlement Class Is Sufficiently Numerous ...............................................................................................8

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT WITH FPI MANAGEMENT, INC. – i

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

        2.     Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class ................................................................................... 9

        3.     Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of the Class ...................................................................................................... 9

        4.     Rules 23(a)(4): Plaintiffs Will Fairly Represent the Interests of the Class ................................................................................. 10

        5.     Rule 23(b)(3): Common Questions of Fact or Law Predominate ............................................................................................... 10

        6.     Rule 23(b)(3): A Class Action is the Superior Method for Resolving this Litigation .................................................................. 11

   D.    A Proposed Notice Program Would Satisfy Rule 23 and Deferring Formal Notice Is Appropriate ................................................................. 11

   E.    The Court Should Appoint Interim Lead Class Counsel as Settlement Counsel ........................................................................................ 12

IV.   CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Albert v. Glob. Tel\*Link Corp.*,
 2024 WL 4644631 (D. Md. Oct. 31, 2024) ..........................................................................11

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ..............................................................................................................6

*Chetwood v. T-Mobile USA, Inc.*,
 2021 WL 2206481 (W.D. Wash. June 1, 2021)........................................................ 5, 6, 7, 8

*Dennis v. Amerigroup Washington, Inc.*,
 2020 WL 6701328 (W.D. Wash. Nov. 13, 2020) ..................................................................8

*Does 1-10 v. Univ. of Washington*,
 326 F.R.D. 669 (W.D. Wash. 2018) .....................................................................................9

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
 2015 WL 9952596 (S.D.N.Y. Dec. 15, 2015) .....................................................................12

*Franklin v. Kaypro Corp.*,
 884 F.2d 1222 (9th Cir. 1989) ..............................................................................................7

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ..............................................................................................5

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,
 268 F.R.D. 670 (W.D. Wash. 2010) .....................................................................................6

*In re Metro. Sec. Litig.*,
 2010 WL 11474608 (E.D. Wash. Feb. 12, 2010) ...............................................................12

*Pitman v. Brinker Int'l, Inc.*,
 216 F.R.D. 481 (D. Ariz. 2003) ............................................................................................7

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ..................................................................................... 5, 6, 8, 9

*Subspace Omega, LLC v. Amazon Web Servs., Inc.*,
 2024 WL 4451404 (W.D. Wash. Oct. 9, 2024) ...................................................................11

*In re Valve Antitrust Litig.*,
 780 F. Supp. 3d 1110 (W.D. Wash. 2024) ......................................................................6, 10

### STATUTES

15 U.S.C. § 1..................................................................................................................................1

Case 2:23-cv-01391-RSL    Document 458    Filed 09/26/25    Page 5 of 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1) ...................................................................................................................5

Fed. R. Civ. P. 23(a)(1-4) ................................................................................................................5

Fed. R. Civ. P. 23(a)(2) ...................................................................................................................6

Fed. R. Civ. P. 23(a)(3) ...................................................................................................................6

Fed. R. Civ. P. 23(a)(4) ...................................................................................................................6

## I. PRELIMINARY STATEMENT

Plaintiffs move for preliminary approval of their settlement agreement with Defendant FPI Management, Inc. Plaintiffs also move for the conditional certification of a class solely for settlement purposes ("Settlement Class") with FPI and request appointment of Hagens Berman Sobol Shapiro LLP as Settlement Class Counsel.

Plaintiffs and FPI have entered into a settlement agreement ("Settlement"). The Settlement provides significant monetary, injunctive, and other relief from FPI for the proposed Settlement Class. *See* ECF No. 226 ¶¶ A-G. This is in addition to avoiding further litigation expenses. First, FPI agrees to provide $2,800,000 for a Settlement Fund. All costs of settlement will come from the Settlement Fund. The Settlement allows Settlement Counsel (if appointed as such) to submit plans for notice of the Settlement and distribution of the Settlement Fund after preliminary approval, subject to subsequent Court approval. Second, FPI agrees to refrain from the alleged conduct linked to Plaintiffs' injuries in the Complaint. ECF No. 226 ¶¶ 228-258. Finally, FPI also agrees to provide reasonable evidentiary cooperation to Plaintiffs in the prosecution of their claims against the non-FPI Defendants in the continuing Consolidated Federal Actions.

In exchange, Plaintiffs and the Settlement Class agree to a release of their claims against FPI. This Settlement and waiver of claims is only between Plaintiffs and FPI; the Consolidated Federal Actions will continue against non-FPI Defendants unless Plaintiffs separately settle with any of them.

## II. BACKGROUND

On September 8, 2023, Plaintiffs filed their initial Class Action Complaint against Defendant Yardi Systems, Inc., co-conspirator landlord defendants, and other then-unknown defendants who used Yardi software or were otherwise co-conspirators. ECF No. 1. Yardi offers property management services and software that use client-entered and residential market data to issue rent pricing recommendations for users. ECF No. 226 ¶¶ 4-31. Plaintiffs alleged that Yardi conspired with landlord defendants to use Yardi software in a price-fixing scheme to supracompetitively raise rents in multifamily residential units in violation of 15 U.S.C. § 1. *Id.* ¶¶ 228-258. FPI, a California corporation, is a multifamily property manager and owner of over 165,000 rental units throughout 23 states. *Id.* ¶ 56. During at least part of the proposed class period, FPI was one of Yardi's clients

1  and used its revenue management software. *Id.*

2  Plaintiffs alleged that the rent price-fixing scheme took place from 2011 onwards, bringing the case on behalf of themselves and a class of all persons who leased multifamily residential real estate units directly from a defendant or co-conspirator from September 8, 2019, to the present. *Id.* ¶¶ 1, 228-258. For their alleged injuries, Plaintiffs requested treble damages representing the increased rents paid and injunctive relief restraining Defendants from engaging in the alleged price-fixing behavior. *Id.* ¶¶ A-G.

On December 15, 2023, Defendants filed a joint motion to dismiss the First Amended Complaint. ECF No. 138. On December 4, 2024, the Court denied Defendants' joint motion to dismiss. ECF No. 187.

While the joint motion to dismiss and others filed in the interim were pending, the Court granted Plaintiffs' motion to compel discovery. ECF No. 164. Discovery has continued to the present.

On March 28, 2024, the Court granted Plaintiffs' motion to appoint Hagens Berman Sobol Shapiro LLP as interim lead class counsel. ECF No. 158.

**A.    Settlement Negotiations**

The Parties began settlement negotiations in October 2024. At that point, interim lead class counsel had identified FPI as a potential defendant in a consolidated complaint that Plaintiffs anticipated filing after the Court ruled on the initial motions to dismiss.[1] *See* ECF No. 226 ¶ 56 (filed thereafter). To aid settlement negotiations, FPI provided Plaintiffs with financial and other relevant information. Berman Decl. ¶ 3. The Parties subsequently held an all-day mediation led by an experienced mediator from PhillipsADR, Greg Lindstrom. *Id.* The Parties signed a term sheet on November 13, 2024. *Id.* Plaintiffs carefully analyzed this information and relied on it in negotiating terms that were financially feasible and reflected FPI's business model and its share of a preliminary estimate of the total volume of multifamily residential leasing commerce. *Id.* After subsequent negotiations, the Parties finalized their settlement agreement on March 27, 2025. *Id.*; Ex. A.

---

[1] FPI was also named as a defendant is the later filed actions that this Court consolidated with *Duffy*. *See* ECF No. 201.

**B.     The Settlement Consideration and Release of Claims**

The proposed Settlement provides monetary and injunctive relief—as well as cooperation with Plaintiffs in the continuing Consolidated Federal Actions—in exchange for a release of claims.

**1.     Monetary Relief**

FPI has agreed to a Settlement Amount of $2,800,000 ("Settlement Fund"). All costs of settlement will come from the Settlement Fund, subject to any necessary court approval. This includes all payments to class members, attorneys' fees and costs, the costs of settlement administration, up to $250,000 for settlement notice costs, and any service awards to Named Plaintiffs. This is not a claims-made settlement—no portion of the funds will revert to FPI.

The Settlement Fund will be held in a special interest-bearing settlement escrow account or accounts. The full amount will be deposited by FPI no later than July 31, 2027. Unless the Settlement does not become effective, Settlement Class Counsel is solely responsible for any tax filings relating to the Settlement Fund and for paying taxes on income earned by the Settlement Fund.

**2.     Injunctive Relief and Cooperation in the Consolidated Federal Actions**

FPI has also agreed to important injunctive relief for three years following final approval of the Settlement and non-appealable dismissal of the Consolidated Federal Actions against FPI ("Effective Date").

First, FPI will not promote the use of particular revenue management software among other managers of multifamily residential apartments or with owners of multifamily residential apartments that are not managed by FPI ("Managers or Owners"), except promoting to current and prospective clients.

Second, FPI will not license or use revenue management software if that software requires FPI to accept recommended prices with any particular frequency.

Third, FPI will not license or use revenue management software without written confirmation from the software vendor that (i) non-public, confidential information that the software obtains from a Manager, Owner, or FPI will not be used in any way when recommending prices for leases to another Manager, Owner, or FPI (if that information was not first obtained from that same party); or (ii) the prices recommended for leases to FPI or another Manager or Owner, including in aggregated

and anonymized form, will not be disclosed to another Manager, Owner, or FPI (if that information was not first obtained from that same party).

Fourth, if FPI licenses or uses third-party revenue management software, FPI will not permit any functionality to be enabled that would automatically accept or adopt recommendations provided by that software.

Fifth, FPI will adopt a written policy prohibiting employees from communicating to other Managers or Owners non-public, confidential information about FPI's rental prices, concessions, or discounts.

FPI will implement these practice changes no later than three months after the Effective Date, subject to modification by Settlement Class Counsel or the Court based upon changed circumstances.

Additionally, within a reasonable time after receiving a request from Settlement Class Counsel, FPI agrees to provide various forms of cooperation in the Federal Consolidated Class Actions against Non-FPI Defendants. This cooperation includes production of documents, data, responses to interrogatories, deponent and trial witnesses, help authenticating documents, and more. These obligations do not include the production of privileged information.

**3.     Settlement Release**

In exchange for the agreed-upon monetary and injunctive relief from FPI, Plaintiffs and the Settlement Class agree to release all federal or state law claims they may have, or may acquire, (1) brought in the Consolidated Federal Actions or (2) arising out of or relating to the factual predicate of any of the Actions, against FPI and its parents and subsidiaries. The Settlement does not release any claims or potential claims against property owners that retained FPI to perform management services. This settlement also does not release any claims or potential claims against non-FPI Defendants in the Consolidated Federal Actions.

**C.     Settlement Administration**

**1.     Plan of Allocation and Notice and Implementation of Settlement**

Should the Court grant preliminary approval of the Settlement, Settlement Class Counsel may apply to the Court for reasonable attorneys' fees and costs and service awards for Named Plaintiffs. Settlement Class Counsel will also propose a class notice plan and a plan of allocation for the

distribution of the Settlement Fund to Settlement Class members. Both plans will be subject to Court approval. The Parties both have the right to audit amounts paid from the Settlement Fund.

Additionally, should preliminary approval be granted, Settlement Class Counsel may wait to move for final approval to combine notice with other potential settlements in the Consolidated Federal Actions. Accordingly, the Plaintiffs also request that the Court defer formal notice to the Settlement Class.

### III. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

**A.  Legal Standard**

Preliminary approval of a settlement agreement and certification of a class for settlement purposes are both governed by Federal Rule of Civil Procedure 23.

Preliminary approval of a settlement agreement is appropriate if the agreement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); Fed. R. Civ. P. 23(e). To determine this, courts balance "the strength of the [plaintiffs' allegations and defendants' defenses], the [costs] of further litigation; the risk of obtaining and/or maintaining class and collective action status throughout the litigation; the extent of discovery completed and stage of the proceedings; the experience and views of counsel; … and the amount offered in settlement of the claims." *Chetwood v. T-Mobile USA, Inc.*, 2021 WL 2206481, at *2 (W.D. Wash. June 1, 2021) (citing *Hanlon*, 150 F.3d at 1026). Additionally, courts look to the agreement's negotiation process. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). The presence of "arms-length negotiations" and "the assistance of an experienced mediator in the settlement process" strongly weigh against collusion and support approval. *Chetwood*, 2021 WL 2206481, at *2; *Staton*, 327 F.3d at 963.

In turn, class certification is appropriate if the requirements of numerosity, commonality, typicality, and adequacy of representation are met. Fed. R. Civ. P. 23(a)(1-4); *Staton*, 327 F.3d at 953. Rule 23(b)(3) describes additional requirements for certifying a Rule 23(b)(3) class.

For numerosity, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, courts will find that the numerosity requirement has been

satisfied when the class compromises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 674 (W.D. Wash. 2010) (compiling authority).

For commonality, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, "class members' claims [must] depend upon a common contention such that determination of [that contention] will resolve an issue that is central to the validity of each claim." *In re Valve Antitrust Litig.*, 780 F. Supp. 3d 1110, 1126 (W.D. Wash. 2024). Either "the existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" is sufficient. *Staton*, 327 F.3d at 953.

For typicality, "the claims or defenses of the representative part[ies]" must be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957; Fed. R. Civ. P. 23(a)(3).

For adequacy of representation, "the representative parties [must] fairly and adequately protect the interests of the class." *Id.*; Fed. R. Civ. P. 23(a)(4). Here, courts look for a lack of conflicts of interest with class members and for vigorous prosecution on behalf of the class. *See Staton*, 327 F.3d at 957-58.

Finally, for a Rule 23(b)(3) class to be certified, the Court must find that "questions of law and fact common to the Settlement Class Members predominate over individual questions; and … a class action is superior to the other available methods for an efficient resolution of this controversy in the context of settlement." *Chetwood*, 2021 WL 2206481, at *1; Fed. R. Civ. P. 23(b)(3).

Presuming that common factual or legal questions are present, Rule 23(b)(3)'s predominance requirement holds that the common questions must "present a significant aspect of the case and [be able to be] resolved for all members of the class in a single adjudication." *In re Valve*, 780 F. Supp. 3d at 1126.

On the other hand, Rule 23(b)(3)'s superiority requirement is met if the settlement will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997); Fed. R. Civ. P. 23(b)(3).

B.   **The Settlement Is Fair, Reasonable, and Adequate**

   1.   **The Settlement Resulted from Extensive Arm's-Length Negotiations**

Settlement negotiations began over a year after the Initial Class Action Complaint was filed. During that time, discovery had begun, Defendants' joint motion to dismiss had been filed, and substantial investigation of the Parties' claims and defenses had occurred. Moreover, negotiations were arm's-length and facilitated by an experienced mediator from PhillipsADR. *Chetwood*, 2021 WL 2206481, at *2 ("the assistance of an experienced mediator … [supports that] the proposed settlement is non-collusive"). FPI also provided financial and other relevant information such that the settlement terms were based on what was financially feasible. After almost five months of settlement negotiations, the Parties produced the Settlement Agreement.

   2.   **The Settlement Represents Substantial Relief for the Class**

In their Complaint, Plaintiffs requested monetary and injunctive relief for their alleged injuries. ECF No. 226 ¶¶ A-G. The Settlement provides both forms of relief and more.

First, the Settlement provides substantial monetary relief, allocating $2,800,000 for the Settlement Fund. Additionally, the injunctive relief in the Settlement is directly related to the injuries alleged in the Complaint. FPI agrees to several practice changes to address conduct alleged by Plaintiffs to be unlawful. Finally, the Settlement provides additional relief in the form of cooperation in the prosecution of Plaintiffs' claims against the Non-FPI Defendants, which include Yardi.

   3.   **The Settlement Avoids Additional Litigation Costs and Risks**

The Parties' decision to settle the case at this point avoids the resource burdens of further litigation. The Parties reached a binding agreement in principle at an early stage in the litigation process, before any ruling on the motion to dismiss, and finalized the Settlement Agreement before any significant litigation occurred. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) ("[S]ettlement should be facilitated at as early a stage of the litigation as possible.") (internal quotations removed); *see also Pitman v. Brinker Int'l, Inc.*, 216 F.R.D. 481, 485 (D. Ariz. 2003), *amended on reconsideration in part sub nom. Pitman v. Brinker Int'l*, 2003 WL 23353478 (D. Ariz. Oct. 3, 2003) ("Settling cases prior to the filing and resolution of dispositive motions benefits the court and the parties … consistent with [Fed. R. Civ. P.] 1…."). And, at least one of the defenses

asserted by the joint motion to dismiss—that no confidential data is used by Yardi to issue pricing recommendations—would require extensive discovery about their software to verify. *See* ECF No. 138 at 4-5.

### 4. Counsel Are Experienced Litigators

Interim Lead Class Counsel and Lead counsel for FPI are experienced antitrust and class action attorneys. *See* ECF Nos. 146, 158 (describing Interim Lead Class Counsel's credentials); [Charles H. Samel, Antitrust and Commercial Litigation Attorney, Stoel Rives LLP](#) (describing Lead counsel for FPI's credentials); *Chetwood*, 2021 WL 2206481, at *2 (considering experience of counsel).

### 5. Counsel May Request Reasonable Attorneys' Fees and Reimbursement of Costs

The Settlement provides that Counsel may request *reasonable* attorneys' fees and costs from the Settlement Fund, subject to Court approval. Settlement notice costs deductible from the Settlement Fund are also capped at $250,000. Saliently, the Court retains its ability to assess the reasonableness of attorneys' fees under this agreement. *Staton*, 327 F.3d at 963 (emphasizing retention of this role). This Court has approved of similar terms allowing for applications for attorneys' fees and costs after preliminary approval. *See, e.g.*, *Dennis v. Amerigroup Wash., Inc.*, 2020 WL 6701328, at *3 (W.D. Wash. Nov. 13, 2020).

### 6. Plaintiffs May Request Reasonable Service Awards for Named Plaintiffs

Named plaintiffs may receive reasonable service awards in class action settlements. *See, e.g.*, *Staton*, 327 F.3d at 977.

Should service awards be appropriate, Settlement Class counsel may apply for reasonable awards after and if preliminary approval is granted. *See, e.g.*, *Dennis*, 2020 WL 6701328, at *3 (approving of similar terms).

## C. The Settlement Class Merits Certification

### 1. Rule 23(a)(1): The Settlement Class Is Sufficiently Numerous

Here, the Settlement Class includes all persons and entities in the United States that leased multifamily housing in the United States from a landlord that used Yardi's RENTmaximizer or

Revenue IQ software programs, or from its division, subsidiary, predecessor, agent, or affiliate, at any time during the period of September 8, 2019, until the date of entry of an order granting preliminary approval of the Settlement. This encompasses a large group of renters across the country—indeed, FPI alone is a multifamily property manager and owner of over 165,000 rental units throughout 23 states. ECF No. 226 ¶ 56. Even assuming one class member per rental unit, this far exceeds class sizes previously approved by courts as sufficiently numerous. *See, e.g.*, *Does 1-10 v. Univ. of Washington*, 326 F.R.D. 669, 679 (W.D. Wash. 2018).

### 2. Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class

Each member of the Settlement Class allegedly suffered the same economic injury (an antitrust violation and payment of increased rent prices) and alleges that their injury arises from the same course of conduct (use of Yardi services to generate pricing recommendations). Accordingly, class members' claims revolve around essentially the same questions of law and fact, including:

a. Was there a conspiracy between Yardi and lessor Defendants to set prices?

b. What were the nature and terms of the agreement between Yardi and lessor Defendants, or between lessor Defendants, if any?

c. Does Yardi software issue mandatory rent price recommendations, and how?

d. What information is used to output a rent price recommendation?

e. Are the rent prices issued by Yardi software supracompetitively high?

f. What is the relevant geographic and product market for Defendants?

g. Do Defendants have sufficient market power in the relevant market?

Factual differences between class members are insufficient to overcome the generally identical factual core of their claims—class members were all lessees of multifamily residential units from a landlord who used Yardi's software programs. *See Staton*, 327 F.3d at 953 ("the existence of shared legal issues with divergent factual predicates").

### 3. Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of the Class

Plaintiffs, like other Settlement Class members, rented a residential property from a lessor Defendant who allegedly used Defendant Yardi's software to supracompetitively set prices. *See* ECF

No. 226 ¶¶ 36-37, 219. Thus, Plaintiffs, like other Settlement Class members, allegedly suffered an injury of having to pay a higher rent than would have been the case in a competitive market because of Yardi. *Id.*; *In re Valve*, 780 F. Supp. 3d at 1125 ("In the antitrust context, typicality is established when all class members allege the same antitrust violation.") (quotations removed). And, Plaintiffs' and Class members' injuries would also be remedied by the same relief—compensation for the increased rents paid and ceasing use of allegedly price-fixing software.

### 4.  Rules 23(a)(4): Plaintiffs Will Fairly Represent the Interests of the Class

First, Named Plaintiffs will fairly represent the interests of the class as their interests are largely coextensive. Plaintiffs allegedly suffered the same type of injury from the same course of conduct by Defendants. An attempt to redress and receive compensation for the injury by Plaintiffs will also do the same for the members of the proposed Settlement Class. The Settlement relief is illustrative—not only does it provide the Settlement Class with monetary compensation for their alleged injuries, but it seeks to stop the anticompetitive behavior that would be harmful for all Settlement Class members.

Second, Class Counsel have extensive experience in antitrust and complex litigation and have zealously advanced the Settlement Class's interests.

Furthermore, the Settlement does not include any improper kickbacks or other awards for Plaintiffs or Counsel; subject to preliminary approval, Settlement Class Counsel may apply for *reasonable* attorneys' fees and costs and service awards for Named Plaintiffs. Moreover, settlement negotiations were conducted at arm's length and facilitated by an impartial mediator, reducing risk of collusion at the expense of the Class.

### 5.  Rule 23(b)(3): Common Questions of Fact or Law Predominate

Here, the antitrust questions in common to the Class predominate because they "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication." *In re Valve*, 780 F. Supp. 3d at 1126. For example, it is essential to both the case and every Class Member's individual claim to show the existence of a conspiracy between Defendants to fix prices. This common issue is more important to each Plaintiff's claim than any individual issues and necessitates common factual inquiries about the operation of Yardi software and whether

an agreement existed. The nature of an agreement between Yardi and other Defendants primarily turns on relations between them, not on the existence of any particular Plaintiff.

### 6. Rule 23(b)(3): A Class Action is the Superior Method for Resolving this Litigation

First, prosecuting all claims individually would be highly burdensome for potential plaintiffs and Defendants. This Court has noted the complexity and resource costs of antitrust suits, which typically involve a widespread injury by corporate actors. *See Subspace Omega, LLC v. Amazon Web Servs., Inc.*, 2024 WL 4451404, at *2 (W.D. Wash. Oct. 9, 2024). For one, common factual inquiries predominate. Each Settlement Class members' individual damages may be too small to justify individual litigation, especially considering the individual discovery necessary to determine how Yardi software works.

Second, because Named Plaintiffs' interests are largely coextensive with those who suffered the alleged injury, and because the Settlement negotiation process was conducted in an informed and impartial manner, the class action is a fair method for adjudicating the controversy.

### D. A Proposed Notice Program Would Satisfy Rule 23 and Deferring Formal Notice Is Appropriate

Following preliminary approval of the Settlement, the Settlement provides that Plaintiffs may either: "(i) seek to include notice of this Settlement to the Settlement Class and for claim administration along with the settlement of any other Defendant or (ii) seek [court] approval of a separate plan for providing class notice of this Settlement in a manner that *meets the requirements of due process and [Rule] 23* ('Class Notice')." Berman Decl., Ex. A (Settlement Agreement) at 7 (emphasis added).

Plaintiffs thus request that the Court defer formal notice to the Settlement Class (and approval of a plan of allocation) at this stage. Rule 23(c)(2) allows postponing formal notice "if there is a reason for the delay and it would not prejudice [absent] class members." *See also Albert v. Glob. Tel*Link Corp.*, 2024 WL 4644631, at *12 (D. Md. Oct. 31, 2024) (quoting *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013)) (granting preliminary approval and deferring notice). Here, Settlement Class Counsel may wait to move for final approval to combine notice with other potential settlements in the Consolidated Federal Actions. This would not prejudice absent class members—

other courts have deferred notice for this reason, explaining that combining notice with other potential settlements results in "efficiencies and cost savings for the Settlement Class Members." *Id.* at *12. Moreover, the complexity of an antitrust suit also weighs in favor of deferral. *See id.*; s*ee, e.g.*, *In re Metro. Sec. Litig.*, 2010 WL 11474608, at *1 (E.D. Wash. Feb. 12, 2010); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2015 WL 9952596, at *3 (S.D.N.Y. Dec. 15, 2015).

**E.     The Court Should Appoint Interim Lead Class Counsel as Settlement Counsel**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action … must appoint class counsel under Rule 23(g)." All Rule 23(g) factors weigh in favor of appointing Hagens Berman Sobol Shapiro LLP as Settlement Class Counsel. If appointed, counsel will devote all necessary resources toward administering the proposed Settlement for the benefit of the Settlement Class.

## IV.     CONCLUSION

Plaintiffs respectfully request that the Court approve the proposed Settlement Class, enter the accompanying Proposed Order preliminarily approving the Settlement, appoint Hagens Berman Sobol Shapiro LLP as Class Counsel, and set a date for a hearing on the final approval of the Settlement.

DATED: September 26, 2025          Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)

*/s/ Theodore Wojcik*
Theodore Wojcik (WSBA No. 55553)

*/s/ Stephanie A. Verdoia*
Stephanie A. Verdoia (WSBA No. 58636)

*/s/ Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com
Email: stephaniev@hbsslaw.com
Email: kellyf@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: rios@hbsslaw.com

*Attorneys for Plaintiffs*

***Certificate of Compliance***

*I certify that this memorandum contains 4,146 words, in compliance with the Local Civil Rules.*

<u>/s/ Steve W. Berman</u>