Hon. Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| *In re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION | Case No. 2:23-cv-01391-RSL |
| WYLIE DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., *et al.*,<br><br>Defendants. | **PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR: March 2, 2026**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[REDACTED VERSION]**<br><br>(Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053) |

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL)
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................................1

II.    BACKGROUND ....................................................................................................................3

III.   ARGUMENT .........................................................................................................................8

     A.    Yardi's Conduct During Phase One Undermined the Conditions of
            the Court's Phased Discovery Order ........................................................................8

     B.    Yardi's Summary Judgment Arguments Ask the Court to Draw
            Inferences on Issues Excluded from Phase One Discovery ...................................11

IV.   CONCLUSION ....................................................................................................................12

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – i
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*King Cnty. v. BP p.l.c.*,
   2018 WL 9440497 (W.D. Wash. Oct. 17, 2018) ...................................................................8

*Mach, et al. v. Yardi Systems, Inc., et al.*,
   No. 24CV063117 (Ala. Cty. Super. Ct.) ................................................................................3

*United States v. Boeing Co.*,
   2023 WL 5836487 (W.D. Wash. Aug. 31, 2023) ..................................................................8

*WAG Acquisition, LLC v. Flying Crocodile, Inc.*,
   2021 WL 2778578 (W.D. Wash. July 2, 2021) ....................................................................8

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 1
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## I.   INTRODUCTION

For the reasons set forth in Plaintiffs' opposition to summary judgment, Yardi's Motion for Summary Judgment should be denied on the record already before the Court. Nothing in this motion suggests otherwise. Rather, Plaintiffs bring this motion because Yardi's conduct during Phase One discovery—and the arguments Yardi now advances at summary judgment—confirm that the safeguards the Court imposed when it approved phased discovery were not realized in practice. In the event the Court determines the present record is insufficient to fairly resolve the issues raised in Yardi's motion, this motion seeks to prevent dispositive issues from being resolved on a record that does not reflect the discovery process the Court required when it approved phased discovery.

In March 2025, the Court granted in part Yardi's Motion for Phased Discovery, authorizing a temporary stay of discovery as to the landlord defendants while permitting an initial phase of discovery focused on Yardi and its revenue management products. ECF No. 278. In doing so, the Court expressly conditioned phased discovery on several safeguards designed to ensure that any dispositive motion would be decided on a complete and fair record. *See id.*

First, the Court emphasized that Phase One was "not simply about the computer code, algorithm inputs, or the narrow topics Yardi put forth" (*id.* at 2 n.2), but would encompass how Yardi's revenue management products "work[], ***how [they are] used in practice***, and the benefits [they] provide[]" to clients (*id.* at 1 n.1 (emphasis added)). Second, the Court required Yardi to be "over-inclusive" in its discovery responses, recognizing that "the antitrust analysis is contextual" and cannot be artificially compartmentalized. *Id.* at 2 n.2. Third, the Court expressly reserved relief under Federal Rule of Civil Procedure 56(d), making clear that if, at the time Yardi sought summary judgment, Plaintiffs had been "deprived of discovery necessary to respond," the motion would be continued or denied. *Id.*

Yardi has not followed the conditions the Court placed on phased discovery. Rather than producing core, merits-critical materials in a manner that permitted meaningful review, Yardi repeatedly produced central evidence at the end or after the close of Phase One discovery. Yardi's

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 1
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  conduct deprived Plaintiffs of any realistic opportunity to analyze that evidence, take depositions,
2  or pursue follow-on discovery before responding to summary judgment.

3        Most notably, in mid-January 2026, Yardi produced approximately 200,000 pages of
4  Technical Account Manager ("TAM") notes memorializing calls between TAMs and RevenueIQ
5  users. *See* Ex. 1, Jan. 20, 2026 production letter. TAMs are a core component of the RevenueIQ
6  system. Yardi currently employs approximately ▇▇▇▇▇, *see* Ex. 2, Bradford Dep., at 43:16–
7  19, each of whom works with a defined group of RevenueIQ users and meets with those users on
8  a recurring basis—often weekly or monthly—to discuss pricing, performance, and revenue
9  strategy.

10        As set forth in Plaintiffs' Opposition to Summary Judgment, TAMs sit at the center of the
11  alleged conspiracy and are the primary means by which pricing guidance is conveyed to Yardi's
12  customers. In their limited review of this late production, Plaintiffs have identified further evidence
13  supporting the central role of Yardi TAMs, who use confidential client information to provide
14  pricing guidance to landlord defendants. The late-produced TAM notes show Yardi personnel
15  explicitly using benchmark data to identify properties as underpriced and to encourage rent
16  increases. For example, one TAM note states that Yardi would ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 3 at
18  -84. Other TAM notes similarly reflect efforts to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
19  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
20  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 4 at -86, -87.

21        Prior to this mid-January production, however, Yardi had produced almost no documentary
22  evidence reflecting what actually occurs during these regular calls between Yardi TAMs and
23  clients. The production occurred more than two months after the close of Phase One fact discovery,
24  and only after repeated requests by Plaintiffs that Yardi search the central database where those
25  materials were stored.

26        As a result, Plaintiffs had no meaningful opportunity before responding to summary
27  judgment to review the call notes, depose the TAMs who authored them, or examine how landlord
28  recipients understood and implemented the guidance reflected in those notes. As this Court

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 2
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  recognized when it approved phased discovery, such evidence is critical to understanding how
2  Yardi's RevenueIQ system operated "in practice," and is necessary to permit the Court to conduct
3  the "contextual" analysis required at summary judgment. *See* ECF No. 278 at 1-2 nn.1-2.

4        The mid-January production of the TAM call notes was not an isolated instance. At the
5  close of fact discovery, Yardi produced additional materials concerning the operation of its
6  benchmarking product. Ex. 5, Nov. 14, 2025 production letter; Ex. 6, Nov. 20, 2025 production
7  letter. Yardi's expert subsequently relied on those late-produced materials in making various
8  assertions about Yardi's benchmarking. As with the TAM call notes, the timing of this production
9  deprived Plaintiffs of any meaningful opportunity to conduct discovery into these issues, including
10 the ability to test the factual basis for the expert's assertions through depositions or follow-on
11 discovery.

12       Although the existing record suffices to defeat summary judgment, it is not the record the
13 Court contemplated when it approved phased discovery. Accordingly, if the Court determines the
14 present record is insufficient to fairly resolve the issues raised in Yardi's motion, this motion asks
15 the Court to unphase discovery so that any dispositive ruling rests on a properly and fairly
16 developed factual record.

17                       **II.    BACKGROUND**

18       On February 21, 2025, Yardi moved for an order phasing discovery, seeking to stay
19 discovery as to the landlord defendants and limit Phase One discovery to Yardi and its RevenueIQ
20 product. ECF No. 212. Yardi proposed the first phase as a narrow inquiry focused on the extent to
21 which confidential client information is used by RevenueIQ's pricing algorithm. *See id.* at 7-8. In
22 essence, Yardi contemplated the same limited discovery that happened in *Mach, et al. v. Yardi*
23 *Systems, Inc., et al.*, No. 24CV063117 (Ala. Cty. Super. Ct.). *See id.* (referencing *Mach*
24 extensively).

25       On March 10, 2025, Plaintiffs filed their Response in Opposition to Yardi's Motion. ECF
26 No. 244 ("Opp."). There, Plaintiffs argued that phasing discovery was prejudicial and inefficient
27 for several reasons. *Id.* In particular, Plaintiffs cautioned that phased discovery would invite
28 gamesmanship, including the strategic withholding of evidence bearing on how RevenueIQ

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 3
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

operates in practice. *Id.* at 8-9. Plaintiffs warned that confidential benchmarking information—"a critical input that lessor defendants rely upon when adopting Yardi's pricing recommendations" (*id.* at 11)—would be obscured if discovery were limited to Yardi's technical systems rather than how pricing guidance is delivered and used. As Plaintiffs explained at the time, "lessor defendants rely on Yardi's pricing recommendations because they can validate them against confidential information that Yardi also provides." *Id.* at 11. This makes discovery into communications between Yardi and the landlord defendants regarding the benchmarking information essential to any fair evaluation of the claims.

On March 24, 2025, the Court partially granted Yardi's motion. ECF No. 278. The Court rejected Yardi's proposal for a narrowly phased initial period of discovery. *See id.* at 3. Instead, the Court ordered a phase of discovery on "how [Yardi's] revenue management software functions, what inputs are used, how it generates pricing recommendations, whether it uses or shares confidential, non-public information and for what purposes, how clients can control or impact the pricing recommendations, how clients actually configure the software, and the rate at which Yardi's pricing recommendations are adopted." *Id.* The Court designated the second phase as focused on discovery against landlord defendants. *Id.* at 2.

Consistent with the Court's order, Plaintiffs sought discovery into how Yardi's revenue management software operates in practice and whether it uses or shares confidential, non-public information. To that end, Plaintiffs served multiple Requests for Production specifically targeted at Yardi's use of benchmarking information and its communications with landlord defendants regarding pricing. In May 2025, the parties reached agreement that Phase One discovery would encompass RevenueIQ in full, including its benchmarking functionality and the use of benchmarking information to generate, validate, and reinforce pricing outputs, as well as related products and data sources to the extent they fed into or were used by RevenueIQ. Berman Decl. ¶ 2; Ex. 7.

Against that backdrop, Plaintiffs proposed Anthony Fazio as a custodian based on his role at Yardi and the apparent relevance of his position to RevenueIQ. Yardi opposed that request, representing that Mr. Fazio had only "limited ties" to RevenueIQ, had not worked with the

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 4
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  software, and was duplicative of other custodians. Ex. 8; Ex. 9. Relying on those representations,
2  Plaintiffs agreed at that time to withdraw Mr. Fazio from the custodian list.
3        Yardi's own subsequent document productions—beginning in July 2025—promptly and
4  materially contradicted those representations. The documents showed that ███████████
5  ████████████████████████████████████████████████████████████████████████
6  ████████████████████████████████████████████████████████████████████████
7  ████████████████████████████████████████████████████ *See, e.g.*, Ex.
8  9 at 2.
9        Once confronted with this documentary record, Plaintiffs advised Yardi that its prior
10 representations regarding Mr. Fazio's involvement were inaccurate and renewed their request to
11 add him as a custodian. Berman Decl. ¶ 3. Yardi ultimately agreed to do so in late August 2025.
12 *Id.* As set forth in Plaintiffs' opposition to summary judgment, Mr. Fazio played a central role in
13 the use of confidential client information to guide pricing strategy and reinforce RevenueIQ
14 recommendations. Opp. § II.B.4.
15       The belated acknowledgment of Mr. Fazio's role reflects a broader pattern in Phase One
16 discovery. Across multiple issues—including custodians, benchmarking-related materials, and the
17 documentation of pricing guidance—Yardi disclosed evidence bearing on the real-world use of
18 confidential information only after Plaintiffs pressed for it and often only after key discovery
19 milestones had passed.
20       Yardi made several key productions right at the close of fact discovery, on November 14,
21 2025. ECF No. 461 at 1. On that day—after the last of five scheduled Phase One depositions had
22 concluded—Yardi produced an additional 642 documents along with structured data from Yardi's
23 Central Property Database, including ███████████████████████████
24 ████████████████████████████████████████████████████████████████████████
25 ███ Ex. 5. The bulk of the 642 documents consisted of meeting notes reflecting communications
26 between TAMs and senior RevenueIQ personnel. In these notes, using confidential benchmarking
27 information drawn from multiple Yardi clients, managers reviewed the performance of individual
28 properties assigned to each TAM, identified opportunities for specific clients to raise rents or adjust

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 5
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

occupancy, and urged TAMs to push pricing and performance metrics across their assigned portfolios, including in comparison to the performance of competing RevenueIQ clients. *See, e.g.*, Ex. 10; Ex. 11.

On November 14, 2025, the day that fact discovery closed, Yardi produced additional structured benchmarking materials—including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exs. 5-6. Yardi's experts later relied on these materials to support key conclusions about benchmarking usage, comp-set overlap, and market effects, even though the documents were produced only after fact discovery had ended and Plaintiffs were foreclosed from examining how the data was generated, interpreted, or used in practice. *See, e.g.*, Yenikomshian Report § VII ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

After reviewing these and other materials, Plaintiffs identified ▮▮▮▮▮▮▮▮▮▮▮▮ However, as of the close of fact discovery, Plaintiffs had identified only a small, sporadic subset of references to ▮▮▮▮ in the documents Yardi had produced.

On November 19, Plaintiffs wrote to Yardi and asked that Yardi "(1) confirm that Yardi has conducted a targeted search of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, identify the search parameters used, and explain why ▮▮▮▮▮▮▮▮; or (2) conduct such a search now and produce all responsive ▮▮▮ materials by December 1st." Ex. 12 at 6. Plaintiffs emphasized that these materials were responsive to numerous Requests for Production served by Plaintiffs.[1] *Id.*

---

[1] For example, Plaintiffs' Request for Production No. 44 specifically asked for "All Communications and Documents relating to Your meeting(s) with any Multifamily Housing Operator or Owner, including participant lists, dates and locations for meetings, presentations (including speaker notes, where applicable), agendas, minutes, notes, attendance lists, expense reports, handouts, reports, statistical bulletins, and correspondence." ECF No. 245-1 at 48.

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 6
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1      On December 3, Yardi responded to Plaintiffs' letter. Yardi did not answer whether it had
2 searched ▮▮▮▮ at all. Instead, it stated that its production was sufficient because Yardi
3 claimed, without any specificity, that it had produced "more than 600 examples of such client
4 meeting notes spanning 2019-2023 from more than 40 properties." *Id.* at 4.

5      Plaintiffs then reiterated their request that Yardi confirm that it had "conducted a
6 comprehensive search of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7 ▮▮▮▮▮▮▮▮ *Id.* at 3. Plaintiffs disputed Yardi's characterization of 600 examples already
8 produced because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

10      On December 17, Yardi responded. Again, Yardi made no effort to explain what, if any,
11 efforts it had taken to ▮▮▮▮▮▮▮▮ to date. Instead, Yardi stated that it would now "conduct
12 an additional review of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 1-2. On January 20, Yardi produced
14 approximately 220,000 pages of additional documents. In its production letter, Yardi stated that
15 "these documents are responsive to Plaintiffs' request for additional client meeting notes ▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 at 1.

17      Notably, Yardi currently has approximately ▮ technical account managers working on
18 RevenueIQ (Ex. 2, Bradford Dep., at 43:16–19), only a handful of whom were designated as
19 custodians in this case. *See* Ex. 13 (listing TAMs as of 2023). Accordingly, even this production—
20 more than 200,000 pages reflecting approximately 14,500 client meetings—appears to represent
21 only a fraction of the ▮▮▮▮▮▮ meeting notes that exist.

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 7
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## III.  ARGUMENT

District courts have wide discretion over docket management.[2] That authority extends to phasing and unphasing discovery.[3] In exercising this authority, "[c]ourts weigh several factors, including convenience, prejudice, and judicial economy."[4]

Phase One discovery unfolded in a way the Court expressly sought to avoid. Central evidence concerning benchmarking, pricing guidance, and the personnel responsible for implementing RevenueIQ was produced late and incrementally, often only after depositions had concluded or after Plaintiffs pressed for explanations. As a result, both Plaintiffs and the Court have been prejudiced: Plaintiffs were deprived of the opportunity to examine witnesses and develop follow-on discovery, and the Court is now asked to resolve dispositive issues on a record shaped by discovery timing rather than by the full factual context of how RevenueIQ operates in practice.

### A.  Yardi's Conduct During Phase One Undermined the Conditions of the Court's Phased Discovery Order

When the Court approved phased discovery, it did so subject to express and substantive conditions. *See* ECF No. 278. Phase One was not intended to be a narrow or technical inquiry limited to source code or algorithmic inputs. *Id.* at 2. Rather, the Court directed discovery into how Yardi's revenue management software functions in practice. *Id.* The Court instructed Yardi to be "over-inclusive" in its discovery responses and expressly reserved relief under Rule 56(d) if Plaintiffs were deprived of discovery necessary to respond to a dispositive motion. *Id.* at 2 n.2.

Those conditions were not satisfied. Core evidence bearing on how RevenueIQ operates in practice—including the role of key personnel, use of confidential benchmarking information, and manner in which pricing guidance is conveyed and reinforced—was produced late and incrementally, only after depositions had concluded and Plaintiffs pressed for explanations.

---

[2] *See King Cnty. v. BP p.l.c.*, 2018 WL 9440497, at *1 (W.D. Wash. Oct. 17, 2018).

[3] *See, e.g.*, *WAG Acquisition, LLC v. Flying Crocodile, Inc.*, 2021 WL 2778578, at *8 (W.D. Wash. July 2, 2021) (ending bifurcation of discovery).

[4] *United States v. Boeing Co.*, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023).

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 8
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

This is not a dispute about volume or diligence in isolation.[5] It is a structural problem. Core, merits-critical materials were produced only after the point at which they could be meaningfully used—after depositions had closed and follow-on discovery was no longer possible Although the existing record suffices to defeat summary judgment, the Court's phased discovery order required a discovery process that would permit a full, contextual evaluation of the claims and defenses.

The belated, partial production of the notes of meetings between TAMs and Yardi clients is especially consequential because those notes sit at the center of the factual questions Phase One discovery was designed to answer. As Yardi's own witnesses acknowledged, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 14, Rao Dep. at 284:22–287:13. Those records therefore constitute the most direct, contemporaneous evidence of how RevenueIQ operates in practice—what information was discussed, how confidential information was used, and how Yardi personnel framed pricing recommendations to clients. *See id.* at 285:24–286:22.

Despite their obvious relevance and despite repeated requests from Plaintiffs, Yardi made no effort for months to search ▓▓▓▓▓▓▓▓ a central database squarely within the agreed scope of Phase One discovery and the most logical repository for these materials. Instead, Yardi asserted that its limited production was "sufficient to show" the nature of TAM calls, while declining to explain whether ▓▓▓▓▓▓▓▓ had been searched at all. Ex. 12 at 2. When Yardi ultimately conducted a ▓▓▓▓▓▓▓▓ review and produced approximately 200,000 pages of TAM call notes in mid-January 2026, that production came long after Phase One fact discovery had closed and only after sustained pressure from Plaintiffs. *See id.* Even then, Yardi produced notes only from a subset of TAMs designated as custodians, *see id.*, notwithstanding that Yardi employs approximately ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 2, Bradford Dep. at 43:16–19. As a result, Plaintiffs have had only a matter of weeks to review a voluminous and central body of evidence, with no opportunity to depose the TAMs who authored the notes, test how landlords understood and

---

[5] Plaintiffs and Yardi stipulated to an extension for Plaintiffs' response to Yardi's Motion for Summary Judgment. ECF No. 486. This extension only addressed the most immediate prejudice from the late disclosures in November—Yardi's production of materials that its experts relied on. This extension was agreed upon before Yardi made its production of 200,000 additional pages of documents.

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 9
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

implemented the guidance reflected in them, or pursue additional discovery suggested by what the notes reveal. Even in the limited time available to review them, the TAM call notes reveal how confidential benchmarking information was routinely used by Yardi personnel to shape pricing guidance provided in meetings with Landlords—and directly contradict Yardi's claims that confidential information is not used in the RevenueIQ system.

- **Benchmarking used to identify specific properties as "▮▮▮▮▮▮▮" and push price raises:** 

  Ex. 4 at -86, -87.

- **Benchmarking used to validate and reinforce pricing recommendations:**

  Ex. 15 at -92, -93, -95.

- **Explicit focus on competitors' rents and market positioning:**

  Ex. 4 at -86, -87; Ex. 3 at -84.

The importance of this evidence is underscored by the contrast between Yardi's summary judgment arguments and its discovery conduct. In its motion, Yardi repeatedly emphasizes that confidential pricing information is not directly incorporated into RevenueIQ's pricing algorithm—a characterization Plaintiffs dispute on the merits. But even accepting Yardi's framing for purposes of this Motion, that focus obscures one of the core issues that Phase One discovery was meant to illuminate: how confidential client information is actually incorporated into the RevenueIQ system in practice. While advancing a narrow, technical conception of RevenueIQ at summary judgment, Yardi delayed and limited discovery into the real-world conduct of its employees—

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 10
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

██████████████████████████████████████████████

██████████████████████████████ Ex. 16, Fazio Dep., at 34:22–37:19. The result is a record in which Yardi asks the Court to credit abstractions about algorithmic inputs while the most direct evidence of how pricing guidance is delivered and reinforced using confidential information was disclosed late, incompletely, and without any opportunity for meaningful further discovery from Plaintiffs.

**B.    Yardi's Summary Judgment Arguments Ask the Court to Draw Inferences on Issues Excluded from Phase One Discovery**

Nothing in Yardi's summary judgment motion alters the threshold point: for the reasons set forth in Plaintiffs' opposition, summary judgment should be denied on the record already before the Court. Plaintiffs do not contend that discovery from landlord defendants is required to defeat summary judgment. Rather, the problem is that Yardi's motion repeatedly asks the Court to accept its factual characterizations about landlord conduct that Phase One discovery was expressly not designed to test.

Having proposed—and obtained—phased discovery that postponed inquiry into landlord defendants, Yardi now advances arguments premised on how landlords actually use RevenueIQ and related benchmarking services. For example, Yardi asserts that benchmarking does not provide landlords with "day-to-day insight into how to price each [] unit," and that benchmarking, "by design and in practice," is not used to influence pricing in real time. MSJ at 2-3, 21. Yardi also argues that there is no "rim" because "the only thing the Landlord Defendants have in common is that they manage multifamily rental properties … and licensed Revenue IQ at some point." MSJ at 24. But these assertions are not established facts; they are litigation positions about landlord behavior offered in the absence of landlord discovery.

That gap matters for at least two independent reasons. First, even on the limited Phase One record, there is evidence that landlords use benchmarking information as part of their pricing decision-making in ways that go beyond passive or retrospective review. Discovery from Yardi reflects that benchmarking data is used to validate pricing recommendations, to identify perceived "underpricing" relative to competitors, and to inform discussions about rent increases during

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 11
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  recurring calls with TAMs. Whether landlords relied on that information in practice, and how it
2  influenced their pricing decisions, are factual questions that turn on landlord conduct and
3  understanding—questions that were expressly excluded from Phase One discovery.

4  Second, the limited current record already contains evidence of inter-landlord interactions
5  that extend beyond the algorithm itself. Discovery from Yardi shows that ▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. 17, Ivinskas Dep., at 45:25–52:10, ▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮. Ex. 18 at -74, -85 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮ Ex. 17, Ivinskas Dep., at 202:10–204:22, 210:13–215:4; Ex. 2, Bradford Dep.,
13 at 161:2–181:25. Whether those communications facilitated coordination, reinforced parallel
14 pricing behavior, or operated as part of a broader hub-and-spoke arrangement are issues that cannot
15 be resolved without discovery from the landlords themselves.

16 In short, landlord discovery is not required to defeat summary judgment; the Phase One
17 record already contains more than enough evidence of concerted action to send Plaintiffs' claims
18 to a jury. But Yardi asks the Court to resolve dispositive issues by accepting its characterization
19 of landlord conduct—conduct that Phase One discovery was never designed to explore. To the
20 extent the Court believes those questions must be reached to resolve Yardi's motion, the proper
21 course is to unphase discovery or defer ruling so that those issues are evaluated on a record that
22 reflects actual behavior rather than untested assumptions.

### IV. CONCLUSION

24 For the reasons set forth in Plaintiffs' opposition, Yardi's Motion for Summary Judgment
25 should be denied. Alternatively, if the Court determines the current record is insufficient to fairly
26 resolve the issues raised in Yardi's motion, Plaintiffs respectfully request—consistent with the
27 safeguards the Court built into its phased discovery order—that the Court vacate its Order Granting
28 in Part Defendants' Motion for Phased Discovery and unphase discovery.

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 12
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1  DATED: February 9, 2026            Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
*/s/ Theodore Wojcik*
Theodore Wojcik (WSBA No. 55553)
*/s/ Stephanie A. Verdoia*
Stephanie A. Verdoia (WSBA No. 58636)
*/s/ Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
tedw@hbsslaw.com
stephaniev@hbsslaw.com
kellyf@hbsslaw.com

Rio S. Pierce (pro hac vice*)*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

---

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE
TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 13
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**CERTIFICATION OF COMPLIANCE**

I certify that this memorandum contains 4,198 words, in compliance with Local Civil Rule 7(d)(3).

DATED: February 9, 2026          **HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (SBN 12536)

*Attorney for Plaintiffs*

PLAINTIFFS' MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 14
011188-11/3443591 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX