Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| *In re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION. | No. 2:23-cv-01391-RSL |
| MCKENNA DUFFY, individually and on behalf of all others similarly situated, | **DEFENDANT YARDI SYSTEMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO UNPHASE DISCOVERY** |
| Plaintiffs. | |
| v. | **NOTE ON MOTION CALENDAR: March 2, 2026** |
| YARDI SYSTEMS, INC., *et al.*, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |
| | (Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053) |

**TABLE OF CONTENTS**
Page

INTRODUCTION ..................................................................................................................1
BACKGROUND ...................................................................................................................3
    I. Revenue IQ's Functionality is Central to Plaintiffs' Allegations .............................3
    II. Yardi Complied with the Court's Directive, Producing Extensive Technical and Non-Technical Materials ...........................................................................................3
        a. Yardi Produced Extensive Source Code and Technical Materials Related to Revenue IQ and Benchmarking ................................................................3
        b. Yardi Consented to Expansive Phase One Discovery and Produced Extensive Non-Technical Materials Throughout Discovery, Including Pricing Call Notes .........................................................................................................4
        c. Plaintiffs Deposed Yardi Employees on a Range of Technical and Non-Technical Subjects, Including TAM Pricing Calls ..............................................4
    III. Yardi Accommodated Plaintiffs' Requests for Extensions and Follow-On Discovery ..................................................................................................................5
ARGUMENT .........................................................................................................................6
    I. Plaintiffs' Motion is Procedurally Improper ...........................................................6
    II. Plaintiffs Do Not and Cannot Identify Any Basis to Unphase Discovery ................7
        a. Plaintiffs Make No Showing of the Specific Additional Evidence They Seek, Nor Can They Given the Broad Scope of Phase One Discovery ........................7
        b. Plaintiffs Ignore That They Had the Core Technical Record—Including the Yenikomshian Analysis—Since April 2025 .......................................................11
        c. Additional Discovery on Plaintiffs' Unpled Theories Would Be Futile ...........11
CONCLUSION ...................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**            Page(s)

*Burrows v. 3M Co.*,
    529 F. Supp. 3d 1194 (W.D. Wash. 2021) ................................................................. 8, 9

*Faithlife Corp. v. Philadelphia Indem. Ins. Co.*,
    2020 WL 7385722 (W.D. Wash. Dec. 16, 2020) ........................................................ 13

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
    525 F.3d 822 (9th Cir. 2008) ......................................................................................... 7

*Garner v. Amazon.com, Inc.*,
    2022 WL 2275410 (W.D. Wash. June 23, 2022) .......................................................... 9

*Grant v. Alperovich*,
    993 F. Supp. 2d 1356 (W.D. Wash. 2014) .................................................................... 8

*Medtrica Sols. Ltd. v. Cygnus Med. LLC*,
    2014 WL 813897 (W.D. Wash. Mar. 3, 2014) .............................................................. 9

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
    874 F. 3d 604 (9th Cir. 2017) ...................................................................................... 12

*Norgal Seattle P'ship v. Nat'l Sur. Corp.*,
    2012 WL 1377762 (W.D. Wash. Apr. 19, 2012) ........................................................ 10

*Ohio Sec. Ins. Co. v. Garage Plus Storage Aviation, LLC*,
    600 F. Supp. 3d 1164 (W.D. Wash. 2022) .................................................................... 8

*Paris v. Steinberg & Steinberg*,
    828 F.Supp. 2d 1212 (W.D. Wash. 2011) ..................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 56 ................................................................................................... *passim*

# INTRODUCTION

Plaintiffs' motion to "unphase discovery" is unwarranted and seeks to circumvent summary judgment. Plaintiffs even concede that the Court need not resolve its motion to unphase until Yardi's summary judgment motion is ruled on. Mot. at 12. Either way, Plaintiffs fully tested their central theory of the case, and Yardi's motion for summary judgment proves Plaintiffs' claims irrefutably wrong.

This Court ordered phased discovery because Plaintiffs' claims "depend largely" on how Yardi's revenue management software (Revenue IQ) functions and whether it uses or shares confidential information. (Dkt. No. 278 ("Order") at 1). Over eight months, Yardi produced whatever Plaintiffs requested, even when those requests grew increasingly untethered to Plaintiffs' allegations. Among other things, Yardi produced (a) over 210,000 documents, including over 15,000 client "pricing call" notes, (b) full Revenue IQ source code, (c) benchmarking source code, and (d) massive amounts of structured data. Yardi presented every employee witness Plaintiffs noticed for deposition and agreed to Plaintiffs' requests for supplemental productions and extensions—even after the discovery cutoff.

Yardi has been an open book throughout this case because, as Yardi said at the outset, it has nothing to hide. Plaintiffs never moved to compel Yardi to produce more information, and even declined to take key discovery including deposing the Yardi employee most knowledgeable about how Revenue IQ works (Michael Gaeta) and deposing Yardi's two experts who conducted comprehensive technical analyses of Revenue IQ and Yardi's benchmarking functionality and provided expert reports in support of Yardi's summary judgment motion.

The voluminous, uncontested record proves that Revenue IQ does not function in any way like Plaintiffs alleged. The software relies only on client-specific data, each client's individualized software configurations, and limited publicly available information. Yardi maintained from the outset that Revenue IQ does not share confidential client inputs across

YARDI SYSTEMS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO UNPHASE
DISCOVERY (No. 2:23-cv-01391-RSL) – Page 1

customers, and clients are free to accept, modify, or reject their own pricing outputs based on their own software configurations. There is simply no antitrust conspiracy, nor could there ever be one, because of the nature of how the software works.

Confronted with the facts, Plaintiffs pivot from their algorithmic price-fixing theory to a new theory that routine product support by Yardi's technical account managers ("TAMs") constitutes a pricing conspiracy *despite* how the software works. This new theory contradicts the algorithmic claims alleged and is unsupported by the voluminous evidentiary record already produced, including over ten thousand communications with the landlord defendants in this action and another over ten thousand notes of conversations with Revenue IQ clients—none of which even hint at a price fixing or confidential information sharing conspiracy.

Against this backdrop, Plaintiffs move to "unphase discovery" rather than proceed under Rule 56(d), as the Federal Rules and the Court's March 24, 2025 Order require. This is because Plaintiffs cannot identify specific facts they need, prove those facts exist, or prove such facts are essential to oppose summary judgment, as Rule 56(d) requires. Plaintiffs gesture vaguely to categories of materials they purportedly lacked a "meaningful opportunity" to review, despite receiving volumes of those materials months earlier and despite declining to seek additional time to review these cumulative materials. At most, Plaintiffs argue that additional time might have been helpful—not that specific, undiscovered evidence exists that would alter the summary judgment analysis.

Plaintiffs received (as the Court intended) broad access to how Revenue IQ operates and the inputs it uses, including source code, data, communications, and technical architecture. Plaintiffs were not deprived of discovery at any time. Rather, Yardi's transparency and the volumes of incontrovertible and uncontested evidence simply prove that Plaintiffs' claims about Revenue IQ were wrong, and further discovery cannot change reality.

# BACKGROUND

## I. Revenue IQ's Functionality is Central to Plaintiffs' Allegations

The Court ordered phased discovery in recognition of the case's central focus on "how [Yardi's] revenue management software functions, what inputs are used, how it generates pricing recommendations, whether it uses or shares confidential, non-public information and for what purposes, how clients can control or impact the pricing recommendations, how clients actually configure the software, and the rate at which Yardi's pricing recommendations are adopted." Order at 3. The Court directed Plaintiffs to tailor requests and instructed Yardi to be "over-inclusive" in responding. *Id.* at 2 n.2. Yardi was.

## II. Yardi Complied with the Court's Directive, Producing Extensive Technical and Non-Technical Materials

### a. Yardi Produced Extensive Source Code and Technical Materials Related to Revenue IQ and Benchmarking

Following the Court's Phased Discovery Order, Yardi promptly produced technical discovery. Declaration of Abraham A. Tabaie ("Tabaie Decl.") ¶¶ 12–20; Order at 1 n.1. In late April 2025—seven months before the close of Phase One discovery—Yardi produced annual snapshots of the Revenue IQ and CPD source code, Revenue IQ's user interface code, source code for the Matrix and RentCafe products where they feed into Revenue IQ, and supporting technical materials. Tabaie Decl. ¶¶ 14–15. Even though benchmarking data does not feed into Revenue IQ pricing outputs, Yardi also produced benchmarking source code as well as structured data regarding client configurations and pricing outputs, benchmarking, and additional client data. *Id.* ¶ 13, 17–19.

Plaintiffs also received extensive technical analyses of Revenue IQ. On July 18, 2025, Yardi produced summary judgment briefing and supporting materials from the California state court case *Mach v. Yardi Systems, Inc., et al.* ("*Mach*"), including the transcript from Michael Gaeta's deposition (with a Revenue IQ tutorial), Mihran Yenikomshian's expert report and technical appendices, and all other supporting evidence.

Plaintiffs thus had months during Phase One and before depositions to evaluate Revenue IQ's functionality. *See id.* ¶ 16.

### b. Yardi Consented to Expansive Phase One Discovery and Produced Extensive Non-Technical Materials Throughout Discovery, Including Pricing Call Notes

Consistent with this Court's instructions that Phase One cover "how the suite of Yardi products works," Order at 2 n.1, Yardi agreed to an expansive definition of Phase One, including not only Revenue IQ and related products and data sources, but also benchmarking and CPD-related materials. Tabaie Decl. ¶¶ 3–5. Yardi even capitulated to Plaintiffs' demand to include Yardi products entirely outside the complaint, such as Asset IQ and Forecast IQ. *Id.* ¶ 5.

The Parties agreed to 18 document custodians, including five TAMs. *Id.* ¶ 9, Ex. B. Midway through discovery, Plaintiffs requested and Yardi agreed to add Anthony Fazio as a custodian, although his documents were almost entirely duplicative of other custodians. *Id.* ¶ 25.

Before the close of discovery, Yardi produced more than 210,000 documents, including internal and external communications, presentations, product development materials, and marketing and training materials. *Id.* ¶ 22. These productions included more than 600 exemplar client "pricing call" notes between 2019 and 2023, spanning more than 40 properties, all produced by August 15, 2025. *Id.* ¶ 24.

### c. Plaintiffs Deposed Yardi Employees on a Range of Technical and Non-Technical Subjects, Including TAM Pricing Calls

Plaintiffs deposed five Yardi witnesses, including two former TAMs—Dustin Bradford and Katrina Ivinskas—as well as Michael Thompson, Anthony Fazio, and Liana Rao. *Id.* ¶ 27. Despite suggesting that TAMs are somehow central to Plaintiffs' unpled theories, Plaintiffs never sought to depose the three additional TAM custodians whose documents they received. *Id.* ¶ 57.

At Bradford's and Ivinskas' depositions, Plaintiffs elicited extensive testimony regarding the cadence and substance of client meetings, the role of TAMs in supporting Revenue IQ clients, and how TAMs document client communications. *Id.* ¶¶ 29–37. Plaintiffs questioned Ivinskas on notes taken during one such call and, as she explained, the notes were simply "something that the client said that [she] noted" and not any Yardi directive to circumvent the client's own inputs, configurations, and goals for the Revenue IQ software. *Id.* ¶¶ 33–37.

Plaintiffs also questioned several deponents regarding benchmarking and CPD-related topics. *Id.* ¶¶ 36, 42–43, 47. While Plaintiffs had Michael Gaeta's (the person who leads Revenue IQ's software development) transcript from *Mach*, Plaintiffs chose not to depose him—despite being advised that he was the appropriate source for topics outside the scope of other developers' work and the developer most knowledgeable about all aspects of Revenue IQ. *Id.* ¶¶ 16, 40–43.

### III. Yardi Accommodated Plaintiffs' Requests for Extensions and Follow-On Discovery

After Plaintiffs took Fazio's deposition, they requested additional analyses he prepared. *Id.* ¶ 52. Even though these analyses were cumulative of materials previously produced, Yardi again capitulated in the interest of full transparency, and the following week produced 640 supplemental internal analyses. *Id.*

Following Rao's deposition, in response to questioning regarding client use of Revenue IQ's benchmark reporting, Yardi produced supplemental structured data on November 20, 2025. *Id.* ¶ 53. Plaintiffs did not seek to reopen Rao's deposition after receiving this data. *Id.*

Plaintiffs then requested an extension of their deadline to file their summary judgment opposition. *Id.* Once again, Yardi agreed. (Dkt. 486.)

1    Yardi also acceded to Plaintiffs' follow-on discovery requests even after the close
2    of discovery. Five days after discovery closed, Plaintiffs requested additional TAM "pricing
3    call" notes. Tabaie Decl. ¶ 54. This was despite Plaintiffs having received hundreds of such
4    notes more than three months prior and well over ten thousand communications between
5    Yardi and the landlord defendants, and asking questions about them in depositions. *See*
6    *supra* II.a, c. Despite Plaintiffs offering no basis to conclude that further notes would reveal
7    non-cumulative information, again in favor of transparency, Yardi agreed to produce
8    additional call notes stored on a separate platform for the five custodian TAMs. Tabaie
9    Decl. ¶¶ 55–56.

10   On January 20, 2026, Yardi produced the additional pricing call notes for the five
11   custodian TAMs, including 14,500 client meeting notes and 102,700 additional documents
12   in total, which were substantively cumulative of the already-produced exemplars. *Id.* ¶ 56.

13   Plaintiffs did not seek to reopen any depositions or request additional discovery. *Id.*
14   ¶ 57. Nor did Plaintiffs request additional time to review the newly produced materials.
15   Notably, on a meet and confer regarding the instant Motion to Unphase, Yardi expressly
16   asked whether Plaintiffs sought additional time to review the January 20 production. *Id.*
17   ¶ 58. Plaintiffs declined. *Id.* Plaintiffs also never deposed Yardi's experts or produced a
18   technical rebuttal report from their coding expert, Adam Hastings, whom Yardi's counsel
19   spoke to and discussed technical points with during Phase One. *See id.* ¶ 20, n.2.

## ARGUMENT

### I. Plaintiffs' Motion is Procedurally Improper

Plaintiffs' motion seeks to sidestep the Court's Phased Discovery Order. In addressing summary judgment following Phase One, the Court explained that Plaintiffs "may, of course, oppose a motion for summary judgment . . . **or seek a continuance under Fed. R. Civ. P. 56(d)."** Order at 2 (emphasis added). Plaintiffs opposed Yardi's motion for summary judgment but have not sought a continuance under Rule 56(d), despite

acknowledging that Rule 56 is the mechanism for relief if they were "deprived" of discovery. Mot. at 1, 8. The Court did not provide the third option Plaintiffs now seek—an "unphase discovery" motion that would grant the relief available under Rule 56(d) without making any of the showing required by Rule 56(d). The Court even set out the procedure for Phase Two discovery, if necessary, which requires the Parties to "file a Joint Status Report and Discovery Plan within fourteen days of the note date." Order at 3.

Accordingly, Plaintiffs' Motion to Unphase does not adhere to the requirements of Rule 56(d) or conform to this Court's Order and should thus be denied outright or deferred until the Court considers Yardi's Motion for Summary Judgment, at which time the "Motion to Unphase" will be moot. In fact, Plaintiffs explicitly tie their "Motion to Unphase" to Yardi's summary judgment motion, arguing that discovery should be unphased "if the Court determines the current record is insufficient to fairly resolve the issues raised in Yardi's [summary judgment] motion." Mot. at 12. Plaintiffs therefore concede that their Motion to Unphase is unnecessary.

II. **Plaintiffs Do Not and Cannot Identify Any Basis to Unphase Discovery**

   a. **Plaintiffs Make No Showing of the Specific Additional Evidence They Seek, Nor Can They Given the Broad Scope of Phase One Discovery**

As the Court's Order acknowledges, to obtain further discovery following Defendants' summary judgment motion, Plaintiffs must proceed under Rule 56(d). *See* Order at 2.

Relief under Rule 56(d) requires a showing "***by affidavit or declaration***" (Fed. R. Civ. P. 56(d) (emphasis added)) that "(1) [] the specific facts [a party] hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). "Failure to comply with these requirements 'is a

proper ground for denying discovery and proceeding to summary judgment.'" *Id.* (internal quotations and citations omitted).

Plaintiffs do not show via affidavit or declaration any further specific facts and discovery that could save the Consolidated Class Action Complaint ("CCAC"). Plaintiffs' motion mentions categories of material for which Plaintiffs purportedly lacked a "meaningful opportunity" to review (Mot. at 2), but neither their motion nor the supporting declaration identifies any particular facts Plaintiffs expect to discover, any basis to believe such facts actually exist, or any explanation of how those facts would be essential to opposing Yardi's summary judgment motion. *See generally* Mot. and Berman Decl. (Dkt. 502). Courts routinely reject such generalized assertions. *See, e.g.*, *Burrows v. 3M Co.*, 529 F. Supp. 3d 1194, 1205 (W.D. Wash. 2021) (Lasnik, J.) (denying Rule 56(d) relief where declaration lacked "specific reasons why plaintiffs cannot present facts essential" and "does not elucidate what facts are essential to resist the summary judgment motion or why they are essential"); *Grant v. Alperovich*, 993 F. Supp. 2d 1356, 1361–62 (W.D. Wash. 2014) (Lasnik, J.) (denying continuance where the plaintiff made only "vague requests" for additional "discovery investigations," without clarifying what "evidence [was] sought, whether the evidence exists or whether the evidence would be sufficient to defeat summary judgment"); *Ohio Sec. Ins. Co. v. Garage Plus Storage Aviation, LLC*, 600 F. Supp. 3d 1164, 1172–73 (W.D. Wash. 2022) (denying continuance where party "explain[ed] in its reply why the evidence is essential to contest" summary judgment but the supporting declaration did not "specify either the facts it hopes to elicit from further discovery or how those facts are essential"); *Paris v. Steinberg & Steinberg*, 828 F.Supp. 2d 1212, 1222 (W.D. Wash. 2011) (denying continuance where plaintiff cited a "vague [] reason" for additional discovery but did not submit evidence in opposing summary judgment that "would challenge the validity of Defendants' exhibits").

1    Nor could Plaintiffs make the requisite showing even if they tried. The record
2    establishes that Yardi was repeatedly "over-inclusive in its responses" to Plaintiffs'
3    discovery requests as this Court directed. Order at 2 n.2. Yardi produced wide-ranging
4    materials including, seven months before the close of discovery, the core technical materials
5    and Yardi's own prior analysis of them. Tabaie Decl. ¶¶ 13–15. And in response to Plaintiffs'
6    discovery demands, Yardi produced wide-ranging materials that went beyond Phase One
7    questions. *Id.* ¶¶ 52–57.

    Plaintiffs notably fail to identify a single category of documents or information that they requested and were denied during Phase One. Instead, they refer in general terms to seeking additional "core evidence," but do not identify any specific material facts that remain undiscovered or explain how further discovery would substantiate their claims as pleaded. Mot. at 8. Rule 56(d) requires ***specificity*** as to the evidence sought to defeat summary judgment. *See Medtrica Sols. Ltd. v. Cygnus Med. LLC*, 2014 WL 813897 at *3 (W.D. Wash. Mar. 3, 2014) (Lasnik, J.) (denying Rule 56 relief where plaintiff made only "general statements" about the "broad categories of discovery it [sought]"); *Burrows*, 529 F. Supp. 3d at 1205 (same). Plaintiffs do not carry that burden.

    Plaintiffs now argue that TAM client meeting notes are "central" to Plaintiffs' algorithmic price-fixing case but fail to explain what new facts they expect to uncover that they do not already possess. Nor can Plaintiffs argue they lack discovery of the TAM call notes, because well before the close of fact discovery, Yardi produced more than 600 TAM call notes authored by numerous TAMs over a five-year period that covered more than 40 properties. *See* Mot. at 9; Tabaie Decl. ¶ 24. Yardi also produced over ten thousand email communications between Yardi personnel and Yardi clients who are co-defendants in this case. Tabaie Decl. ¶ 24. These materials were more than sufficient to demonstrate the nature and substance of how Yardi communicates with its client about using the software, and Plaintiffs do not argue otherwise. *See generally* Mot. at 9; *Garner v. Amazon.com, Inc.*,

2022 WL 2275410, at *2 (W.D. Wash. June 23, 2022) (Lasnik, J.) (finding that producing "all documents and communications . . . would appear to have no benefit over simply producing 'documents sufficient to show'"). Plaintiffs also deposed two of the five TAM custodians, questioned them extensively about client meetings, and even introduced Ivinskas' call notes as a deposition exhibit. *See* Tabaie Decl. ¶¶ 29–37.

After fact discovery closed, Plaintiffs' requested—and Yardi produced—an additional 14,500 Confluence call notes documenting Revenue IQ calls. *Id.* ¶ 56. Plaintiffs do not contend that these materials, some of which they cite in their opposition to summary judgment, differ in substance from the 600 notes previously produced. Dkt. 492, Pls.' Opp. to Yardi's MSJ Exs. 99, 101, 107. That is because they are substantively cumulative of the 600 previously produced call notes. Tabaie Decl. ¶ 56.

Plaintiffs cannot now claim they were deprived of a "meaningful opportunity" to review these materials[1]—particularly where those materials are far afield from the core claim that Yardi's Revenue IQ software effectuates a price-fixing conspiracy. *See* Mot. at 2–3.[2] Moreover, after receiving the supplemental production, Plaintiffs denied needing additional time to review the TAM notes before opposing summary judgment and never sought to reopen depositions or serve further deposition notices. *Id.* ¶¶ 57–58. Under Rule 56(d), Plaintiffs have not identified (and cannot identify) any specific facts that remain undiscovered, because there are none.

---

[1] Even where a party points to a late-produced document, Rule 56(d) relief is not warranted absent a showing of material impact—something Plaintiffs did not attempt to argue here. *See Norgal Seattle P'ship v. Nat'l Sur. Corp.*, 2012 WL 1377762, at *5 (W.D. Wash. Apr. 19, 2012) (Lasnik, J.) (rejecting Rule 56(d) request where an "unexplained oversight" caused untimely production of a report because plaintiff failed to justify "why the disclosure of this document materially impacts the litigation or otherwise requires the reopening of discovery").

[2] Plaintiffs also complain that they "only" received the notes authored by TAMs designated as custodians. *See* Mot. at 9. Yet this is a typical discovery practice—not to mention that Plaintiffs agreed upon the search terms, custodians, and scope of responsiveness in Phase One. *See* Tabaie Decl. ¶¶ 5–9.

### b. Plaintiffs Ignore That They Had the Core Technical Record—Including the Yenikomshian Analysis—Since April 2025

Plaintiffs' motion also ignores that Yardi produced the technical heart of this case—as Plaintiffs pled their case in the CCAC—over ten months ago. Yardi produced annual snapshots of the Revenue IQ and CPD source code on April 22, 2025. *Id.* ¶ 14. During the discovery period, Yardi also produced: (*i*) source code for the user interface, benchmarking, and RentCafe/Matrix code that connects to Revenue IQ; (*ii*) structured data related to configurations, benchmarking, and executed leases; and (*iii*) technical support documents and specifications, including an entire database schema. *Id.* ¶¶ 13–15.

Since July 2025, Plaintiffs also had all *Mach* summary judgment materials, including: (*i*) the full transcript from Michael Gaeta's "Person Most Knowledgeable" deposition, which included a tutorial of the Revenue IQ interface; (*ii*) the expert declaration of Mihran Yenikomshian and all technical appendices; and (*iii*) all other supporting evidence. *Id.* ¶ 16. Yardi thus produced not only the Revenue IQ source code, but also effectively a "how to" guide explaining the software's pricing methodology, four months before summary judgment. *Id.* Yardi also timely submitted two expert declarations in this case under the case management order, and Plaintiffs have neither deposed the experts nor produced a rebuttal report. *Id.* ¶ 59.

### c. Additional Discovery on Plaintiffs' Unpled Theories Would Be Futile

Plaintiffs themselves framed this case as an algorithmic conspiracy in which landlords "delegat[ed] to Yardi's algorithmic software . . . responsibility for setting multifamily housing prices." (Dkt. 142 at 1). Yardi produced the objective record of the software's functionality—the source code and software configuration data—demonstrating that Revenue IQ does not share or use confidential competitor data to set prices and does not dictate pricing for clients. Yet Plaintiffs' summary judgment opposition ignores the source code entirely and falsely minimizes Revenue IQ's client-driven functionality in favor of a new, unpled (and baseless) theory in which TAM communications are somehow the

linchpin of a nationwide price-fixing conspiracy outside of the software itself. Mot. at 2. However, shifting theories is not a proper basis for continuance. *See Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F. 3d 604, 620 (9th Cir. 2017) (finding district court did not abuse discretion in denying continuance under Rule 56(d) where the facts sought were irrelevant to the issues raised in motion for summary judgment).

In any event, a continuance would be futile. Plaintiffs possess over fifteen thousand (600 + 14,500) pricing call notes and elicited significant evidence from TAMs (*see supra* II.a), from which Plaintiffs do not adduce any evidence that TAMs "use confidential client information to provide pricing guidance" to Revenue IQ clients. Mot. at 2; MSJ at 12. The voluminous discovery produced proves TAMs support clients in revising a client's *own* configurations to meet each client's *own* goals as defined by the *client* and **at the client's request**. In so doing, a TAM may help a client review its own aggregated, averaged, anonymized benchmark reports so the client can assess the historic performance of its properties relative to comparable properties chosen by the client. MSJ at 22; Tabaie Decl. ¶ 36. But helping clients interpret the same information clients can review themselves is routine client service, not an antitrust conspiracy. And the record also unequivocally establishes that no benchmarking information feeds into the Revenue IQ pricing outputs. MSJ at 17.

The source code and supporting data show not only how Revenue IQ works but also how clients use it "in practice." Order at 1 n.1; *id.* at 3 (explaining "how clients actually configure the software, and the rate at which [Revenue IQ's] pricing recommendations are adopted" as key Phase One issues). The tens of thousands of emails and call notes that Yardi produced further contextualize that use. Collectively, this discovery definitively shows "how Yardi's revenue management software works," proving not only that there is no conspiracy, but there ***could not be one*** on these facts.

Plaintiffs cannot explain why additional (unspecified) discovery into the landlord defendants is essential to defend summary judgment. *See* Mot. at 11–12. With over 15,000 call notes now in Plaintiffs' possession, there are simply no more specific material facts undiscovered: Plaintiffs know how TAMs communicate with Yardi clients, and none of it amounts to an antitrust violation (as fully explained in Yardi's summary judgment papers). Further discovery into what individual landlords allegedly "relied on . . . in practice" when making pricing decisions (Mot. at 12) would not change the bottom line as to how Yardi's software works or how Yardi interacted with its clients in practice.[3]

In sum, this is a case where Plaintiffs have now abandoned their liability theory, not one where they failed to receive discovery. Yardi's summary judgment motion, through extensive discovery and analysis of the facts, meticulously disproved Plaintiffs' algorithmic conspiracy claims. Plaintiffs now attempt to retrofit a different narrative and to fish for more discovery to support it, but Rule 56(d) does not permit this theory-shopping. Additional discovery based on nothing more than conjecture and a desire to find something—anything—would be "unnecessary to [the Court's] straightforward determination" of whether Revenue IQ shares data or dictates pricing in the manner alleged. *See Faithlife Corp. v. Philadelphia Indem. Ins. Co.*, 2020 WL 7385722 at *7 (W.D. Wash. Dec. 16, 2020) (Lasnik, J.).

## CONCLUSION

For the foregoing reasons, Yardi respectfully requests that the Court deny Plaintiffs' Motion to Unphase Discovery as moot and grant Yardi's Motion for Summary Judgment, or, alternatively, stay consideration of this motion pending the completion of summary judgment briefing.

---

[3] Plaintiffs cite "inter-landlord interactions" (Mot. at 12) but it is undisputed that any survey data that a Revenue IQ client independently collects and inputs into Revenue IQ is used solely by that client in the client's own Comps trend and that such data is not visible or usable by any other Revenue IQ client. *See* Declaration of Mihran Yenikomshian, Appendix D (Dkt. 479) ¶ D.92. Plaintiffs fail to rebut this evidence.

RESPECTFULLY SUBMITTED this 24th day of February, 2026.

**McNAUL EBEL NAWROT & HELGREN PLLC**

By: */s/ Claire Martirosian*
Claire Martirosian, WSBA No. 49528
Richard W. Redmond, WSBA No. 58835
600 University Street, Suite 2700
Seattle, WA 98101
(206) 467-1816
cmartirosian@mcnaul.com
rredmond@mcnaul.com

**DEBEVOISE & PLIMPTON LLP**

By: */s/ Maura K. Monaghan*

Maura K. Monaghan (*pro hac vice*)
Michael Schaper (*pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mkmonaghan@debevoise.com
mschaper@debevoise.com

Abraham Tabaie (*pro hac vice*)
David Sarratt (*pro hac vice*)
650 California Street
San Francisco, CA 94108
(415) 738-5700
atabaie@debevoise.com
dsarratt@debevoise.com

*Attorneys for Defendant YARDI SYSTEMS, INC.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Yardi Systems, Inc., certifies that this brief contains 4,149 words, in compliance with LCR 7(d)(3).

By: */s/ Claire Martirosian*

Claire Martirosian