Hon. Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| *In re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION<br><br>WYLIE DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., *et al.*,<br><br>Defendants. | Case No. 2:23-cv-01391-RSL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR: March 2, 2026**<br><br>(Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053) |



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. Plaintiffs' Motion Is Procedurally Proper under the Court's Broad Discretion to Manage Its Docket and Its Prior Order ..............................................1

    B. Yardi Does Not Address Whether Its Conduct During Phase One Satisfied the Conditions the Court Set ...................................................................3

    C. The RevenueIQ "System" Includes TAMs and Benchmarking—As Plaintiffs Have Always Alleged ..................................................................................5

    D. Yardi Cannot Defer Landlord Discovery and Then Argue Its Absence Is Dispositive ..................................................................................................5

III. CONCLUSION .....................................................................................................................6

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE
DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY
JUDGMENT (No. 2:23-cv-01391-RSL) – i



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# I. INTRODUCTION

This case is about how Yardi's revenue management system operates in practice—including the approximately thirty Technical Account Managers ("TAMs") who meet regularly with landlord clients, use confidential benchmarking data to identify properties as underpriced, and encourage rent increases. The Court recognized this when it defined Phase One to encompass not just the source code but how the system works in practice. ECF No. 278 at 1 n.1, 2 n.2. A fair resolution of the claims requires a record that reflects that full system—including how Yardi delivered pricing guidance to Landlord clients. That did not occur in Phase One. Unphasing discovery would allow it to.

Yardi's Opposition does not explain why Confluence—the central repository for TAM call notes—was not searched until after discovery closed. It does not address why materials its experts relied on were produced on the last day of fact discovery. It does not respond to the point that its summary judgment motion makes assertions about landlord conduct that Phase One was expressly not designed to test. Instead, it catalogs the volume of its productions, characterizes Plaintiffs' longstanding allegations about TAMs as an "unpled theory," and asks the Court to resolve this case on the source code alone—the same narrow framing this Court has already rejected. None of that is how discovery actually unfolded.

For the reasons set forth in Plaintiffs' Opposition, summary judgment should be denied on the existing record—a record that already shows Yardi personnel using confidential client data to identify underpriced properties and push rent increases across competing landlords. But if the Court has any question whether that record is sufficient, the answer is to complete the record the Court's Order contemplated—not to resolve dispositive issues on the incomplete one produced here.

# II. ARGUMENT

**A.  Plaintiffs' Motion Is Procedurally Proper under the Court's Broad Discretion to Manage Its Docket and Its Prior Order**

Plaintiffs' Motion is well within the purview of the Court's inherent docket management authority, which "includes 'wide discretion' over the entire discovery process." *Lomibao v. AGC*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE
DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY
JUDGMENT (No. 2:23-cv-01391-RSL) – 1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

*Biologics Inc.*, 2025 WL 2663178, at *1 (W.D. Wash. Sept. 17, 2025). "This discretion extends to … managing the scope and timing of discovery [] and fashioning appropriate remedies when parties fail to comply with their discovery obligations." *In re Amazon Return Litig.*, 350 F.R.D. 326, 330 (W.D. Wash. 2025). Yardi invoked that fundamental authority to file its Motion for Phased Discovery; Yardi now attempts to pull up the ladder behind it. *Compare* ECF No. 212 at 6 (citing *King Cnty. v. BP p.l.c.*, 2018 WL 9440497, at *1 (W.D. Wash. Oct. 17, 2018) (Lasnik, J.)), *with* ECF No. 508 at 6–7.

Yardi argues that Plaintiffs were limited to Rule 56(d). ECF No. 508 at 6–7. But the Court's Order did not merely preserve Rule 56(d) as a safety valve. It established a structured case management framework with substantive conditions on Phase One—including instructions to be over-inclusive and to account for how RevenueIQ works "in practice." ECF No. 278 at 2 n.2. It laid out a Phase Two procedure—a Joint Status Report within fourteen days—that operates independently of Rule 56(d). *See id.* at 3. That Phase Two mechanism reflects the Court's retained authority to manage the progression of the case beyond Phase One—authority over "the entire discovery process" that exists regardless of whether Plaintiffs invoke Rule 56(d). *Lomibao*, 2025 WL 2663178, at *1. Reading the Order to foreclose anything but Rule 56(d) would render the Phase Two provisions superfluous and strip the Court of the docket management discretion it expressly reserved. Even Yardi implicitly acknowledges this authority by requesting, in the alternative, that the Court stay consideration of Plaintiffs' Motion rather than deny it as procedurally deficient. ECF No. 508 at 13.

The Rule 56(d) cases Yardi cites—*Burrows*, *Grant*, *Ohio Security*, *Paris*—each involved a party seeking additional time to discover evidence and failing to identify what they needed or why. ECF No. 508 at 8. That framework applies where a party speculates about what further discovery might reveal. Not so here. Plaintiffs' Motion is premised on documented facts: Yardi did not search Confluence until after discovery closed, produced 220,000 pages of TAM notes two months later, and produced benchmarking structured data on the last day of discovery that its experts then relied on at summary judgment. The question is not whether specific unknown facts

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE
DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY
JUDGMENT (No. 2:23-cv-01391-RSL) – 2

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

exist—it is whether phased discovery should continue given Yardi's conduct and whether dispositive motions may be fairly resolved on the record it produced. That is a docket management question, not a Rule 56(d) question. *See United States v. Boeing Co.*, 2023 WL 5836487, at *2 (W.D. Wash. Aug. 31, 2023) (the Court's phasing authority should be exercised to "avoid prejudice"). Similarly, *Midbrook* is a 56(d) case that does not hold that the Court lacks authority to revisit phasing decisions—and unlike the party there, Plaintiffs have not shifted theories. *See infra* § II.A; CCAC ¶ 190. And *Faithlife* involved a "straightforward determination" applying "undisputed facts" to "unambiguous language" (2020 WL 7385722, at *7)—not a situation where the Court imposed specific conditions on discovery that went unmet.

### B. Yardi Does Not Address Whether Its Conduct During Phase One Satisfied the Conditions the Court Set

Plaintiffs' Motion was not about the volume of Yardi's productions. It was about whether the discovery process the Court ordered—over-inclusive, covering how the system works in practice—actually occurred. Yardi's Opposition responds almost entirely with volume: 210,000 documents, eighteen custodians, five depositions. ECF No. 508 at 1, 4. But it does not address the core issue—Yardi produced critical materials about how the RevenueIQ system operates in practice after Plaintiffs could use them.

Yardi suggests that Plaintiffs could have done more during Phase One—deposing additional TAM custodians, for example, or raising the Confluence issue earlier. ECF No. 508 at 4. But Phase One discovery operated on a compressed schedule: substantial document productions were not complete until mid-August 2025, and fact discovery closed in mid-November—a three-month window in which Plaintiffs reviewed over 210,000 documents, took five depositions, and identified the gaps that led to the Confluence dispute. Plaintiffs did not have the Confluence notes revealing the nature and substance of TAM-client interactions until two months after discovery closed.

Yardi asserts that Plaintiffs "fail to identify a single category of documents or information that they requested and were denied during Phase One." ECF No. 508 at 9. The category is not hard to identify: it is the contemporaneous notes of recurring meetings between Yardi's TAMs and

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 3

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

RevenueIQ clients—the most direct evidence of how Yardi's revenue management system operates in practice and precisely an issue the Court's Order directed Phase One to cover. Plaintiffs served requests for production targeting these materials at the outset of discovery, including RFP No. 44, which sought all communications and documents relating to Yardi's meetings with multifamily housing operators. ECF No. 245-1 at 48. Plaintiffs did not first raise the issue of TAM call notes after discovery closed, as Yardi implies. Plaintiffs pursued this category throughout discovery, questioned deponents about TAM calls and their documentation, and—as the depositions revealed the frequency and regularity of TAM-client meetings—identified a significant gap between what those witnesses described and what Yardi had actually produced. Plaintiffs promptly raised the issue, asking whether Yardi had searched Confluence, the system its own witnesses identified as the repository for these notes. Yardi did not answer. Plaintiffs asked again. Yardi again did not answer. Only a month after discovery closed did Yardi state it would "conduct an additional review" of Confluence. The January 20 production of 14,500 notes across 220,000 pages confirms Yardi's failure to timely search for these materials.

Yardi now characterizes these notes as "substantively cumulative" of 600 exemplars produced earlier. ECF No. 508 at 10. But Yardi offers no basis for that characterization—no explanation of how the 600 exemplars were selected, no sampling methodology, and no account of whether they were even drawn from Confluence at all. A party that did not search the primary repository for a core category of responsive documents until after discovery closed—and only after sustained pressure from the opposing party—cannot credibly claim to have been "over-inclusive."

Yardi emphasizes that it offered Plaintiffs additional review time during a meet and confer. ECF No. 508 at 6. But that offer came only after Plaintiffs indicated they would seek judicial relief, and on the day Plaintiffs' summary judgment opposition was due. More fundamentally, the prejudice was never about reading time. It was the loss of the discovery process—depositions, follow-on requests—that a timely production would have made possible. No extension of the briefing schedule cures that.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 4

## C. The RevenueIQ "System" Includes TAMs and Benchmarking—As Plaintiffs Have Always Alleged

Rather than explain its conduct during discovery, Yardi argues that the materials it failed to timely produce are immaterial. Its primary contention is that the source code is the beginning and end of the case. *See* ECF No. 508 at 1–2. But this Court rejected that framing when it defined Phase One to cover not just the algorithm but "how clients can control or impact the pricing recommendations, how clients actually configure the software, and the rate at which Yardi's pricing recommendations are adopted." ECF No. 278 at 3. Phase One was "not simply about the computer code, algorithm inputs, or the narrow topics Yardi put forth." *Id.* at 2 n.2.

The CCAC has always alleged that the RevenueIQ system encompasses more than the pricing algorithm. The Complaint alleges a hub-and-spoke conspiracy in which Yardi coordinates pricing among competing landlords through its revenue management system—including TAMs and benchmarking. *See* CCAC ¶¶ 10, 190, 228–233. Plaintiffs identified TAMs as relevant from the outset and specifically sought discovery into their role—including proposing TAM custodians and serving requests for production targeting Yardi's communications with landlord defendants regarding pricing. *See* Ex. 7; Ex. 8.

Yardi's characterization of this as "theory-shifting" (ECF No. 508 at 11) inverts the purpose of discovery. The algorithm generates pricing recommendations; TAMs reinforce those recommendations using confidential competitor data. These are complementary components of the same system, exactly as the CCAC alleged. It is not an "unpled theory" that Plaintiffs now have a more developed evidentiary picture of the TAM services alleged as suspect in the Complaint—it is the product and purpose of discovery. Yardi's position amounts to the claim that because the full scope of TAM activity emerged during discovery rather than before it, Plaintiffs may not pursue the inquiry to completion. That is not the law.

## D. Yardi Cannot Defer Landlord Discovery and Then Argue Its Absence Is Dispositive

Plaintiffs' Motion identified a specific structural problem with Yardi's summary judgment arguments: Yardi proposed and obtained phased discovery that deferred inquiry into landlord conduct and then filed a summary judgment motion that makes affirmative assertions about that

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE
DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY
JUDGMENT (No. 2:23-cv-01391-RSL) – 5

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

very conduct—how landlords use benchmarking, whether they act independently, whether there is a conspiracy "rim." Mot. at 11–12; *see* MSJ at 2–3, 21, 24. Yardi's Opposition does not address this point.

Instead, Yardi argues futility: that Plaintiffs "know how TAMs communicate with Yardi clients, and none of it amounts to an antitrust violation." ECF No. 508 at 13. That argument assumes its own conclusion—and it depends on the Court accepting Yardi's characterization of TAM activity as "routine client service" when the record shows TAMs using confidential data to identify underpriced properties and push rent increases. And whether that conduct amounts to an antitrust violation depends in significant part on how landlords received, understood, and acted on that guidance.

Ultimately, Yardi's summary judgment motion asks the Court to draw inferences about landlord conduct—how landlords used pricing recommendations, whether they acted independently—based on a record that was expressly designed not to test those questions. Phase One excluded landlord discovery at Yardi's request. Yardi cannot benefit from that exclusion at summary judgment. The record already contains evidence of how TAMs operated; what it does not contain—because Yardi requested its deferral—is the landlord side of those interactions.

### III.    CONCLUSION

For the reasons set forth in Plaintiffs' Opposition, summary judgment should be denied on the existing record; to the extent the Court determines that record is insufficient to resolve the issues Yardi raises, Plaintiffs respectfully request that the Court unphase discovery consistent with the safeguards it built into its phased discovery order.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE
DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY
JUDGMENT (No. 2:23-cv-01391-RSL) – 6

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

1    DATED: March 2, 2026　　　　　　　　Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
*/s/ Theodore Wojcik*
Theodore Wojcik (WSBA No. 55553)
*/s/ Stephanie A. Verdoia*
Stephanie A. Verdoia (WSBA No. 58636)
*/s/ Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
tedw@hbsslaw.com
stephaniev@hbsslaw.com
kellyf@hbsslaw.com

Rio S. Pierce (pro hac vice*)*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE
DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY
JUDGMENT (No. 2:23-cv-01391-RSL) – 7


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

# CERTIFICATION OF COMPLIANCE

I certify that this memorandum contains 2,074 words, in compliance with Local Civil Rule 7(d)(3).

DATED: March 2, 2026                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (SBN 12536)

*Attorney for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO UNPHASE DISCOVERY IN THE ALTERNATIVE TO DENYING SUMMARY JUDGMENT (No. 2:23-cv-01391-RSL) – 8

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX