The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| *In re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION | Case No. 2:23-cv-01391-RSL |
| WYLIE DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., *et al*.,<br><br>Defendants. | **PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S EXPERT CATHERINE TUCKER**<br><br>**NOTE ON MOTION CALENDAR: June 12, 2026**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[REDACTED VERSION]**<br><br>(Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053) |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    LEGAL STANDARD..........................................................................................2

III.   ARGUMENT........................................................................................................2

    A.   Dr. Tucker's Price Index Discards 240,000 Price Changes without Sufficient Justification ...............................................................................2

        1.   Dr. Tucker's Price Index Rests on no Independent Methodology ................................................................................3

        2.   Dr. Tucker's Price Index is Inconsistent with her Own Scholarship.......................................................................................5

        3.   The Duplicative YLPI Analyses of Dr. Mitzenmacher and Mr. Yenikomshian Should Be Excluded on the Same Grounds ..............................................................................................7

    B.   Dr. Tucker's Co-Conspirator Analysis Omits the Specification that Contradicts it. ...........................................................................................8

    C.   Dr. Tucker Opines on the Record Without Examining It ......................................12

IV.    CONCLUSION...................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Burlington N. Santa Fe Ry. Co.*,
   765 F.3d 765 (7th Cir. 2014) ...............................................................................................5, 6

*Carnegie Mellon University v. Hoffmann-LaRoche, Inc.*,
   55 F. Supp. 2d 1024 (N.D. Cal. 1999) ....................................................................................11

*Engilis v. Monsanto Co.* ,
   151 F.4th 1040 (9th Cir. 2025) ..............................................................................................13

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ...............................................................................................................2, 3

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
   2024 WL 4980784 (E.D. Pa. Dec. 3, 2024) ...................................................................6, 11, 12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..........................................................................................................1, 5, 11

*Rovid v. Graco Children's Prods., Inc.*,
   2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) ........................................................................5, 6

# I.    INTRODUCTION

This is not a motion about Dr. Tucker's qualifications. She is a tenured professor at MIT Sloan with an extensive publication record. Rule 702 asks the Court to look past those credentials and examine the work: whether the opinion rests on sufficient facts, reliable methods, and reliable application. Fed. R. Evid. 702(b)–(d). Three portions of Dr. Tucker's rebuttal report do not survive that examination.

First, her version of the Yardi Lease Price Index discarded more than 240,000 observed rent changes, including more than 160,000 price increases, based on whether a short vacancy crosses a calendar-month boundary. She cited no literature on price-index construction, tested no alternative thresholds, and made no attempt to evaluate whether her corrected index measures prices more accurately than Dr. Marinescu's.

Second, her correction to the co-conspirator regression presents results for only one of the two specifications Dr. Marinescu reported. The omitted specification is the one in which Dr. Tucker's corrections do not change the result. Every version of the omitted specification, under each of Dr. Tucker's proposed variable redefinitions, produces a positive and statistically significant co-conspirator effect. Her report does not mention any of this.

Third, her Section V.C opinion that Revenue IQ has no enforcement mechanism is an affirmative characterization of the defendant's conduct, formed without reviewing any Yardi document or any employee deposition.

The gap screen rests on no literature and no testing. The co-conspirator correction rests on a selective presentation. The Section V.C opinions rest on no record at all. For each, the conclusion is stated with confidence. The work necessary to support it was not performed. Rule 702 requires that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[1] Dr. Tucker did not meet that standard. The challenged opinions should be excluded.

---

[1] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

## II.   LEGAL STANDARD

The Court may exclude expert testimony where "there is simply too great an analytical gap between the data and the opinion proffered."[2]

## III.   ARGUMENT

**A.   Dr. Tucker's Price Index Discards 240,000 Price Changes without Sufficient Justification**

Dr. Tucker's rebuttal to the Yardi Lease Price Index rests on two changes to Dr. Marinescu's data: an outlier filter excluding effective rents below $20, and a "gap screen" discarding any lease observation where the interval between consecutive leases crosses a calendar-month boundary.[3]

The outlier filter is not what produces Dr. Tucker's conclusions. ████████████ ██████████████████████████████████████ ████████████████████████████ █ ████████████████████ ████████████████████ ██████████████████████████ The gap screen is the correction that matters. This motion challenges the gap screen.

What the gap screen does, concretely, is discard more than 240,000 observed rent-change observations from the index, including more than 160,000 observed price increases.[6] The cases featured in her report and in Yardi's briefing when explaining the gap screen are multi-year gaps— nine years, ten years, 109 months.[7] But they are unrepresentative of what the rule actually removes. The overwhelming majority of discarded observations are short turnover vacancies of a few months or less, clustered during and after the COVID period.[8]

---

[2] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[3] Expert Report of Catherine Tucker, Ph.D. in Rebuttal of the Report of Ioana Marinescu, Ph.D., Dkt. 528 ("Tucker Report") ¶¶ 37–60.

[4] Tucker Report Figs. 1.A, 2.A, Tbl. 1.A; Ex. 4, Deposition of Catherine Tucker, Apr. 28, 2026 ("Tucker Dep.") 248:7–20, 249:13–21. All "Ex." cites are to the declaration of Steve W. Berman, filed contemporaneously herewith.

[5] Ex. 4, Tucker Dep. 249:24–250:1.

[6] Ex. 1, Reply Report of Ioana Marinescu ("Marinescu Reply") § 4.2.

[7] *See, e.g.*, Tucker Report ¶ 51; Dkt. 530 at 7; Declaration of Michael Mitzenmacher in Rebuttal of the Report of Ioana Marinescu, Ph.D, Dkt. 527 ("Mitzenmacher Rebuttal") ¶¶ 91–93.

[8] Marinescu Reply § 4.2 & Tbl. 4, § 4.3.3 & Fig. 13.

Dr. Tucker's gap-screen analysis should be excluded for two independent reasons: it is not the product of reliable methodology, and it departs from the methods Dr. Tucker has applied in her own published work.

### 1.    Dr. Tucker's Price Index Rests on no Independent Methodology

Apart from Dr. Marinescu's report and deposition, Dr. Tucker



The arbitrariness of Dr. Tucker's work is visible in its operation. ███████████ ███████████████████████████████████████████████ ███████████████████████████████████████ The distinction is not economic. It is an artifact of which calendar months the vacancy happens to span.

An expert opinion resting on "too great an analytical gap between the data and the opinion proffered" is inadmissible.[13] A rule built on no literature, tested against no alternative, applied without any accuracy comparison, and producing different outcomes for economically identical events based on the calendar is the paradigmatic analytical gap. It is ipse dixit.

Dr. Tucker's principal defense is that the gap screen implements Dr. Marinescu's "own stated methodology."[14] ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████

---

[9] Ex. 4, Tucker Dep. 252:24–253:13.

[10] *Id*. 247:11–20.

[11] *Id*. 265:17–266:14.

[12] *Id*. 257:15–258:14

[13] *Joiner*, 522 U.S. at 146.

[14] Tucker Report Figs. 1.B, 2.B, 3.B;

[15] Ex. 4, Tucker Dep. 254:23–255:8, 258:5–14.

PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S - 3
EXPERT CATHERINE TUCKER                                    (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

The argument has three problems.

First, the rent is real. Dr. Tucker does not contend otherwise. ████████

████████████████████████████████

████████████████████████████

██████████████ ██████████████████████████████

█████████████████████████████████████ ██ ██

███████████████████████████████████

██████████ █ The result is that a real price change is deleted.

Second, Dr. Marinescu never said to delete the data. Dr. Marinescu described the arithmetic of the YLPI at her deposition. For each unit in each month, the index computes the ratio of the current rent to the prior month's rent. She testified that she "calculate[s] each unit's change [in] effective rent relative to the prior month."[19] That statement does not say: if the prior observation falls in a non-adjacent calendar month, throw the data away. As Dr. Marinescu explains in her reply report, there are various ways to allocate the price change across the vacancy. The Bureau of Labor Statistics ("BLS") chooses inclusion through imputation: it partially imputes rent changes during the vacancy but attributes a disproportionate share of the price movement to the month the new rent is set. When Dr. Marinescu applies BLS-style imputation as a sensitivity analysis, the results are preserved.[20] The methodological choice that matters is not whether the price change is attributed to one month or several; it is whether the price change is counted at all.

Third, a textual justification is not a methodology. The question under Rule 702 is whether the gap screen produces a reliable picture of how rental prices moved over time. An interpretive argument about what "month-to-month" means does not answer that question. It does not explain why discarding 240,000 real price changes produces a better index than retaining them. And it does not excuse the absence of any literature, any accuracy comparison, or any sensitivity analysis.

[16] *Id.* 259:6–261:18.

[17] *Id.* 267:19–268:5.

[18] *Id.* 260:19-261:6.

[19] Ex. 2, Deposition of Ioana Marinescu, Mar. 9, 2026 ("Marinescu Dep.") 271:15–272:3.

[20] Marinescu Reply §§ 4.3.2, 4.4 & Fig. 17.

Rule 702 asks whether the methodology is sound. Dr. Tucker's answer is that it is textually authorized. Those are different questions. Dr. Tucker is here as an economist offering an expert report, not a lawyer advancing a textual interpretation. The analysis is unsound and should be excluded.

### 2.     Dr. Tucker's Price Index is Inconsistent with her Own Scholarship

*Kumho Tire* holds that Rule 702 ensures an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[21] Experts who have staked out methodological positions in their own published work should follow those positions when they encounter the same questions in litigation.[22]

On the specific question her gap screen presents—what an economist should do when observations are missing in a way that is plausibly correlated with the outcome—Dr. Tucker has staked out clear positions in peer-reviewed work. Her rebuttal report follows none of them.

She has identified the problem. In one paper, she invoked a well-established sample-selection framework as the standard approach for non-randomly missing data.[23] ████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████ Her rebuttal report does not even acknowledge the issue. It just deletes the data.

She has solved analogous problems by retention, not deletion. In one empirical paper, she confronted missing intervals in a hospital-level panel dataset.[25] ████████████████████ ████████████████████████████████████████████████████████████ ████ Her Yardi methodology does the opposite. She encountered missing lease intervals in a panel rent dataset and dropped the observations.

---

[21] 526 U.S. at 152.

[22] *Rovid v. Graco Children's Prods., Inc.*, 2018 WL 5906075, at *6 (N.D. Cal. Nov. 9, 2018) (excluding expert who applied "different kind[s] of rigor in terms of the statistics on the data" in litigation than in academic work); *accord Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014).

[23] Ex. 6, Cowgill & Tucker, *Algorithmic Fairness and Economics*, at 3 (Sept. 24, 2020).

[24] Ex. 4, Tucker Dep. 90:7–15.

[25] Ex. 7, Miller & Tucker, *Can Health Care Information Technology Save Babies?*, 119 J. Pol. Econ. 289, 295 (2011).

[26] Ex. 4, Tucker Dep. 110:13–16.

She has tested multiple approaches side by side rather than silently discarding observations. In one peer-reviewed paper, she confronted approximately 8,500 missing income observations in a sample of 61,580 survey respondents.[27] She handled the missing data three ways—imputation, nonparametric fixed effects, and omission of the affected controls—and reported all three results in a table.[28] ███████████████████████████████████████ But her gap screen reports only one set of results. It tests no alternatives.

There is a clear and obvious gap between academic rigor and litigation methodology where an expert has identified a problem in her scholarship, addressed it the opposite way in her own empirical work, and warned other researchers against the very practice she now employs.[30] In *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, a court excluded a rebuttal expert economist who framed his work as critique rather than affirmative analysis, just as Dr. Tucker does here.[31] The court held the expert "cannot escape the necessity of providing rigorous scientific analysis of his opinions simply by stating that he does not intend to put forth an alternative . . . when he, in fact, proposes" one.[32] The court found the deficiency particularly significant because the expert had conducted empirical testing in prior engagements but chose not to there.[33] Dr. Tucker calls the gap screen an implementation. But a correction that distorts the logic of the original methodology and alters the underlying dataset is not an implementation. It is an alternative, and it required its own methodological foundation. It has none.

---

[27] Ex. 8, Goldfarb & Tucker, *Advertising Bans and the Substitutability of Online and Offline Advertising*, 48 J. Mktg. Res. 207, 210 tbl.2 (2011).

[28] Ex. 4, Tucker Dep. 94:7–103:22.

[29] Ex. 9, Goldfarb & Tucker, *Standardization and the Effectiveness of Online Advertising*, 61 Mgmt. Sci. 2707, 2710 tbl.1 (2015); Ex. 4, Tucker Dep. 104:5–106:23.

[30] *Rovid*, 2018 WL 5906075, at *6; *Brown*, 765 F.3d at 773.

[31] 2024 WL 4980784, at *14-15 (E.D. Pa. Dec. 3, 2024).

[32] *Id.* at *15.

[33] *Id.* at *15 n.92.

### 3. The Duplicative YLPI Analyses of Dr. Mitzenmacher and Mr. Yenikomshian Should Be Excluded on the Same Grounds

Like Dr. Tucker, Dr. Mitzenmacher and Mr. Yenikomshian each present their own version of the corrected YLPI. All three were supported by Analysis Group.[34] All three use the same methodology and produce substantially the same corrected index. That is not independent corroboration; it is the same analysis, developed through the same consulting firm, presented three times. Dr. Mitzenmacher's and Mr. Yenikomshian's YLPI opinions are cumulative and should be excluded for the same methodological reasons as Dr. Tucker's.

And unlike Dr. Tucker, neither Dr. Mitzenmacher nor Mr. Yenikomshian is an economist. ███████████████████████████████████████████████ █████████████████████████████████████████ Yet both present a revised price index, work requiring economic judgment about which observations belong.

There is a reason that judgment matters. After a vacancy, a new tenant will sign a lease. That new lease provides a landlord with an opportunity to reset the rent to market, rather than negotiating up from the prior rent. This is where much of the price movement in rental markets happens. It is also exactly what the gap screen throws away.

███████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████ The Bureau of Labor Statistics had. Beginning in 1978, the BLS changed its methodology specifically to capture rent changes at units experiencing tenant turnover, after finding that excluding them biased its rent index downward.[39] Each of Yardi's

---

[34] Ex. 3, Deposition of Mihran Yenikomshian, Apr. 16, 2026 ("Yenikomshian Dep."), 189:13-191:19; 196:17-197:15; Ex. 5, Deposition of Michael Mitzenmacher, May 19, 2026 ("Mitzenmacher Dep."), 14:3-15:18.

[35] Ex. 5, Mitzenmacher Dep. 16:15-20.

[36] Ex. 3, Yenikomshian Dep. 68:9-13.

[37] Ex. 5, Mitzenmacher Dep. 38:15-40:24.

[38] *Id*. 40:25-42:1

[39] Crone, Nakamura & Voith, Measuring American Rents: A Revisionist History, Fed. Reserve Bank of Phila. Working Paper No. 01-8, at 2 (2001).

PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S - 7
EXPERT CATHERINE TUCKER                                    (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

experts applied a correction that reintroduces a bias the federal statistical system spent decades eliminating. They did so without reviewing any of the literature that documents it, and without analyzing whether the 240,000 excluded observations show systematically larger rent increases than those retained.

**B.      Dr. Tucker's Co-Conspirator Analysis Omits the Specification that Contradicts it.**

Dr. Marinescu's Table 8 regression asks whether rents rise in local markets as more properties in those markets adopt Revenue IQ. Using a standard panel specification with unit and month fixed effects, she finds a positive and statistically significant coefficient: Model 25 estimates $5.30 per additional co-conspirator per month.[40] She tests this two ways. A "levels" regression compares rent levels across markets with different amounts of RIQ adoption. A "first-difference" regression asks whether rents rise *faster* when adoption increases, stripping out the shared upward trend in both rents and adoption that a levels regression alone might capture.[41] Both specifications produced positive and statistically significant results across every model. Dr. Marinescu presents them together as "consistent econometric evidence" that rents respond to co-conspirator density.[42]

████████████████████████████████████████████████████████████

██████████████████████████ But in the course of simply taking Table 8, the first-differences portion of Dr. Marinescu's analysis vanished. Dr. Tucker's team started from Dr. Marinescu's regression script—the file that generates both the levels and first-differences specifications.[44] Figure 1 shows what they did. At the top of the file, the levels regression code was retained (white). Below it, the levels output code was rewritten in functionally equivalent form (yellow), meaning Dr. Tucker's team was actively editing this section. Immediately below sat the first-differences block: five regression specifications, a model list, and the output commands. It is

---

[40] Marinescu Report ¶¶ 535–47.

[41] *Id.* ¶¶ 548–49.

[42] *Id.*

[43] Ex. 4, Tucker Dep. 221:14-18.

[44] *Id.* 214:25–215:10; Marinescu Reply § 6.3.1 & Figs. 22-23.

entirely absent from the adapted script (red lines, left; gray space, right). Below the deletion, the visualization code was retained (white).



Why did Dr. Marinescu's first-differences code disappear from an analysis Dr. Tucker describes as merely correcting Dr. Marinescu's own methodology? Her report provides no explanation. It does not mention the first-differences specifications. It does not disclose that the adapted script omits the block of code that would have generated them. It does not state what first-differences results would look like under Dr. Tucker's corrected variables. A reader of Dr. Tucker's report would have no way to know that a companion specification exists, that it was omitted, or what it would show.

To be clear: Dr. Tucker offers no criticism of first-differences as an econometric methodology. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

One reason the first-differences code may have vanished from Dr. Tucker's adapted script is that the results it produces contradict her analysis. Dr. Marinescu ran the deleted specifications using each of Dr. Tucker's three proposed variable redefinitions, fifteen specifications in total. Every one produces a positive and statistically significant result: as co-conspirators join a local market, prices rise.[48] Dr. Tucker's correction flips that finding in levels. The same correction, applied to the same data, leaves it exactly where Dr. Marinescu reported it in first-differences.

In her academic work, Dr. Tucker is clear: robustness checks (such as different specifications) should be presented. She wrote a methodology paper that instructed researchers to present robustness checks across "a vast range of possible models."[49] ████████████████████████████

---

[45] Ex. 4, Tucker Dep. 235:24–236:7.

[46] *Id.* 220:22–24.

[47] *Id.* 221:3–9.

[48] Marinescu Reply §6.3.2, Tables 7-9, § 6.3.3.

[49] Ex. 10, Goldfarb, Tucker & Wang, *Conducting Research in Marketing with Quasi-Experiments*, 86 J. Marketing 1, 14 (2022).

PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S - 10
EXPERT CATHERINE TUCKER                                    (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1



So one of two things happened. Either Dr. Tucker's team ran the first-differences specifications, saw the results, and then removed the code, or they did not run them at all. If the former, Dr. Tucker obtained results that contradicted her analysis and chose not to disclose them. If the latter, she declined to run one of the two specifications Dr. Marinescu used—a well-established econometric technique she does not criticize—in the very analysis she claims to be correcting. Neither alternative satisfies the intellectual rigor that *Daubert* requires.[54]

What to make of a correction that produces opposite results depending on the specification is a question for the Court. It is not a judgment for the expert to make by presenting the favorable result and withholding the unfavorable one. Dr. Tucker's own published work says as much: "obfuscation is much worse than a clear summary of the identifying assumptions."[55]

Courts have excluded expert opinions built on this pattern. For example, one court excluded an expert who reanalyzed others' empirical work and selectively reported favorable results while disregarding contrary findings—grounding its exclusion in the Ninth Circuit's holding that testimony is unreliable where "the expert selectively chose his support from the scientific landscape."[56] And as discussed above, *Generic Pharmaceuticals* excluded a rebuttal

---

[50] Ex. 4, Tucker Dep. 31:6–8.

[51] *Id.* 44:18–22.

[52] *Id.* 44:6–12.

[53] *Id.* 43:21–44:5.

[54] *See Kumho Tire*, 526 U.S. at 152.

[55] Ex. 10, Goldfarb, Tucker & Wang at 16; Ex. 4, Tucker Dep. 238:2–9.

[56] *Carnegie Mellon University v. Hoffmann-LaRoche, Inc.*, 55 F. Supp. 2d 1024, 1039 (N.D. Cal. 1999) (citing *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)).

expert who proposed a "correction" without conducting any analysis to verify its validity.[57] Dr. Tucker's omission combines both deficiencies: a correction that was not independently validated, and a companion specification—one that contradicts her findings—that does not appear in her adapted code or her report.

**C.      Dr. Tucker Opines on the Record Without Examining It**

In Section V.C, Dr. Tucker offers the opinion that Yardi's pricing system contains no enforcement mechanism.[58] ███████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████ These are not critiques of Dr. Marinescu's regression specifications. They are affirmative opinions about the economic nature of defendant's conduct.

At deposition, ███████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ █████████████████████ ██████████████████

---

[57] 2024 WL 4980784, at *15.

[58] Tucker Report ¶¶ 86–97.

[59] *Id.* ¶¶ 88–92, 96.

[60] Ex. 4, Tucker Dep. 179:8–180:1.

[61] *Id.* 146:10–17.

[62] *Id.* 149:14–17.

[63] *Id.* 153:22–154:2.

[64] *Id.* 129:20–130:7; 133:2–14.

PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S - 12
EXPERT CATHERINE TUCKER                                          (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1



The characterization on which the rest of Section V.C turns appears at ¶ 90:

Rule 702 does not permit this. In *Engilis v. Monsanto Co.*, the Ninth Circuit affirmed exclusion of an expert opinion under Rule 702(b) where the expert's report "provide[d] no support" for a key assertion and the expert had not reviewed available records bearing on that assertion.[69] The court held that "what matters is the evidence [the expert] actually considered and the conclusions he actually drew from that evidence[.]"[70] Dr. Tucker did not selectively review the record. She did not review it at all. Section V.C should be excluded.

## IV.    CONCLUSION

An expert who corrects another expert's price index should be able to say why her version is more accurate. An expert who reproduces a regression should present the specifications from the original that contradict her findings alongside those that support them. An expert who opines on what a company's employees do should review the record of what they did. Dr. Tucker's rebuttal

---

[65] *Id.* 130:15–131:20.

[66] *Id.* 130:8–14.

[67] *Id.* 177:4–19.

[68] *Id.* 182:20–183:14.

[69] 151 F.4th 1040, 1051 (9th Cir. 2025).

[70] *Id.* at 1052.

PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S - 13
EXPERT CATHERINE TUCKER                                    (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

report does none of these things. Her opinions on these issues should be excluded because they are not the product of sufficient intellectual rigor.

Dated this 22nd day of May 2026.                    Respectfully submitted,

                                                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

                                                    */s/ Steve W. Berman*
                                                    Steve W. Berman (WSBA No. 12536)
                                                    */s/ Theodore Wojcik*
                                                    Theodore Wojcik (WSBA No. 55553)
                                                    */s/ Stephanie A. Verdoia*
                                                    Stephanie A. Verdoia (WSBA No. 58636)
                                                    */s/ Xiaoyi Fan*
                                                    Xiaoyi Fan (WSBA No. 56703)
                                                    1301 Second Avenue, Suite 2000
                                                    Seattle, WA 98101
                                                    Telephone: (206) 623-7292
                                                    Facsimile: (206) 623-0594
                                                    steve@hbsslaw.com
                                                    tedw@hbsslaw.com
                                                    stephaniev@hbsslaw.com
                                                    kellyf@hbsslaw.com

                                                    Rio S. Pierce (*pro hac vice*)
                                                    **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                                    715 Hearst Avenue, Suite 300
                                                    Berkeley, CA 94710
                                                    Telephone: (510) 725-3000
                                                    Facsimile: (510) 725-3001
                                                    riop@hbsslaw.com

                                                    *Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I certify that this memorandum contains 4,191 words, in compliance with Local Civil Rule 7(d)(3).


/s/ *Steve W. Berman*
Steve W. Berman

PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S - 15
EXPERT CATHERINE TUCKER                                              (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1