Hon. Robert S. Lasnik

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| *In Re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION | No. 2:23-cv-01391-RSL |
| WYLIE DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YARDI SYSTEMS, INC., *et al.*, <br><br> Defendants. | **PLAINTIFFS' PRAECIPE RE: REPLY EXPERT REPORT OF PROFESSOR IOANA MARINESCU (DKT. NO. 555-1)** <br><br> (Consolidated with Case Nos.2:24-cv-01948; 2:24-cv-02053) |

PLAINTIFFS' PRAECIPE (No. 2:23-cv-01391-RSL)

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Plaintiffs hereby submit this praecipe regarding the Expert Reply Report of Dr. Ioana Marinescu dated May 22, 2026 (Dkt. No. 555-1) ("Marinescu Reply Report"). This praecipe is submitted to correct a word-processing error in the Marinescu Reply Report. The error produced extraneous footnote numbers at four locations in the report; those numbers do not correspond to any footnote content, and their removal does not delete any substance. The same error caused the content of one footnote to be duplicated in the preceding footnote. The corrections are typographical and do not affect any analysis, finding, or conclusion in the report. The corrections do not include the renumbering of unedited footnotes.

The corrections listed below are provided to ensure the accuracy of the Marinescu Reply Report.

| Location | Original Text | Revised Text | Explanation |
|---|---|---|---|
| Marinescu ¶ 42 | I therefore next turn my attention to the mechanisms behind the observed pricing behavior, beginning with Mr. Yenikomshian's source code analysis [FN 24] | I therefore next turn my attention to the mechanisms behind the observed pricing behavior, beginning with Mr. Yenikomshian's source code analysis | Extraneous footnote removed |
| Marinescu ¶ 74 | In that light, Yardi's Experts' ability to contradict the results in my opening report through extensive changes to the data cleaning is unsurprising [FN 52] | In that light, Yardi's Experts' ability to contradict the results in my opening report through extensive changes to the data cleaning is unsurprising | Extraneous footnote removed |
| Marinescu ¶ 352 | Mr. Yenikomshian does not contextualize how significant the 562,115 reference rent changes he tabulates are relative to the 8,152,190 daily recommendations [FN 206] | Mr. Yenikomshian does not contextualize how significant the 562,115 reference rent changes he tabulates are relative to the 8,152,190 daily recommendations | Extraneous footnote removed |
| Marinescu ¶ 426 | Indeed, a multifaceted pricing structure may be precisely why firms coordinate via an algorithm rather than manually, because the algorithm can handle the complexity of the price structure while still pushing the price level up in a coordinated fashion [FN 269] | Indeed, a multifaceted pricing structure may be precisely why firms coordinate via an algorithm rather than manually, because the algorithm can handle the complexity of the price structure while still pushing the price level up in a coordinated fashion | Extraneous footnote removed |

PLAINTIFFS' PRAECIPE (No. 2:23-cv-01391-RSL) – 1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

| | | | |
|---|---|---|---|
| Marinescu ¶ 326 n. 189 | March 23, 2026, Yenikomshian Declaration, "Dr. Marinescu's false theory about the Comp Trend systematically ratchet[ing] prices upward" would also require the absence of countervailing signals from other Health and Trend Rules as well as from any other configurations that may impact the pricing output of Revenue IQ," ¶ 45; "As with the Trend Rules in Step One, Dr. Marinescu's claims about the Comp Trend Rule depend on the assumption that clients do not modify the Reference Rent after it is established. During her deposition, she acknowledged that her conclusions apply only under this condition, stating that "thereafter, […] if [the clients] don't do anything, then the reference rent […] is set by Yardi." This assumption is central to her theory," ¶ 47; "There is therefore no mechanism within the Comp Trend to match, whether instantly or with delay, the magnitude of competitors' pricing changes as required by Dr. Marinescu's theory," ¶ 56.190 March 23, 2026, Yenikomshian Declaration, ¶ 19, footnote 33 ("The extent to which configuration changes reflect changes that "undermine a conspiracy" is not an analysis I provided in my Opening Report,"); April 16, 2026, Yenikomshian Deposition, 154:7 - 13 ("Q: Did you do an analysis of whether those different choices that clients make is consistent or inconsistent with coordinating | March 23, 2026, Yenikomshian Declaration, "Dr. Marinescu's false theory about the Comp Trend systematically ratchet[ing] prices upward" would also require the absence of countervailing signals from other Health and Trend Rules as well as from any other configurations that may impact the pricing output of Revenue IQ," ¶ 45; "As with the Trend Rules in Step One, Dr. Marinescu's claims about the Comp Trend Rule depend on the assumption that clients do not modify the Reference Rent after it is established. During her deposition, she acknowledged that her conclusions apply only under this condition, stating that "thereafter, […] if [the clients] don't do anything, then the reference rent […] is set by Yardi." This assumption is central to her theory," ¶ 47; "There is therefore no mechanism within the Comp Trend to match, whether instantly or with delay, the magnitude of competitors' pricing changes as required by Dr. Marinescu's theory," ¶ 56. | Typographical error; text of footnote 190 inadvertently duplicated in footnote 189 |

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

| | pricing outputs? A: As I just said, that I did an analysis of the system, the inputs that go into that system, as well as the choices that clients make that would affect the calculation of the pricing output.") | | |
|---|---|---|---|

Thus, Plaintiffs ask that Professor Marinescu's reply report be corrected as indicated above. A substitute report is attached hereto as Exhibit A. Pursuant to LCR 7(m), Plaintiffs ask that it be filed under seal and considered in lieu of the version that appears at Dkt. 555-1.

DATED: June 11, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**
*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
*/s/ Theodore Wojcik*
Theodore Wojcik (WSBA No. 55553)
*/s/ Stephanie A. Verdoia*
Stephanie A. Verdoia (WSBA No. 58636)
*/s/ Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
tedw@hbsslaw.com
stephaniev@hbsslaw.com
kellyf@hbsslaw.com

Rio S. Pierce (pro hac vice*)*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2026, a true and correct copy of the foregoing was served on all counsel of record via email.

*/s/ Steve W. Berman*
Steve W. Berman

PLAINTIFFS' PRAECIPE (No. 2:23-cv-01391-RSL) – 4

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX