Hon. Robert S. Lasnik

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

| | |
|---|---|
| *In Re* YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION | No. 2:23-cv-01391-RSL |
| WYLIE DUFFY and MICHAEL BRETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YARDI SYSTEMS, INC., *et al.*,<br><br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANT YARDI SYSTEMS, INC.'S MOTION TO STRIKE AND FOR ATTORNEY'S FEES UNDER RULE 37**<br><br>**NOTE ON MOTION CALENDAR: June 29, 2026**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>(Consolidated with Case Nos.2:24-cv-01948; 2:24-cv-02053) |

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL)
011188-11/3190207 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................................. 1

II.     ARGUMENT ....................................................................................................................... 1

     A.      The Reply Is Proper. .................................................................................................. 1

     B.      The Reply Is Responsive. ........................................................................................... 4

          1.      The YLPI. ......................................................................................................... 4

          2.      The proposed remedy is unjustified. ............................................................... 9

          3.      The reply is not manipulated. ....................................................................... 10

III.    CONCLUSION ................................................................................................................. 12

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - i
011188-11/3190207 V1



**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Shah*,
2021 WL 4555177 (D. Nev. Oct. 5, 2021) ................................................................................ 2, 6

*Avila v. Ford Motor Co.*,
796 F. Supp. 3d 593 (N.D. Cal. 2025) ..................................................................................... 3, 10

*Clear-View Techs., Inc. v. Rasnick*,
2015 WL 3509384 (N.D. Cal. June 3, 2015) ............................................................................... 3

*Crowley v. Chait*,
322 F. Supp. 2d 530 (D.N.J. 2004) ............................................................................................... 3

*FTC v. Amazon.com, Inc.*,
2016 WL 4154284 (W.D. Wash. 2016) ..................................................................................... 2, 3

*In re Genetically Modified Rice Litig.*,
2010 WL 4483993 (E.D. Mo. Nov. 1, 2010) ............................................................................. 3, 6

*Kleen Prods. LLC v. Int'l Paper*,
306 F.R.D. 585 (N.D. Ill. 2015) .................................................................................... 2, 3, 6, 8, 9

*Little v. Washington Metro. Area Transit Auth.*,
249 F. Supp. 3d 394 (D.D.C. 2017) .............................................................................................. 3

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
2016 WL 4272430 (N.D. Cal. 2016) ............................................................................................ 8

*Richardson v. Korson*,
905 F. Supp. 2d 193 (D.D.C. 2012) ............................................................................................ 10

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
2016 WL 7042085 (C.D. Cal. Aug. 17, 2016) ............................................................................. 3

*United States v. Philip Morris USA Inc.*,
2022 WL 1101730 (D.D.C. Apr. 13, 2022) .................................................................................. 3

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) .................................................................................................... 10

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - ii
011188-11/3190207 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## I.    INTRODUCTION

One week after filing this motion, Yardi served 232 pages of new reports. These are full of new analyses and explanations responding to the criticisms in Plaintiffs' motions to exclude. That is fair. An expert who is criticized is entitled to respond. Plaintiffs think those new reports fail to rehabilitate Yardi's experts and will explain why in reply. Who is right is for the Court to determine.

Dr. Marinescu did the same thing. Yardi's experts criticized her methodology. She responded. The difference is that Yardi does not want her answer weighed on the merits. It wants it struck from the record. Yardi seeks to win by forfeit.

Yardi makes two arguments. First, Yardi contends the reply's analyses are "new opinions" barred by the parties' stipulation and Rule 26. But the stipulation Yardi negotiated, and the caselaw it tracks, permits what the reply does: respond to Yardi's experts' criticisms.

Second, Yardi accuses Marinescu of "tampering" with her code. Two things changed. An explanatory comment in Marinescu's code was updated from "previous month" to "previous observation" so that a single label would fit all the analyses she ran in reply. And a backup folder containing Marinescu's original analysis was labeled "Original." Neither changed the code that calculates the index. The computation is identical. The output is the same. Before this motion, no party, expert, or brief had cited the comment. This is not tampering.

Neither argument warrants their proposed remedy: striking virtually the entire reply. Rule 26 allows an expert to reply to criticism. That is all that Marinescu did. Yardi's motion should be denied.

## II.    ARGUMENT

**A.    The Reply Is Proper.**

Under this district's rules, Plaintiffs had fifteen days to oppose Yardi's March 23rd motion to exclude Marinescu, which included three rebuttal reports—one from a newly-disclosed economist. Plaintiffs sought additional time to depose Yardi's experts and prepare a response, a routine accommodation. Ex. 1 at p. 2.[1]

---

[1] All "Ex." References refer to exhibits in support of the concurrently filed Declaration of Steve W. Berman.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

On March 25, Plaintiffs proposed a briefing schedule and requested expert deposition dates. On March 30, Yardi responded with a proposed stipulation. Its conditions included waiving any summary judgment sur-reply and prohibiting new experts. Plaintiffs accepted both.

Plaintiffs did, however, reject Yardi's proposal that Marinescu be barred from presenting any "new expert opinions" in the form of "new analyses and/or applying new methodology not contained in her original report." Ex. 2 at pp. 5, 8.

Yardi's counter-proposal then reinstated this restriction as a prohibition on "new opinions based on new analyses and/or an entirely new methodology." Ex. 3 at p. 1. Plaintiffs responded:

> A Daubert opposition necessarily requires an expert to defend her methodology in response to specific criticisms—often with greater specificity than in the original report. Language that restricts "new analyses" would sweep in precisely that kind of responsive explanation, and we are not in a position to accept a constraint that could be used to limit a straightforward opposition to your Motion to Exclude. As worded, your proposed language would appear to define any new analysis as a new opinion—meaning, for example, that an analysis demonstrating the empirical flaws in Dr. Tucker's methodology would itself be prohibited as a "new opinion." That cannot be the right standard.

Ex. 4 at p. 1. Plaintiffs proposed that the Rule 26(a)(2)(D)(ii) framework remain and that Marinescu would "not introduce new affirmative opinions." Yardi accepted Plaintiffs' language, Ex. 5, which the Court then entered. Dkt. 537.

Yardi's motion treats each responsive analysis as a "new opinion." That is the reading Yardi proposed, then withdrew. The reply does what Plaintiffs told Yardi it would do. The stipulation the Court entered does not contain Yardi's restriction. The motion asks the Court to read it back in.

The result is the same under Rule 26.[2] A reply report may not "advance new arguments for the first time." *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 591 (N.D. Ill. 2015). Yardi reads this as prohibiting *all* "new argument." Mot. 11. But every argument in a reply is "new"—it answers criticism that did not previously exist. If "new" alone sufficed, no reply could contain any analysis.

The rules draw a different line. "[W]hether a rebuttal expert employs new testing or methodologies is not the determinative question"; "the appropriate question is whether a rebuttal

---

[2] Courts apply Rule 26's logic to replies. *Allstate Ins. Co. v. Shah*, 2021 WL 4555177, at *4 (D. Nev. Oct. 5, 2021).



attempts to put forward new theories outside the scope of the report it claims to rebut." *FTC v. Amazon.com, Inc.*, 2016 WL 4154284, at \*2 (W.D. Wash. 2016).

That distinction is well established. Courts permit reply experts to use "new methods of analysis" if "offered to contradict or rebut another party's expert." *In re Genetically Modified Rice Litig.*, 2010 WL 4483993, at \*2-3 (E.D. Mo. Nov. 1, 2010); *see also Kleen*, 306 F.R.D. at 592; *Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 416 (D.D.C. 2017); *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at \*4 (C.D. Cal. Aug. 17, 2016). That an expert could have included the analysis earlier "is immaterial," *United States v. Philip Morris USA Inc.*, 2022 WL 1101730, at \*6 (D.D.C. Apr. 13, 2022), because a contrary rule would require experts to include "vast amounts of arguably irrelevant material." *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004); *see also Kleen*, 306 F.R.D. at 592.

What crosses the line is offering new affirmative theories "instead of," rather than "in addition to," an expert's prior work. *Modified Rice*, 2010 WL 4483993, at \*3. This is the line Yardi's own authorities draw. *Avila v. Ford Motor Co.*, 796 F. Supp. 3d 593, 598-99 (N.D. Cal. 2025) (preserving opinions presenting "genuine methodological challenges" to defendants' experts' opinions); *Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at \*3-4 (N.D. Cal. June 3, 2015) (striking opinions on subject matter opening expert never addressed). Marinescu does not introduce a new affirmative theory. She defends her existing conclusions against Yardi's criticisms.

Yardi alternatively argues the reply fails as a "supplement" under Rule 26(e). Mot. 13-14. The report is not a supplement; it is a reply filed under the parties' schedule. Yardi's authorities govern post-deadline amendments, not timely replies. And the sham affidavit rule bars parties from contradicting their own testimony, not experts from defending theirs.

Yardi's experts filed over 300 pages criticizing Marinescu's opening report. Yardi counts the thoroughness of Marinescu's response as evidence of impropriety: 33 files, 5,574 lines of code. Mot. 8. The volume of a reply tracks the volume of the criticism. A thorough response is not a new opinion. It is a reply.

Yardi applies this standard to itself. The two declarations it filed on June 15, 232 pages in total, respond to Marinescu's reply: Tucker now offers an explanation for why she did not previously address

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 3
011188-11/3190207 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

first differences. Yenikomshian offers new analyses of configuration data. Dkt. 566, 568. Plaintiffs do not move to strike either because experts responding to criticism is how the process works. Plaintiffs ask the Court to apply the same standard to Marinescu's reply.

**B.    The Reply Is Responsive.**

Every section Yardi moves to strike falls into one of two permissible categories: explaining what a disclosed methodology always was, or testing an opponent's criticism. Yardi's motion treats them as indistinguishable from a third impermissible category, advancing a new affirmative opinion. That account works only by reading the reply without acknowledging the rebuttal it answers.

**1.    The YLPI.**

Yardi's experts implemented two changes to Marinescu's YLPI: a gap screen and an outlier threshold.

Marinescu's Reply Report ("Reply") offers three responses to the gap screen. First, it is not her "stated methodology": the index records rent changes when they occur, vacancy or not, and both the opening report and deposition testimony on which Yardi relies say so when read in full. Reply §4.1. Second, the screen overwhelmingly removes short-term vacancies that skew toward rent increases, introducing what BLS calls "vacancy bias." Reply §§4.2-4.3. Third, Marinescu responded to Yardi's arguments about long-vacancy units with two sensitivity analyses: excluding gaps longer than a year, and applying the BLS's own vacancy method. Under both, the index continues to show RIQ users pricing above CPI. Reply §4.4.[3] This is the type of responsive analysis the stipulation contemplated and caselaw permits. *Supra* Section 1.

Yardi moves to strike all of Section 4 on the theory that Marinescu "did not mean to calculate her change ratios using missing data," and that her defense of this methodology is therefore not rebuttal but a new opinion. Mot. 5-7, 12. Yardi's position is that its experts know what Marinescu intended better than Marinescu does. When she says otherwise, that is the new opinion.

---

[3] Yardi suggests this analysis is a new "methodology" because it implements imputation. Mot. 6. But using an alternative method to test a critique and defend a conclusion is core rebuttal. *Supra* Section 1.

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 4
011188-11/3190207 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

In support, Yardi offers selective interpretations. First, Yardi reads ¶503 of the Opening Report ("Opening") and the YLPI formula's "t-1" as requiring comparison to the prior calendar month. Mot. 6, 12. Marinescu's reply explains that "t-1" denotes the prior observation, not the prior calendar month, and that Yardi's reading conflates how the index calculates change with which observations it includes. Reply ¶¶113-14. But Yardi omits the next paragraph, which states the design principle: the index records a change "when the price of an individual unit changes." *Id.*; Opening ¶504.

Second, Yardi quotes two deposition exchanges but cuts each one short. In the full transcript, Marinescu walked through the computation in the first and directed counsel to ¶504 in the second, explaining that she "mirrored the approach of the CPI"—the paragraph that Yardi's reading requires the Court to ignore. Dkt. 529-1, Marinescu Dep. 264:14-265:7, 272:12-20.

Third, Yardi quotes Marinescu's testimony that a unit with a 109-month gap "would not contribute to the index." Mot. 5. That is true: a unit with no data does not contribute while it sits empty. Reply ¶¶115-16. But it does not follow that when a new tenant signs, the repricing must be excluded. *Id*. ¶116.

None of this establishes that Marinescu offered a new affirmative opinion. It establishes that Yardi disagrees with her reading of her own methodology.  But an expert may explain her own disclosed methodology when an opponent mischaracterizes it. *See supra* II.A.

Yardi's outlier argument rests on the same logic and seeks the same remedy—striking Marinescu's entire response in Section 5.

Yardi's data contains fields for effective rent (the actual rent) and recommended rent (the rent RIQ recommends). Marinescu applied a $20 threshold to recommended rents as part of an analysis of whether clients follow RIQ's recommendations. The footnote is explicit: "For the recommended rents, I observe that some values are implausibly low or high. E.g., suggested rent of $10 when the effective rent is $3,476.00. . . . I therefore filter out observations of variables that are lower than $20[.]" Opening ¶462 n.268. Yardi's experts, relying on footnote 268, applied that threshold to effective rents in the YLPI. Reply ¶¶178-79, 206-15.

In reply, Marinescu explained the distinction: that both analyses draw on the same underlying dataset does not make the two variables interchangeable. Reply §§5.3-5.3.1. When Marinescu applies

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 5
011188-11/3190207 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

footnote 268 as actually written—to recommended rents—the result is more aggressive cleaning, not less: screening recommended rents below $20 excludes more observations and reproduces her original results almost exactly. Reply §§5.3.2-5.3.3.[4]

Yardi also invokes Marinescu's deposition to claim it is inconsistent with her reply. It quotes her testimony that a $1 effective rent "[s]eems unlikely" and a 40-cent rent "would be...a rare event," Mot. 7, as a concession that such values are not real and should be excluded. She conceded no such thing: she testified that "[s]omething could be rare and still a real data point. That's not the same as implausible." Dkt. 555-2, Marinescu Dep. 248:18-21.

Yardi moves to strike this analysis as a "new distinction." Mot. 7-8. It is not new. The word "recommended" has been in footnote 268 since February. Yardi quotes the footnote but drops that word, describing the threshold as screening "rents" below $20 rather than recommended rents below $20. Mot. 7. The distinction matters: a $10 recommended rent against a $3,476 effective rent is likely a system error, not a price. Marinescu drew this line in both reports. Reply ¶¶178-79, 206-15. Yenikomshian himself relies on sub-$20 effective rents in his rebuttal and testified they "could reasonably reflect client decisions." Dkt. 555-3, Yenikomshian Dep. 248:14-251:21. The same data points cannot be evidence in his analysis and sanctionable in hers.

Yardi's position is that its experts may interpret Marinescu's testimony, but Marinescu's responses to those criticisms must be struck from the record. Defending a methodology against the expert who challenged it is rebuttal, not supplementation. *Kleen*, 306 F.R.D. at 592. "[A]ny inconsistency can be addressed by appropriate cross-examination at trial." *Modified Rice*, 2010 WL 4483993, at *3 n.3; *see also Shah*, 2021 WL 4555177, at *5.

### a. Regression sensitivity analyses.

The opening's panel regressions found that rents rise with local RIQ adoption. Marinescu reported results in both levels and first-differences specifications. Opening ¶¶548-49. Tucker redefined the co-conspirator variable to subtract each landlord's own properties and reported the levels results,

---

[4] Yardi gestures at "dozens of new analyses" (Mot. 8) but does not explain why any sensitivity analysis in Section 5 is improper. These are responsive analyses of the type the stipulation contemplated and caselaw permits. *Supra* Section 1.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

which reversed Marinescu's finding. Her revised code omitted all fifteen first-differences specifications. Marinescu's reply ran them using Tucker's code. All fifteen confirm her original finding. Reply §6.3.

Yardi moves to strike this analysis in its entirety. Its primary argument is that Marinescu departed from the framework of Professor Harrington's paper; specifically, that Harrington requires counting "firms" rather than properties and supports only levels regressions. Mot. 8-9. Yardi's reading of Harrington is new to this motion: neither Tucker's rebuttal nor Yardi's *Daubert* motion raises it.

The relevant question for this motion is whether Marinescu's approach is new. It is not. Marinescu's application of Harrington has been consistent. Marinescu counted by property (Opening ¶¶536-37) and ran both levels and first-differences in her opening report (*id.* ¶¶548-49). And Marinescu ran the first-differences specifications in the reply because Tucker dropped them. That is not a departure from Harrington. It is a response to Tucker.

Yardi points to Marinescu's statement that a "landlord cannot use Revenue IQ to collude with itself" in the opening report. Mot. 8-9, 12. That is a non sequitur: this sentence appears in a separate case study (Opening §9.2.3). Marinescu's property-level panel regressions were in her opening report (*id.* §9.2.4). And counting properties follows directly from the opening report's central theory: RIQ coordinates pricing at the property level. *Id.* §§5-7. Marinescu's defense of that approach is not a new opinion.

Each remaining point answers a specific criticism. Tucker redefined the co-conspirator variable; Marinescu explained why that introduces bias, assigning different counts to neighborhoods with identical RevenueIQ adoption based solely on ownership structure. Reply §6.2. Tucker argued the regression improperly includes single-landlord markets; Marinescu deleted them and the finding holds. *Id.* §6.1.

Yardi says performing this test "proves [she] made a methodological mistake." Mot. 12. But a sensitivity analysis tests whether a finding is robust to a proposed change. That is its purpose. *Kleen*, 306 F.R.D. at 592. On Yardi's reading, performing the test concedes the criticism is correct. That standard would bar every sensitivity check in every reply report—and is rejected by Yardi's own authorities. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *3-6 (N.D. Cal. 2016)

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 7
011188-11/3190207 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

(preserving rebuttal showing expert's findings survived "even accepting" opposing expert's criticisms).

Yardi also argues the reply newly "prioritiz[es]" first-differences. Mot. 9 & n.11. But first-differences were disclosed in the body of the opening report. Opening ¶¶548-49. The reply discusses them more for a simple reason: Tucker omitted fifteen first-differences specifications. Marinescu restored them and reported the results. Marinescu is not required to pretend her disclosed specifications do not exist because Tucker did not report them.

### b. The "pivots."

Yardi next identifies three opinions it calls "pivots." Mot. 10. Each elaborates on a disclosed opinion in response to a specific rebuttal criticism.

*First*, Yardi says Marinescu "newly argues" RIQ "causes directional upward pricing pressure" through Trend Rules' "directional signals." But the opening report evaluated configurations by whether they "impact the algorithm's directional logic." Opening ¶302; *id.* ¶296. The reply applied that exact framework, quoting the opening report directly, to Yenikomshian's 186-configuration rebuttal argument, noting Yenikomshian's concession that he could not identify a single configuration that flips the signal. Reply ¶407, §8.4.1.

*Second*, Yardi says the reply introduces an "umbrella effect." The opening report described that effect by name. Opening ¶109. Yenikomshian's rebuttal argues low Comp Set overlap defeats coordination. Marinescu invoked this same umbrella framework to explain why her theory does not depend on direct overlap. Reply ¶396, §8.3.3.

*Third,* Yardi says Marinescu "newly opines that reference rent changes are alternatively set by TAMs or are too small to matter." Mot. 10. But this opinion responds to Yenikomshian's rebuttal, which presented for the first time a tabulation of 560,000 reference-rent changes. The reply answered this analysis by, among other things, citing evidence "documented in [the] opening report:" TAMS are remunerated for increasing reference rents and direct clients to increase them. Reply ¶353; Opening ¶371.

A disclosed framework does not become a new opinion when applied to a criticism that did not exist when the opening report was filed. *Kleen*, 306 F.R.D. at 592.

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 8
011188-11/3190207 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

### c. Benchmarking opinions.

Yardi claims the reply "dilutes" Marinescu's benchmarking opinions because she has softened her account of what benchmarking reveals – from "comprehensive visibility on rivals' pricing" to "directional signal[s]." Mot. 10-11. But paragraph 425 of Marinescu's opening report stated: "The appropriate economic question is not whether benchmarking outputs permit exact inference of individual competitors' prices, but whether they provide actionable signals about relative performance." The directional framing Yardi calls a retreat has always been there.

Yardi characterizes certain responses as concessions. Mot. 11. Yenikomshian argued that low Comp Set overlap defeats coordination; Marinescu responded that her theory "does not require direct comp set overlap." Reply ¶386. Yenikomshian argued benchmarks are too anonymous and noisy to facilitate coordination; Marinescu responded noise "does not undermine the benchmarking data's directional price signals" (*id.* ¶380) and the literature "does not require deanonymization" (*id.* ¶443). Neither point is a concession, and neither is new; both appear in the opening report, which discussed the "umbrella effect" directly (Opening ¶109; Reply ¶¶386-89) and devoted an entire section to addressing aggregation and anonymization (Opening §7.3).[5]

### 2.    The proposed remedy is unjustified.

Yardi seeks to strike approximately 380 of the report's 467 paragraphs. Dkt. 560-1 (proposed order); 561-1 (highlighting "new" material). The only section it leaves untouched is Marinescu's four-paragraph conclusion. Every other section is struck in whole or in part. Sections 4, 5, and 6 are struck in their entirety—every sensitivity analysis, every response to Yardi's experts' methodological criticisms (and critique of their work), and the application of Tucker's fifteen unreported regressions. From three "pivots" and one benchmarking complaint, Yardi strikes six more sections—Marinescu's responses to Yenikomshian's configuration analysis (Reply §§8-8.2.1), reference-rent changes analysis (*id.* §8.2.2), and deposition concessions that he could not identify a single configuration overriding the Comp Trend Rule's signal (*id.* §8.4-8.4.1); and Marinescu's demonstration youa ddthat

---

[5] Yardi's contention that these opinions "would render all benchmarking illegal" is a merits argument dressed as a disclosure objection.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Mitzenmacher ignored the relevant economic literature and did not address Yardi's documents showing clients used benchmarking to increase rents (*id.* §9.2).

Yardi asks the Court to prohibit an expert from replying to her critics. Rule 37 does not exist to insulate criticism from response.

And much of what the proposed order strikes, Yardi does not even argue is improper. For example, Section 7 of Marinescu's reply report examines Tucker's enforcement opinions. Yardi's brief does not mention Section 7 or use the word enforcement. Nevertheless, Yardi requests the Court strike the entire section. A motion that cannot distinguish new from old has not shown anything should be struck.

A motion to strike ordinarily proceeds from argument to remedy. This one proceeds from remedy to argument. *But see Avila*, 796 F. Supp. 3d at 598-99 (evaluating opinions individually). Preclusion, however, is an "extreme sanction": courts "must consider less drastic responses." *Richardson v. Korson*, 905 F. Supp. 2d 193, 200 (D.D.C. 2012).

Yardi contends Plaintiffs bear the burden of proving substantial justification or harmlessness under Rule 37. Mot. 11. But that framework applies where a disclosure violation is undisputed. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (expert report filed two years late). Here, no violation occurred.

Yardi says it is "unduly prejudiced" by a report "against which it must defend itself." Mot. 14. A criticizer is not prejudiced when the expert he criticized responds. And Yardi responded—with 232 pages of expert rebuttal engaging the reply on the merits, addressing at length the very analyses its motion calls improper. Dkt. 566, 568. If this motion is granted, the record would contain 232 pages of rebuttal to analysis the Court could no longer consider. Yardi seeks fees too.

But Marinescu defended her opinions against three rebuttal reports, on a schedule the parties negotiated and the Court approved. That is not sanctionable conduct. That is the process working as designed.

### 3. The reply is not manipulated.

Yardi leads with the claim Marinescu "manipulated" and "tampered with" her analytical code to conceal a methodological change. Mot. 1, 6. The claim is that a comment in Marinescu's original

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 10
011188-11/3190207 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

script—"calculate change from previous month by unit"—described her actual methodology, and that by changing it to "calculate change from previous observation by unit" in the reply backup, Marinescu retroactively rewrote the description to match her current position.

A computer script contains two kinds of text. Instructions are lines the computer executes; they perform the calculations. Marinescu Decl. ¶3.[6] Comments are notes for the human reader, marked with a "#" symbol, that the computer skips. Comments function like the labels on tabs in a binder.

What happened is this. Marinescu's opening report backup included the script that generates the YLPI. One comment in that script read: "calculate change from previous month by unit." The code calculates, by unit, the ratio of the current rent to the last observed rent. When a unit is rented in January and re-rented in April, the code compares April's rent to January's. "Previous month" was shorthand for the prior month in which rent was observed.

Marinescu's reply tests several alternative versions of the index, each addressing a criticism raised by Yardi's experts. To build each, her team copied the original script and modified the instructions. *Id*. ¶¶5-6. In the variant scripts used to generate Marinescu's sensitivity analyses, the comparison value itself changes—some compare against an imputed value—and "previous month" wouldn't fit. The team wrote a single set of uniform annotations. They replaced "previous month" with "previous observation" across every file, including the original, so each script would carry the same labels. *Id*. ¶7.

The comments were never cited in Marinescu's report or in Plaintiffs' briefing. They were not discussed at her deposition. None of Yardi's experts cited these comments in their rebuttal reports or depositions as a basis for the gap screen. The comments are first presented by Yardi here. An expert who intends to conceal a methodology changes the instructions, not a comment the computer skips.

Yardi's remaining evidence is a folder label. The reply's backup materials are organized as a numbered set—01. Original, 02. Effective Rent Outliers, 03. Gross Rent Outliers, etc.—each testing a change Yardi's experts proposed. "Original" identifies the version applying none of them: the baseline. Marinescu Decl. ¶9. Yardi argues the label is misleading because the script in that folder contains the

---

[6] Declaration of Ioana Marinescu, PhD, filed concurrently herewith.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

updated comment—"previous observation" rather than "previous month." But "Original" is just an organizational label in a directory tree.

Yenikomshian's declaration does not claim that any computation, output, or result changed. What changed, he says, is that the old comment "was consistent with" Yardi's reading of the methodology while the new note "more closely track[s]" Marinescu's. Dkt. 562, Yenikomshian Decl. ¶19.

But the code continues to do what it has always done. It does not drop 240,000 observations reflecting real price changes from a price index designed to measure price changes. Across three filings and 12,000 words of briefing in one week, Yardi has not devoted a sentence to explaining why it makes for a more accurate or reliable index to drop those observations. Whether 240,000 price changes belong in a price index is a question the Court should resolve on the merits. Yardi should not be able to use a motion to strike to avoid the answer.

## III.   CONCLUSION

Dr. Marinescu was criticized. She responded. The stipulation permitted it. The rules allow it. The Court should deny Yardi's motion.

DATED: June 23, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
*/s/ Theodore Wojcik*
Theodore Wojcik (WSBA No. 55553)
*/s/ Stephanie A. Verdoia*
Stephanie A. Verdoia (WSBA No. 58636)
*/s/ Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
tedw@hbsslaw.com
stephaniev@hbsslaw.com
kellyf@hbsslaw.com

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 12
011188-11/3190207 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

Rio S. Pierce (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 13
011188-11/3190207 V1


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**CERTIFICATION OF COMPLIANCE**

I certify that this memorandum contains 4,190 words, in compliance with LCR 7(e)(3).


DATED: June 23, 2026                    **HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (SBN 12536)

*Attorney for Plaintiffs*

PLAINTIFFS' OPPOSITION TO YARDI'S MOTION TO STRIKE
(No. 2:23-cv-01391-RSL) - 14
011188-11/3190207 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX