The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

*In re* YARDI REVENUE MANAGEMENT
ANTITRUST LITIGATION

WYLIE DUFFY and MICHAEL BRETT,
individually and on behalf of all others similarly
situated,

                         Plaintiffs,

    v.

YARDI SYSTEMS, INC., *et al.*,

                         Defendants.

Case No. 2:23-cv-01391-RSL

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO EXCLUDE DEFENDANT'S
EXPERT CATHERINE TUCKER**

**NOTE ON MOTION CALENDAR:
June 26, 2026**

**ORAL ARGUMENT REQUESTED**

(Consolidated with Case Nos.
2:24-cv-01948; 2:24-cv-02053)

**TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................................1

II.  ARGUMENT....................................................................................................................1

    A.  Tucker's Gap Screen Is Not the Product of Economic Analysis.............................1

    B.  Tucker's Omission of the First-Differences Specifications Fails
        Her Own Professional Standard................................................................................4

    C.  Tucker Opined on the Facts without Reviewing the Factual Record ......................5

III.  CONCLUSION.................................................................................................................6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Engilis v. Monsanto Co.*,
  151 F.4th 1040 (9th Cir. 2025) ...................................................................................6

*In re Generic Pharmaceuticals Antitrust Litigation*,
  2024 WL 4980784 (E.D. Pa. Dec. 3, 2024) ...............................................................4

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999).................................................................................................4

## I.    INTRODUCTION

Plaintiffs moved to exclude portions of Tucker's rebuttal report that do not reflect the intellectual rigor Rule 702 requires. Yardi does not contest the motion's factual basis. It does not dispute that Tucker conducted no independent literature review before constructing her gap screen, tested no alternative thresholds, and never evaluated whether her altered index accurately measures rental prices. It does not dispute that her adapted regression script omits the first-differences specifications without disclosure. It does not dispute that she reached conclusions about Yardi's enforcement practices without independently reviewing a single Yardi document.

Yardi instead disputes Tucker's obligation to do the work. Yardi contends Tucker did not have to do any economic analysis of the merits of her gap screen because she was here as a rebuttal expert.  But she is here as an economist, and if she does not use her specialized knowledge then her opinions do not assist the Court. Yardi excuses Tucker's omission of fifteen specifications because they were not sufficiently discussed in Plaintiffs' brief. An expert's professional obligations are not triggered by opposing counsel's briefing choices. Yardi dismisses Tucker's failure to review the factual record because she was evaluating the evidence underlying Marinescu's opinions, not offering her own. Evaluating evidence requires examining it.

Yardi concedes what Tucker did not do and argues she was not required to do it. That is not a defense of intellectual rigor. It is a request to waive it. Rule 702 does not ask what the expert was assigned to do. It asks what she did. For the challenged opinions, Tucker did not do enough.

## II.    ARGUMENT

### A.    Tucker's Gap Screen Is Not the Product of Economic Analysis

A tenant moves out of a unit. Two months later, the landlord re-rents it at a higher price. The price of the unit changed. Yardi's data contains 240,000 such changes. Should they be part of the price index? Marinescu included them. Tucker deleted them.

Why? Because Tucker believes she understands Marinescu's intended methodology better than Marinescu does. Tucker said so: her altered index is "more accurate in that it captures what [Marinescu] says she intended to do." Dkt. 555-4 ("Tucker Dep.") 267:1-5.

But Tucker is here as an economist, not a mentalist. She never asked whether the index she built makes economic sense. She conducted no independent literature review, made no attempt to evaluate her index's accuracy, and tested no alternative thresholds. Mot. 3. She interpreted Marinescu's intent. She never examined her own output.

As Plaintiffs explained, excluding price changes associated with vacancies introduces a form of selection bias that the Bureau of Labor Statistics ("BLS") calls "vacancy bias": units that sit vacant tend to reprice upward, so an index that drops those observations systematically understates rent growth. Mot. 6-7; Dkt. 564 ("Marinescu Second Report") ¶¶129-31, 143-55. More than 67 percent of the 240,194 observations Tucker's gap screen removes are rent increases. *Id.* ¶108. The bias is not theoretical.

Tucker filed a 141-page declaration responding to the motion. Dkt. 566 ("Tucker Response"). The declaration does not contain the words "vacancy bias." It does not address whether the excluded observations are randomly distributed or correlated with price increases—the question that determines whether removing them biases the index. It does not cite any academic literature supporting wholesale deletion when constructing a rental price index.

Yardi's opposition does not acknowledge vacancy bias either. What it offers instead is Tucker's declaration arguing against imputation of rent prices, including criticism of a sensitivity analysis Marinescu ran applying BLS methodology. Opp. 7-8; Tucker Response ¶¶58-60. Tucker says imputation of rent prices is improper. The BLS has imputed rents for vacant units for forty years to avoid vacancy bias. Marinescu Second Report ¶¶131, 143. Tucker never considers why the BLS disagrees.

But even on its own terms, Tucker's critique of imputation does not answer the motion's question: whether Tucker's gap screen was the product of economic analysis. Mot. 3-4. Tucker's unchanged justification is that her index captures what Marinescu intended.

Marinescu has consistently explained what she intended. Her report describes and implements an index that records a change whenever the price of a unit changes. Dkt. 497-33 ("Marinescu Report") ¶504. At deposition, she directed counsel to that paragraph. Dkt. 555-2,

Marinescu Dep. 272:12-20. Tucker never addresses that sentence.[1] Tucker acknowledges that Marinescu's code captures those price changes. Tucker Response ¶¶39-45. But Tucker continues to insist that her reading overrides both the code Marinescu wrote and the interpretation Marinescu provided. [2]

Nor does Yardi argue that Tucker's gap screen makes economic sense. It instead claims that the gap screen's arbitrary results are Marinescu's problem, not Tucker's: "Plaintiffs thus ironically critique Marinescu's methodology ... not Tucker's." Opp. 5. That argument requires the Court to accept that Marinescu meant to discard the price changes most likely to reflect actual rent increases, introduce a bias the BLS has warned against since 1983, and treat identical vacancies differently depending on which calendar month they fall in—but then incorrectly implemented her own methodology. Or perhaps Yardi has misread the methodology.

Empirically, Yardi does not dispute that the 240,000 price changes are real or that Marinescu computed them correctly. It only questions why one percent of the data can change the results. Opp. 6. But here the excluded one percent consists of the observations that are systematically associated with above-trend price increases. Marinescu Second Report ¶¶155-61. Every index changes when you remove its most significant observations. That is not unreliability. It is arithmetic. Yardi has discovered that the index measures the data, and asked the Court to hold that against it.

Yardi's remaining defense is that a rebuttal expert "need not develop alternative affirmative opinions or independently justify the methodology being critiqued." Opp. 7. Yardi relies on cases where rebuttal experts critiqued an opposing methodology while accepting its assumptions. *See id.* But Tucker did not critique Marinescu's methodology. She commandeered it. Tucker never argued it was unreliable to include the 240,000 observations. Instead, she rewrote the model—over Marinescu's objection—to exclude those observations. That is not resting on Marinescu's assumptions. It is replacing them.

---

[1] Tucker spends five paragraphs arguing what "chain indexing" means in the abstract. Tucker Response ¶¶34-38. But ¶504 states the rule it applies: record a change "when the price of an individual unit changes." Tucker never addresses that actual language.

[2] She offers an extended interpretation of "t-1" in Marinescu's formula. Tucker Response ¶¶21-45. But t-1 refers to the prior month-level rent observation, not the prior calendar month. Marinescu Second Report ¶¶113-14. That is what ¶504 means by "when the price of an individual unit changes."

Yardi attempts to distinguish *In re Generic Pharmaceuticals Antitrust Litigation* because the expert there "proposed an affirmative alternative model." Opp. 5 n.9. But like Tucker, that expert said their work was not an alternative model. The court still excluded him because it focused on what he did and did not do. He built an alternative but offered no analytical support for it. 2024 WL 4980784, at *15 (E.D. Pa. Dec. 3, 2024). So too here. Marinescu says it is not her model. Tucker will not defend it as her own. Tucker's index sits without an analytical sponsor.

Rule 702 requires that an expert's analysis be the product of reliable principles and methods, regardless of the label. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Tucker could have tested alternative thresholds. She could have examined whether the excluded observations were systematically skewed toward rent increases. She could have consulted the BLS literature on vacancy bias. Her report did none of this. Her rebuttal declaration does none of it either. Yardi does not explain why. Tucker is an economist but the gap screen is not the product of economic analysis.

**B.    Tucker's Omission of the First-Differences Specifications Fails Her Own Professional Standard**

In her academic work, Tucker reports robustness specifications and has specifically instructed other researchers to present a "vast range of possible models." Mot. 10-11. Plaintiffs moved to exclude Tucker's co-conspirator analysis because her omission of the first differences specifications fails that standard. *See Kumho Tire*, 526 U.S. at 152.

Yardi argues that Tucker was "not obligated" to address a "subsidiary" analysis. Opp. 2, 10. But Tucker did address it. Her team adapted Marinescu's regression script line by line. They edited the code above the first-differences block. They preserved the code below it. The first-differences code is gone. Mot. 9, Fig. 1. This was a choice.

Tucker's original report never mentions the first-differences specifications and does not report what they would show when applied to her changes. A reader would not know the specifications existed. Tucker's own scholarship warns that "obfuscation is much worse than a clear summary of the identifying assumptions." *Id*. 11-12.

Yardi's answer is that Plaintiffs "never mentioned" the first-differences results and that Marinescu "buried" them in an appendix. Opp. 2, 10. Neither is true. Plaintiffs cited the analysis on

PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE DEFENDANT'S - 4
EXPERT CATHERINE TUCKER                                                    (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

page 23 of their summary judgment opposition: the $4.3-$15 figure there is the first-differences result from ¶548. Dkt. 492, MSJ Opp. 23. Nor did Marinescu conceal the analysis. Yardi's opposition itself cites to ¶548 when arguing first differences are "buried." Opp. 10. But that is the very paragraph where Marinescu explained that she ran the first differences specifications "[t]o address concerns that these results reflect the propensity for some units to systematically increase prices rather than coordinated behavior." Marinescu Report ¶548. Marinescu emphasized that the first differences specifications reached "essentially the same (and indeed stronger) conclusion" than the levels specifications. *Id.* And she concluded that "taken together, these results provide consistent econometric evidence" of coordinated pricing. *Id*. ¶¶548-49.

Yet still grant Yardi the premise. The first-differences specifications were in the code Tucker's team adapted. Rule 702 does not ask whether opposing counsel cited them. It asks what an economist would do with a robustness check in the analysis she is reviewing. Mot. 11-12. Tucker's own scholarship provides the answer: she instructs researchers to present robustness checks across a range of models, and she has never removed a robustness check or recommended another scholar remove one because it contradicts their main finding. *Id.* 10-11. Her rebuttal disputes none of this. Yardi does not attempt to explain how her original report met that professional standard.

What Tucker now offers instead are reasons why first differences do not matter. Tucker Response ¶¶90-102. Whether those arguments are persuasive is beside the point here. They are justifications supplied in response to this motion, not reasons she articulated in her original report. At deposition, Tucker was clear: "I don't talk about first differences in my report." Tucker Dep. 236:4-7.

Rule 702 does not ask whether an expert's choices can be rationalized after the fact. The answers Tucker offers now are not the reasons she offered then. She provided none. Rule 702 requires more.

**C.    Tucker Opined on the Facts without Reviewing the Factual Record**

Tucker's enforcement opinions present a straightforward Rule 702 problem. Tucker concluded that Yardi's pricing system contains no "credible" enforcement mechanism. Tucker

PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE DEFENDANT'S - 5
EXPERT CATHERINE TUCKER                                          (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

Response §V.C. That is an opinion about conduct. She did not examine the conduct. The opinion required a factual foundation. It does not have one. Mot. 12-13.

Yardi never disputes that Tucker examined none of it: not the Fazio-TAM call notes in which underpricing relative to benchmarks is repeatedly flagged, not the training materials instructing TAMs to discourage lowering prices, not the deposition of any Yardi employee. Mot. 12.

Instead, Yardi argues that Tucker was "evaluat[ing] whether the evidence Marinescu relied upon was sufficient to demonstrate an enforcement mechanism" and therefore "need not re-investigate every piece of the factual record." Opp. 11-12. But evaluating evidence requires looking at it. No one asked Tucker to review every document in the record. Plaintiffs' objection is more basic. She formed an opinion that relied on none.

In *Engilis v. Monsanto Co.*, the Ninth Circuit excluded an expert, like Tucker, who reached conclusions without examining the underlying records. 151 F.4th 1040, 1051-52 (9th Cir. 2025). Yardi limits *Engilis* to affirmative experts. Opp. 12. But *Engilis* draws no such line. The words "affirmative" and "rebuttal" do not appear in the opinion. Nor do they appear in Rule 702.[3]

### III.    CONCLUSION

Yardi does not dispute what Tucker did not do. It argues she did not have to. The standard is the standard. Rule 702 does not require less of an expert because the opinion is offered in rebuttal. Plaintiffs ask the Court to enforce it.

Dated this 26th day of June 2026          Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (WSBA No. 12536)
*/s/ Theodore Wojcik*
Theodore Wojcik (WSBA No. 55553)
*/s/ Stephanie A. Verdoia*
Stephanie A. Verdoia (WSBA No. 58636)
*/s/ Xiaoyi Fan*
Xiaoyi Fan (WSBA No. 56703)

---

[3] Yardi offers a fallback: even if *Engilis* applies, Tucker's opinions are based on an "established economic framework." Opp. 13. But a framework without evidence is an empty frame.

PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE DEFENDANT'S - 6
EXPER T CATHERINE TUCKER                                (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
tedw@hbsslaw.com
stephaniev@hbsslaw.com
kellyf@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
riop@hbsslaw.com

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY ISO MOTION TO EXCLUDE DEFENDANT'S - 7
EXPERT CATHERINE TUCKER                          (No.: 2:23-cv-01391-RSL)
011188-11/3573790 V1

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 2,094 words, in compliance with Local Civil Rule 7(d)(3).

/s/ *Steve W. Berman*
Steve W. Berman