Hon. Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

*In re YARDI REVENUE MANAGEMENT ANTITRUST LITIGATION.*

MCKENNA DUFFY, individually and on behalf of all others similarly situated,

Plaintiffs.

v.

YARDI SYSTEMS, INC., *et al.*,

Defendants.

No. 2:23-cv-01391-RSL

**DEFENDANT YARDI SYSTEMS' REPLY IN SUPPORT OF MOTION TO STRIKE IOANA MARINESCU'S SECOND REPORT AND FOR ATTORNEY'S FEES UNDER RULE 37**

**Filed Contemporaneously With:**

**(1) DECLARATION OF ABRAHAM A. TABAIE; AND**

**(2) DECLARATION OF MIHRAN YENIKOMSHIAN**

**NOTE ON MOTION CALENDAR: June 29, 2026**

**ORAL ARGUMENT REQUESTED**

(Consolidated with Case Nos. 2:24-cv-01948; 2:24-cv-02053))

# TABLE OF CONTENTS

Page

GLOSSARY OF DEFINED TERMS ................................................................................ iii

ARGUMENT ....................................................................................................................1

    I.    No Court Permits an Expert to Offer a Second Report Repudiating the First ..........1

    II.  Marinescu Improperly Offers New YLPI Methodologies ......................................2

        A.      Prior Month Means Prior Month .......................................................2

        B.      Implausible Data is Implausible Data ................................................3

    III. Marinescu Improperly Offers New Panel Regression Theories .............................4

    IV. Plaintiffs Concede Marinescu's Pricing Methodology Pivot ..................................5

    V.  Plaintiffs Concede Marinescu's Benchmarking Pivot ............................................7

    VI. Yardi Has Suffered Rule 37 Prejudice ..................................................................7

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page**

*Dura Auto. Sys. of Ind. v. CTS Corp.*,
   285 F.3d 609 (7th Cir. 2002) ...................................................................................................1

*FTC v. Amazon.com, Inc.*,
   No. C14-1038-JCC,
   2016 WL 4154284 (W.D. Wash. Feb. 9, 2016) ..........................................................................2

*In re Genetically Modified Rice Litig.*,
   No. 4:06-MD-1811-CDP,
   2010 WL 4483993 (E.D. Mo. Nov. 1, 2010) ...............................................................................2

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
   No. 13-cv-04236-BLF,
   2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) .............................................................................4

*Yeager v. Bowlin*,
   693 F.3d 1076 (9th Cir. 2012) ...................................................................................................2

## **GLOSSARY OF DEFINED TERMS**

| Term | Definition |
|---|---|
| First Report | The February 9, 2026 Expert Report of Ioana Marinescu, Ph.D In Support of Plaintiffs' Opposition to Yardi's Motion for Summary Judgment (Dkt. No. 497-33) |
| Marinescu Tr. | March 9, 2026 Deposition of Ioana Marinescu Transcript, attached as Exhibit B to the Tabaie Declaration |
| MSJ Opp. | Plaintiffs' Opposition to Yardi Systems' Motion for Summary Judgment (Dkt. No. 492) |
| PUMA | Public Use Microdata Area, as defined by the U.S. Census Bureau |
| RIQ | Yardi's Revenue IQ software |
| Second Report | The May 22, 2026 Reply of Ioana Marinescu, Ph.D In Support of Plaintiffs' Opposition to Yardi's Motion for Summary Judgment (Dkt. No. 555-1) |
| Tabaie Decl. | June 29, 2026 Declaration of Abraham Tabaie In Support of Yardi Systems' Reply in Support of Motion to Strike and for Attorney's Fees, filed contemporaneously herewith |
| Tucker Rebuttal | The March 23, 2026 Expert Report of Catherine Tucker, Ph.D in Rebuttal of the First Report of Ioana Marinescu (Dkt. No. 528) |
| Tucker Response | The June 15, 2026 Rebuttal Report of Catherine Tucker, Ph.D in Rebuttal of the Second Report of Ioana Marinescu (Dkt. No. 566) |
| Yenikomshian Reply Decl. | June 29, 2026 Declaration of Mihran Yenikomshian In Support of Yardi Systems' Reply in Support of Motion to Strike and for Attorney's Fees, filed contemporaneously herewith |
| Yenikomshian Rebuttal | The March 23, 2026 Rebuttal Declaration of Mihran Yenikomshian in Rebuttal of the First Report of Ioana Marinescu (Dkt. No. 526) |
| Yenikomshian Response | The June 15, 2026 Rebuttal Declaration of Mihran Yenikomshian in Rebuttal of the Second Report of Ioana Marinescu (Dkt. No. 568) |
| YLPI | Dr. Marinescu's Yardi Lease Price Index |

The law recognizes that experts can have special impact on decisionmakers because of their perceived sophistication and knowledge. For that reason, when Marinescu signed her First Report and testified at deposition to her methodologies, she put her credibility on the line to the Court and Yardi that everyone who aided her acted accordingly. *See Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (finding expert cannot simply "vouch[]" for the truth of her team's work). But Marinescu failed in that responsibility: her support team repeatedly did something different than what she described and testified to. She is now scrambling to find some new way to support Plaintiffs by issuing a new report employing different methodologies. Rule 37 forbids this, and the only remedy is striking the new opinions and granting Yardi fees.[1]

## **ARGUMENT**

### I.    **No Court Permits an Expert to Offer a Second Report Repudiating the First**

Plaintiffs admit that experts on rebuttal may not offer new opinions "instead of" the originals.[2] This is why Rule 37 applies here—Marinescu's new analyses and methodologies each support a "new theor[y]" that replaces the prior one, which Plaintiffs concede she may not do.[3] Plaintiffs attempt to recast those analyses as rebuttal, but the contradictions and shifts between Marinescu's two reports prove this false.[4] And Marinescu's unexplained contradictions of her deposition testimony are what the sham affidavit doctrine guards against. *Yeager v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir. 2012).

The Parties' stipulation correspondence shows that Plaintiffs agreed they would provide "***no new affirmative opinions***." As Yardi explained, "permit[ting] [Marinescu] to

---

[1] Marinescu's Second Report (like her First) independently fails the admissibility test under *Daubert*/Rule 702 for the reasons set forth in Yardi's separate *Daubert* briefing.

[2] Opp. 3 (citing *In re Genetically Modified Rice Litig.*, 2010 WL 4483993, at *3 (E.D. Mo. Nov. 1, 2010)). In *Modified Rice*, the expert later addressed "most[ly]…previously disclosed methods," unlike Marinescu. *Id.*

[3] *See* Opp. 2-3.

[4] Plaintiffs' cited cases (Opp. 3), are thus inapposite.

YARDI SYSTEMS' REPLY IN SUPPORT OF MOTION TO STRIKE IOANA MARINESCU'S SECOND REPORT AND FOR ATTORNEY'S FEES UNDER RULE 37 (No. 2:23-cv-01391-RSL) – Page 1

offer new opinion based on new analyses and/or an entirely new methodology...*is not permissible* under the rules." Opp., Ex. 4. Yet that is what Marinescu unlawfully did.

## II.     Marinescu Improperly Offers New YLPI Methodologies

### A.     Prior Month Means Prior Month

Plaintiffs want the Court to ignore the plain meaning of Marinescu's words in her First Report and deposition testimony, claiming only Marinescu can interpret both, that she knows her intentions best, and Yardi's interpretations are "selective." Opp. 5. But Plaintiffs ignore Rule 26's requirement that all expert opinions be fully disclosed in their reports, and that deposition testimony—not after-the-fact contradictions of it—governs the resolution of lawsuits.

Plaintiffs argue that Marinescu (unlike any other economist) defines "$t$-1" as "prior observation," citing a reference in ¶504 of her First Report to recording change "when the price of an individual unit changes." Opp. 5. But the full text proves that Marinescu's statement does not concern the treatment of missing data. Marinescu explains how her YLPI, as a "chain index[]," accounts for "new housing units" joining (or existing units leaving) RIQ. Tucker Response ¶34. The cited ¶504 language thus in no way supports that *"$t$-1"* can mean "$t$-100", or some other number of months or years. Mot. 4 n.5, 5-6. Indeed, Marinescu describes her YLPI in this paragraph as cataloguing "period-on-period" change. First Report ¶504.

Plaintiffs also cannot get away from Marinescu's unequivocal testimony that months with no data would not contribute to her YLPI. Mot. 3-5. *First*, Plaintiffs again cite Marinescu's reference to ¶504 (Opp. 5), which is (as noted) irrelevant and does not explain away her explicit testimony about removing missing months. *Second*, Plaintiffs claim Yardi omitted Marinescu "walk[ing] through the computation." *Id*. But Plaintiffs cannot explain what "computation" Marinescu walked through, and her testimony at the excerpted section is incomprehensible. Mot. 4. *Third*, Plaintiffs attempt to rationalize Marinescu's testimony

that a unit with a 109-month gap between leases "would not contribute to the index" by arguing that Marinescu meant—but did not say—that the unit would contribute to the index upon "repricing." Opp. 5. Plaintiffs offer no basis to read language into Marinescu's testimony, and they fail to address the other three clear instances in which Marinescu testified unequivocally that such gapped periods should not be calculated. Mot. 4-5.[5]

Plaintiffs concede that Marinescu manipulated her so-called "original" analytical code but nevertheless claim that (1) changing a comment in code is not bad because it is not an executable command; (2) Marinescu's "team" (another failure to supervise) simply made this edit for uniformity; and (3) the "Original" label is merely "organizational." Opp. 10-12. ***First***, comments are code, and they play a "paramount role" in understanding executable commands.[6] ***Second***, Plaintiffs cannot minimize Marinescu's code comments after Marinescu (derisively) directed Yardi's experts to examine her code for evidence of her intent (Second Report ¶113), ***but then changed it while holding it out as the "Original."***

Marinescu intended to remove ratios based on missing lease data before she knew her opinions fell apart once removed. Her new imputation analyses thus merely attempt to back into support for her ultimate conclusions through new methodologies, which Rule 26 forbids. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *2, *7 (N.D. Cal. Aug. 15, 2016).

### B.    Implausible Data is Implausible Data

Plaintiffs do not explain why Marinescu failed to apply any filter for outlier values (like rents of $1) that drastically skewed her results upward, despite testifying at length about the importance of doing so. Mot. 7. Marinescu twists herself in her Second Report by now: (1) arguing she intended to include sub-$20 rents in her YLPI all along; and (2)

---

[5] Plaintiffs' inability to resolve these contradictions are why the sham affidavit doctrine applies. Mot. 13-14.

[6] Yenikomshian Reply Decl. ¶¶5-8, n.7.

distinguishing between $20 *effective* rents and $20 *recommended* rents (Second Report ¶¶206-08), which she can only do by fabricating "offsetting concessions." *Id.* ¶66 (stating that these rents "appear to correspond to…large offsetting concessions"). Marinescu cites no evidence of these purported concessions, which she previously opined would be irrelevant to assessing list price collusion. First Report ¶460. And neither Plaintiffs nor Marinescu explain why *"recommendations"* are "likely a system error"[7] while sub-$20 *effective* rents could represent a real rental value. Opp. 6.

Marinescu now claims she meant to include sub-$20 effective rents because Yenikomshian included them in an unrelated calculation (Second Report ¶¶178-79), but Yenikomshian's analysis is not sensitive to outliers. Yenikomshian Response ¶¶52-61. Marinescu's YLPI, however, *is* sensitive to outliers because it is a ratio-based index that can be (and was) artificially distorted by implausibly low rent values. *Id.* ¶¶51, 58. In any event, it defies logic for just two—obviously not real—rental values of $1 and 40 cents a month to drive Marinescu's core collusion theories. *Id.* §IV.A.1.b,c. Plaintiffs' post hoc justification for Marinescu's errors is another pretense for new opinions, violating Rule 26.

### III.    Marinescu Improperly Offers New Panel Regression Theories

To establish that Marinescu's Second Report's panel regression opinions are not new, Plaintiffs needed to prove that Marinescu: (1) originally intentionally failed to control for common management; and (2) at all times relied on her first differences and pricing levels analyses in equal measure. Plaintiffs do neither.

*First*, Plaintiffs do not challenge that Harrington's collusion framework counts firms, and in her First Report, Marinescu repeatedly—purporting to apply Harrington's test—described counting co-conspirators and firms. Nor do Plaintiffs challenge that, by failing to control for common management, Marinescu now abandons Harrington's test for whether a firm is independently adopting a technology. Instead, Plaintiffs claim that Yardi's

---

[7] Second Report ¶180.

characterization of Harrington's analysis is new (it is not),[8] and claim that Marinescu's "a landlord cannot … collude with itself" statement "appears in a [] case study."[9] Opp. 7.

Neither argument establishes that Marinescu intentionally chose not to control for whether Landlord Defendants managed multiple properties, and all available evidence proves that her (or her team's) failure to do so was an erroneous deviation from her sworn methodology. Marinescu's decision not to control for common management in her Second Report is thus new, and her single-Landlord PUMA sensitivity analysis is yet another new analysis impermissibly trying to paper over her original error.

***Second***, Plaintiffs do not dispute that Marinescu's Second Report newly emphasizes first differences, which features nowhere in Harrington's approach. Mot. §II. Rather, Plaintiffs claim that Tucker's omission of First Differences in her rebuttal necessitated Marinescu's new prioritization of it. Opp. 8. But this is pretextual—Tucker analyzed Marinescu's pricing levels regressions ***because those were Marinescu's and Plaintiffs' headline results***[10] ***and the only test Harrington contemplated***. Tucker Response ¶¶91-97. Marinescu pivots to first differences because failing to control for common management obliterated her pricing levels regressions. *Id.* This pivot should be rejected as an attempt to mask her prior methodological flaws.

### IV.    Plaintiffs Concede Marinescu's Pricing Methodology Pivot

Plaintiffs argue that Marinescu's Trends-as-directional-signals and umbrella-Comp-effect theories are not new. Opp. 8. But Marinescu previously opined that RIQ employed a

---

[8] Tucker Rebuttal ¶67; Mot. to Exclude (Dkt. 530), §I.B.

[9] Marinescu states this in her discussion of the "Hub Algorithm Described in Harrington (2025)" (First Report §9.2), and in any event, it is undisputed that a landlord cannot collude with itself.

[10] Plaintiffs apparently obliquely cited to first differences in their MSJ Opposition. MSJ. Opp. 23.

common formula[11] made up of the directional signals **paired with** the Comp Trend "feedback loop" **and** uniform magnitude determinations. First Report ¶321; Mot. 10. Marinescu abandons this common formula framework (on which Plaintiffs also previously relied), now claiming that: (1) magnitude is irrelevant (Second Report ¶411)[12]; and (2) use of publicly-available asking rent data could somehow facilitate a conspiracy through umbrella effects across markets and non-RIQ users alike (Second Report ¶389).[13] This is a fundamentally different collusion mechanism than Marinescu originally claimed.

Marinescu's generic reference to umbrella effects in her First Report—made when opining on pricing impacts generally (Opp. 8), and not regarding Comps—illustrates rather than contradicts Yardi's point. Marinescu's pivot away from her Comp feedback loop started at deposition, when Yardi confronted Marinescu with evidence that RIQ clients do not choose one another as Comps, and she speculated about potential indirect effects. MSJ Reply n.23. Yardi asked if Marinescu had tested this theory, **to which Marinescu testified she had not**. Marinescu Tr. 145:7-146:11,153:10-156:18.

Additionally, at deposition, Marinescu testified that if Yardi clients do not change their reference rents, they allow Yardi to set their prices. *Id.* 88:16-89:11. In response to Yardi's evidence that clients regularly make manual adjustments to their reference rents (*i.e.*, do not employ a common formula), Marinescu's Second Report newly opines that "shift[ing] a starting point" does not matter (Second Report ¶44), without resolving how this contradicts her prior testimony.

---

[11] Or "common pricing algorithm", "common pricing rulebook", "common ruleset"—all Marinescu's words. Plaintiffs cannot challenge that Marinescu and Plaintiffs both proceeded on this theory. Mot. 10.

[12] After Yardi proved that she ignored core RIQ configurations. Yenikomshian Rebuttal ¶¶20-24.

[13] After Yardi proved that RIQ clients do not choose other RIQ clients for their Comp sets. *Id.* ¶44.

Finally, Plaintiffs argue that "TAMs are renumerated for increasing reference rents" (Opp. 8; Second Report ¶353), with full awareness that there is no evidence of this. Tabaie Decl., Ex. B, Rao Tr. 248:24-250:1, 303:3-304:4, 305:3-16.

## V.   Plaintiffs Concede Marinescu's Benchmarking Pivot

Plaintiffs similarly argue that Marinescu's prior reference to directional signals through Benchmarking makes her new theory consistent with the old. Opp. 9. In doing so, Plaintiffs ignore Marinescu's prior opinion that Benchmarking: (1) provided "uniquely comprehensive visibility"[14] into "quite literally…what properties are pricing right now"[15]; and (2) automatically incorporates Comp properties into Benchmarks.[16] Marinescu's response to Yardi disproving those opinions was to offer her Second Report, opining that mere directional signals could support an antirust theory (which they cannot) as if that was her opinion all along. It was not.

## VI.   Yardi Has Suffered Rule 37 Prejudice

Plaintiffs argue Yardi suffered no prejudice from Marinescu's unlawful 219-page Second Report because it was able to spend millions to respond to the Second Report with 232 pages of expert material. Opp. 10. Rule 37 recognizes that the prejudice, however, was in forcing Yardi to respond to Marinescu's new post-summary judgment briefing opinions, which necessitated this Motion and two new responsive reports from Yardi's experts. Striking those new portions of Marinescu's Second Report and granting Yardi's fees are the only cure for the prejudice inflicted on Yardi, just as Rule 37 requires.

---

[14] First Report ¶¶395,405.

[15] Marinescu Tr. 122:5-21; MSJ Opp. 39 (describing benchmark data as "current...granular and localized"); First Report ¶43 (granularity), ¶¶197-203 (currentness), ¶¶226-27 (visibility).

[16] First Report ¶¶395, 405.

RESPECTFULLY SUBMITTED this 29th day of June, 2026.

**DEBEVOISE & PLIMPTON LLP**

By: */s/ Maura K. Monaghan*

Maura K. Monaghan (*pro hac vice*)
Michael Schaper (*pro hac vice*)
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
mkmonaghan@debevoise.com
mschaper@debevoise.com

Abraham Tabaie (*pro hac vice*)
David Sarratt (*pro hac vice*)
650 California Street
San Francisco, CA 94108
(415) 738-5700
atabaie@debevoise.com
dsarratt@debevoise.com

**McNAUL EBEL NAWROT & HELGREN PLLC**

By: */s/ Claire Martirosian*
Claire Martirosian, WSBA No. 49528
Richard W. Redmond, WSBA No. 58835
600 University Street, Suite 2700
Seattle, WA 98101
(206) 467-1816
cmartirosian@mcnaul.com
rredmond@mcnaul.com

*Attorneys for Defendant YARDI SYSTEMS*

YARDI SYSTEMS' REPLY IN SUPPORT OF MOTION TO STRIKE IOANA
MARINESCU'S SECOND REPORT
AND FOR ATTORNEY'S FEES UNDER RULE 37
(No. 2:23-cv-01391-RSL) – Page 8

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Yardi Systems certifies that this brief contains 2,099 words, in compliance with LCR 7(e)(3).

By: */s/ Claire Martirosian*

Claire Martirosian